UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDMOND GRANT P/K/A "EDDY GRANT",
GREENHEART MUSIC LIMITED, a United
Kingdom Limited Company, and
GREENHEART MUSIC LIMITED, an
Antigua and Barbuda Limited Company,

                         Plaintiffs,

-against-

DONALD J. TRUMP and DONALD J.
TRUMP FOR PRESIDENT, INC.,

                         Defendants.

Civil Action No. 1:20-cv-07103-JGK

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   FACTS ........................................................................................................................1

III.  LEGAL STANDARD ................................................................................................6

IV.  ARGUMENT .............................................................................................................7

   A.   THE USE OF THE SONG WAS A FAIR USE ................................................7

     1.   The Purpose and Character of the Use Weighs Heavily in Favor of Fair Use ................8

     2.   The Nature of the Song................................................................................12

     3.   The Limited Amount and Substantiality of the Portion Used Weighs Heavily in Favor of Fair Use................................................................................13

     4.   The Use Has No Effect on the Potential Market for the Song .....................................14

V.    CONCLUSION ........................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
382 F. Supp. 3d 312 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12, 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .. . .6

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) . . . . . . . .. . . . . . . . . . . . . .12, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006) . . . . . . . . . .8, 13

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 13, 14

*Brown v. Netflix, Inc.,* 462 F. Supp. 3d 453 (S.D.N.Y. 2020) . . . . . . . . . 7, 8, 9, 10, 12, 13, 14, 15

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) . . . . . . . . . . . . . . . . . . . . . . . .8, 13, 14

*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11, 12, 13, 14

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.,* 150 F.3d 132 (2d Cir. 1998) . . . . . . . .. . . . 14

*Davis v. Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Edwards v. Raym*ond, 22 F. Supp. 3d 293 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Estate of Smith v. Cash Money Records, Inc.*, 253 F.Supp.3d 737 (S.D.N.Y. 2017),
*aff'd*, 799 F. App'x 36 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 13

*Estate of Smith v. Graham,* 799 F. App'x 36 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Hars v. Keeling*, 136 S. Ct. 2519 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Keeling v. Hars*, 809 F.3d 43 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . .9

*MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.,* No. 00 CIV.6068 (GBD),
2004 WL 434404 (S.D.N.Y. Mar. 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McDonald v. Wes*t, 138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd,*
669 F. App'x 59 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . .  1

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Peter v. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) . . . . . . . . . 7

*Samuels v. Air Transp. Local* 504, 992 F.2d 12 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014) . . . . . . . . . . . . . . . . .7

*TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . .7

*Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . .6

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 CIV. 7128IBSJ), 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Video-Cinema Films, Inc. v. Cable News Network, Inc.,* No. 98 CIV. 7128 (BSJ), 2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. A & E Television Networks*, 122 F. Supp. 3d 157 (S.D.N.Y. 2015) . . . . . . . . . . . . . 1

*Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**Statutes**

17 U.S.C. § 107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . 7, 11

17 U.S.C. § 107(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .13

17 U.S.C. § 107(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .14

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . 1

**Secondary Sources**

Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1111 (1990)  . . . . . . 8

Defendants Donald J. Trump and Donald J. Trump For President, Inc. (together, "Defendants") hereby respectfully submit this memorandum in support of their Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.     INTRODUCTION

Plaintiffs bring this copyright infringement action based on the use of a portion of Plaintiffs' music in an animated video, which was created during the recent Presidential election campaign as political satire and commentary and posted by Defendant President Trump on his personal Twitter account. In the animated video, a short segment of Plaintiffs' music (40 seconds, which amounts to 17.5% of the length of Plaintiffs' song) is intertwined with excerpts from a speech made by Former Vice President Joe Biden, such that Mr. Biden's voice is heard over the Plaintiffs' music. In fact, the audio volume of Mr. Biden's voice overpowers the volume of the music, making it difficult to hear the lyrics of Plaintiffs' song.

The video is a transformative, non-commercial work that was used on social media in support of President Donald Trump's 2020 presidential campaign. In addition, the video employs a minimal amount of the song needed to convey its transformative purpose. Further, the video has no effect on the potential market value of the original work. For these reasons, and for the other reasons explained below, the use of Plaintiffs' music in the animated video was, as a matter of law, a fair use. Therefore, under Rule 12(b)(6), the Court should dismiss the Complaint.

## II.    FACTS

Plaintiff Edmond Grant p/k/a "Eddy Grant" ("Grant") alleges he created the 3-minute-48-second song entitled "Electric Avenue" (the "Song"). (Dkt. 1, Compl. ¶ 9; *see also* Declaration of Darren W. Saunders ("Saunders Decl.") ¶ 2, Ex. 1 (copy of Song).[1]) Mr. Grant's alleged copyright

---

[1] Defendants will provide the Court a USB flash drive containing a copy of the Song and the animated video (the "Animation") that Plaintiffs allege infringes on the copyrights of the Song. (*See* Saunders Decl. ¶ 2, Ex. 1 (copy of Song), *id*. ¶ 3, Ex. 2 (copy of Animation).) On this motion to dismiss, the Court may consider the contents of both the Song and the Animation because the

rights in the Song were assigned to Plaintiff Greenheart Music Limited, an Antigua and Barbuda

Limited Company ("Greenheart Antigua"), which are licensed to third-parties by Greenheart Music

Limited, a United Kingdom Limited Company ("Greenheart UK," and collectively with Mr. Grant

and Greenheart Antigua, "Plaintiffs"). (Dkt. 1, Compl. ¶¶ 13, 14.)

     Plaintiffs assert that on August 12, 2020, President Trump published a tweet (the "Tweet")

from his personal Twitter account. The Tweet contained a 55-second animated video (the

"Animation"), which included the alleged unauthorized use of 40 seconds of the Song. (Compl. ¶¶

35, 38-40; *see also* Saunders Decl. ¶ 4, Ex. 3 (copy of Tweet).[2]) Plaintiffs themselves characterize

the Animation as "a campaign video deriding the Democratic Party's 2020 nominee for President,

Former Vice President Joseph Biden" and as "clearly an attempt to denigrate the Democratic

Party's 2020 presidential nominee, Former Vice President Joseph Biden." (*Id*. ¶¶ 1, 37.) Plaintiffs

also assert that the Animation "appears to be an endorsement of [President] Trump's 2020

presidential re-election campaign to 'Keep America Great' (aka 'KAG')." (*Id*. ¶ 36.) Based on these

allegations, Plaintiffs assert two claims of copyright infringement against both Defendants: (1)

copyright infringement of the musical composition of the Song; and (2) copyright infringement of

the sound recording of the Song. (*See Id*. ¶¶ 54-71.)

     As described by Plaintiffs in the Complaint, the Animation depicts "a high-speed red train

bearing the words 'Trump Pence KAG 2020' in stark contrast to a slow moving handcar bearing the

words 'Biden President: Your Hair Smells Terrific' being powered by an animated likeness of

Former Vice President Biden while out-of-context excerpts of Former Vice President Biden's

_____

Complaint incorporated them by reference, *e.g.,* Compl. ¶¶ 1, 9, 35-40, and Plaintiffs clearly rely

upon them as the bases for their suit. *See, e.g. McDonald v. Wes*t, 138 F. Supp. 3d 448, 453

(S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59, 60-61 (2d Cir. 2016); *Williams v. A & E Television

Networks*, 122 F. Supp. 3d 157, 159 & n.1 (S.D.N.Y. 2015); *Edwards v. Raym*ond, 22 F. Supp. 3d

293, 297 (S.D.N.Y. 2014).

[2] The Tweet was removed from Twitter, but Ex. 3 shows a screenshot of a digitally archived version

of the Tweet as of April 13, 2020.

speeches and interviews are played over Plaintiffs' Recording" (Compl. ¶ 38.) The Animation starts with the "Trump Pence KAG 2020" high-speed red train. Screen shots from the Animation are shown below:



(*See* Saunders Decl. ¶ 3, Ex. 2, at 8 seconds.) After the "Trump Pence KAG 2020" high-speed train quickly passes, the Song starts at the 15-second mark of the Animation. The Song introduces the "Biden President: Your Hair Smells Terrific" slow-moving handcar powered by Former VP Biden, which trails far behind President Trump's train on the same track:







(*See id*., at 22, 36, 40 seconds.) As Former VP Biden slowly pumps his handcar along the train track, the following excerpt from a speech made by Former VP Biden plays over the Song ("the Speech"):

> I got a lot of — I got hairy legs that turn blond in the sun. And the kids used to come up and reach in the pool and rub my leg down so it was straight and then watch the hair come back up again. So I learned about roaches. I learned about kids jumping on my lap. And I've loved kids jumping on my lap.

4

(*See id*. at 20-45 seconds.) Former VP Biden's voice is intertwined with Mr. Grant's voice singing the following lyrics of the Song:

> Now in the street, there is violence
> And a lots of work to be done
> No place to hang out the washin'
> And I can't blame all on the sun, oh no
>
> We gonna rock down to Electric Avenue
> And then we'll take it higher
> Oh, we gonna rock down to Electric Avenue

(*See id*. at 26-55 seconds.). Following the Speech, the Animation ends with the phrase "BIDEN TRAIN" and the letters of the phrase falling apart:



(*See Id*. at 46-50 seconds.)

      The Animation was created by a third person, unaffiliated with Defendants. At the end of the Animation, the creator's social media handle or username is displayed:



(*See Id*. at 51 seconds.) The third-party Animation was provided to the Defendants unsolicited.

## III.    LEGAL STANDARD

      To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Trachtenberg v. Dep't of Educ*., 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (additional marks and citation omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

      On a motion to dismiss, a court may consider, in addition to the complaint, "documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial

notice may be taken." *Samuels v. Air Transp. Local* 504, 992 F.2d 12, 15 (2d Cir. 1993). "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter v. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal marks and citations omitted).

"Courts within this Circuit have consistently considered motions to dismiss and motions for judgement on the pleadings regarding copyright infringement claims." *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 460 (S.D.N.Y. May 27, 2020); *see also TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("[T]his court has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim."); *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (finding it proper to decide fair use on a motion to dismiss when "the only two pieces of evidence needed to decide the question of fair use" are "the original version" and the allegedly infringing version).

## IV.     ARGUMENT

Based upon the allegations contained in the Complaint, and upon a review of the Song and the Animation, both of which the Complaint incorporates by reference, the use of the Song in the Animation was a fair use.

### A.     THE USE OF THE SONG WAS A FAIR USE

Under the Copyright Act, fair use is a complete defense to a claim of copyright infringement. *See* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . is not an infringement of copyright."). The Copyright Act specifies four factors that a court must consider when analyzing a fair use defense: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original. The courts must consider all four factors but "defendants… need not establish that each of the factors set forth in § 107 weigh in their favor." *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (internal quotations and citations omitted). For the reasons expressed below, the four fair use factors weigh decidedly in Defendants' favor.

1.    **The Purpose and Character of the Use Weighs Heavily in Favor of Fair Use**

The first factor, the purpose and character of the secondary work or use, lies at "[t]he heart of the fair use inquiry." *Cariou*, 714 F.3d at 705 (quoting *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006)). *see also Keeling v. Hars*, 809 F.3d 43, 53 (2d Cir. 2015) ("As a legal matter, the four factors do not each carry equal weight . . . indeed, some may not be relevant at all. . . . [T]he first factor . . . lies at the heart of the inquiry . . . while the other three factors are much less important." (internal marks and citations omitted)), cert. denied sub nom. *Hars v. Keeling*, 136 S. Ct. 2519 (2016).

"[T]he 'most important' consideration under the first factor is the 'transformative' nature of the work at issue." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 382 F. Supp. 3d 312, 325 (S.D.N.Y. 2019) (quoting *Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 608 (2d Cir. 2006)). "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id*. (quoting *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994)) (internal quotations omitted);

A work is "transformative" when it does not "merely supersede[ ] the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message[.]" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (citations omitted). "For a use to be fair, it 'must be productive and must employ the quoted matter in a different manner or for a different purpose from the original.'" *Cariou*, 714 F.3d at 706 (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1111 (1990)).

Here, the Animation was, as a matter of law, transformative. More specifically, the Animation took a small portion of the Song, and then modified that portion from its original form (a pop song) and incorporated that modified portion into a new, creative work (a comedic video about Former VP Biden) of a different character, unrelated to the original. Where, as here, a small portion of an audio recording is used to further a distinct creative or communicative objective, the use of that audio recording constitutes a transformative fair use. *See Netflix*, 462 F. Supp. 3d 453 at 453-8

8

(dismissing copyright infringement claims based on a finding that the use of 8 seconds of a copyrighted song in a documentary film was a fair use); *Estate of Smith v. Cash Money Records, Inc.*, 253 F.Supp.3d 737, 746 (S.D.N.Y. 2017), *aff'd*, 799 F. App'x 36, 38 (2d Cir. 2020) (finding that sampling 35 seconds of a spoken-word recording from a jazz album for a hip-hop song was transformative fair use because defendants' purpose in using it was different than the original artist's goals in creating it); *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310 (S.D.N.Y. 2008) (finding that the secondary use's inclusion of a 15-second clip of John Lennon's "Imagine" song in a theatrical movie for purposes of criticism and commentary was deemed transformative fair use).

Most recently, the Court in *Brown v. Netflix* found that the use of a snippet of a song in a film was transformative as a matter of law. In that case, the plaintiffs copyrighted a children's song about a student looking forward to a school-cafeteria lunch of "fish sticks." *Netflix*, 462 F. Supp. 3d 453 at 457-9. The defendants used an unaltered portion of the song in a documentary film about burlesque dancers, one of whom incorporated the song into a performance with "mature themes that portray fish sticks not as a lunch food, but as a component of a 'reverse mermaid.'" *Id*.

The court granted a motion to dismiss, holding, as a matter of law, that the use in the film was transformative. *Id*. at 464-5. "[W]hile defendants do not alter the Song and reference its concept of 'fish sticks,' the performance serves a 'new and different function' from the song, rather than merely offering a substitute[.]" *Id*. at 461. The Court pointed out that the plaintiffs' own descriptions of the copyrighted song and the dancer's performance confirmed the differences in purpose and character, and contributed to the transformative nature of the secondary use. *Id*.

Similarly, here, the Court need not go further than the four corners of the Complaint to determine that the purpose and character of the challenged use of the Song in the Animation is transformative. First, the original Song itself was significantly altered by being excised and overlayed by an unrelated audio recording of Former VP Biden's voice. As Plaintiffs allege in the Complaint, the Animation used only 40 seconds of the Song (Compl. ¶¶ 35, 39), and "excerpts of Former Vice President Biden's speeches… are ***played over*** Plaintiffs' Recording" (*id*. at ¶ 38) (emphasis added). Accordingly, the use of the Song in the Animation was modified to an even

greater extent than the song at issue in *Netflix*. As such, the use is not simply a remake or a recreation of the Song and does not serve the same intrinsic entertainment value that is protected by Plaintiffs' copyrights.

Second, the purpose and character of the original Song was significantly altered by the various elements of the Animation.  The animated drawings and the snippet of the Song overlayed with Former VP Biden's voice were all choreographed to mock President Trump's political opponent. There can be no dispute on this point, as Plaintiffs allege the "video derid[es] the Democratic Party's 2020 nominee for President, Former Vice President Joseph Biden" and "is also clearly an attempt to denigrate … Former Vice President Joseph Biden." (Compl. ¶¶ 1, 37.) The purpose of the Animation is not to disseminate the Song or to supplant sales of the original Song. Notably, Plaintiffs do not make such allegations. Accordingly, the overarching function of the Animation constitutes a "new expression, meaning or message" with a "different character" and "different purpose" from those of the original Song.

Still other allegations in the Complaint confirm that the Animation achieves a purpose separate and distinct from the original artistic and promotional purpose for which Plaintiffs created the Song. Specifically, Plaintiffs allege that Defendants have a "fundamental misunderstanding of the very meaning of the underlying [Song]." Compl. ¶ 48; Ex. C p. 2.  Plaintiffs' allegations imply a deeper meaning to the Song (*id*.), supported by the lyrics of the snippet used in the Animation: "[n]ow in the street, there is violence… And a lots of work to be done" (*see* Ex. 2, at 27-33 seconds). These lyrics, however, stand in stark juxtaposition to the comedic nature of the animated caricature of Former VP Biden, squatting and pumping a handcar with a sign that says, "Your Hair Smells Terrific" (Compl. ¶ 38), and to the excerpt of the overlayed speech that references "hairy legs" and kids playing with his leg hair (*see id*.; Ex. 2, at 20-45 seconds). Obviously, Mr. Grant's purpose of creating a meaningful song for the pop music market is completely different from the Animation creator's purpose of using the song "to denigrate … Former Vice President Joseph Biden" (Compl. ¶ 37).

In the end, Mr. Grant's intent in creating the Song is not critical. "What is critical is how the work in question appears to the reasonable observer, not simply what an artist might say about a particular piece or body of work." *Cariou*, 714 F.3d 694 at 707. In *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, this Court recently emphasized that "[t]he Court must examine how the [secondary works] may reasonably be perceived in order to assess their transformative nature." 382 F. Supp. 3d at 326 (internal quotations and citation omitted). This Court found that Mr. Warhol's use of several copyrighted photographs of Prince, for Mr. Warhol's illustrations of Prince's head and a small portion of his neckline, was fair use. The original photographs illustrated "that Prince is 'not a comfortable person' and that he is a 'vulnerable human being.'" *Id*. But, as this Court noted, "many of Warhol's Prince Series works contain loud, unnatural colors, in stark contrast with the black-and-white original photograph" and in some of his colorless sketches, "Prince's expression is almost entirely lost from the original." *Id*. This Court held that Mr. Warhol's secondary works "can reasonably be perceived to have transformed Prince from a vulnerable, uncomfortable person to an iconic, larger-than-life figure." *Id*.

Here, a reasonable observer would perceive that the Animation uses the Song for a comedic, political purpose – a different and transformed purpose from that of the original Song. Moreover, in light of the obvious comedic or satirical nature of the Animation, a reasonable observer would regard the Animation as criticism or commentary. "[T]here is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in § 107," such as criticism or commentary. *NXIVM Corp. v. Ross Inst*., 364 F.3d 471, 477 (2d Cir. 2004) (quoting *Wright v. Warner Books, Inc*., 953 F.2d 731, 736 (2d Cir. 1991)); *see also* 17 U.S.C. § 107 (identifying "criticism, comment, news reporting, teaching, scholarship, and research" as illustrative purposes of a fair use). In further support of the first factor, a reasonable observer would not perceive the secondary use as a mere reproduction of the original Song but would understand the Animation to be a political satire or commentary about Former VP Biden's position and campaign as a presidential candidate. Thus, the use of the Song in the Animation was transformative as a matter of law.

Where, as here, a work is transformative, other considerations bearing on the first fair-use factor, such as commercialism, recede in significance. *See Netflix*, 462 F. Supp. 3d 453 at 461; *Cariou*, 714 F.3d at 708. Nevertheless, the Animation is a non-commercial use because a political use is not commercial. *MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, No. 00 CIV.6068(GBD), 2004 WL 434404 at 7-9, 12 (S.D.N.Y. Mar. 8, 2004). In *Nader 2000*, Mastercard sued the presidential candidate Ralph Nader and his political committee, alleging, inter alia, copyright infringement of its "Priceless" ads. The defendants' advertisement used the comedic effect of a parody for the purpose of raising public awareness of Mr. Nader's desire to be included in upcoming, televised Presidential candidate debates. The Court found the defendants' televised campaign ad to be fair use because "it serves an entirely different purpose than the Priceless Advertisements, *a political non-commercial purpose*." *Id*. at 15 (emphasis added).

Similarly, here, the Animation serves a political, non-commercial purpose. In fact, the Plaintiffs here allege that the Animation is a "campaign video" (Compl. ¶ 1) and an "endorsement of [President] Trump's 2020 presidential re-election campaign to 'Keep America Great' (aka 'KAG')" (Compl. ¶ 36). Those allegations, taken as true, support a finding that the Animation serves a political non-commercial purpose.

Accordingly, the first statutory factor weighs heavily in favor of Defendants and strongly supports a finding of fair use.

## 2.       The Nature of the Song

The second fair use factor, the nature of the copyrighted work, considers "whether the copyrighted work is (1) expressive or creative versus factual or informational and (2) unpublished versus published." *Andy Warhol Found.*, 382 F. Supp. 3d at 326-27 (citing *Cariou*, 714 F.3d at 709-10). This factor, however, "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc*., 804 F.3d 202, 220 (2d Cir. 2015); *see also Davis v. Gap, Inc*., 246 F.3d 152, 175 (2d Cir. 2001) (noting that this factor is "rarely found to be determinative"). Where, as here, the use of the copyrighted work is transformative, the second factor is "of limited usefulness." *Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 612 (2d Cir. 2006);

*Blanch*, 467 F.3d at 257 ("the second fair-use factor has limited weight" when the use is transformative).

Here, the Song is a creative work, but it was published in 1983 (Compl. ¶ 25), and it remains, more than 37 years later, available to the public. This weighs in favor of fair use. A finding of fair use has further support in that the Animation did not usurp the first publication rights in the Song. *See Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 CIV. 7128IBSJ), 2001 WL 1518264, at *7 (S.D.N.Y. Nov. 28, 2001). In any event, because the use of the Song is clearly transformative, the second factor is, at best for Plaintiffs, neutral here.

### 3.   The Limited Amount and Substantiality of the Portion Used Weighs Heavily in Favor of Fair Use

The third fair use factor concerns "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts consider, not merely the quantity used, but "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710 (alteration omitted) (quoting *Blanch*, 467 F.3d at 257). When the secondary use is transformative, "the secondary use must be [permitted] to conjure up at least enough of the original to fulfill its transformative purpose." *Id.* (citing *Campbell*, 510 U.S. at 588) (internal quotations omitted).

"The Second Circuit has consistently found fair use in cases where only a small portion of the original work was used." *Video-Cinema Films, Inc. v. Cable News Network, Inc.,* No. 98 CIV. 7128 (BSJ), 2003 WL 1701904, at *3 (S.D.N.Y. Mar. 31, 2003). In *Estate of Smith*, 253 F.Supp.3d at 746, the district court granted summary judgment to the defendants, finding that their sampling of approximately thirty-five seconds of the plaintiffs' song about the supremacy of jazz as a genre of music was a fair use. *See Id.* The Second Circuit affirmed that decision, finding that defendants' use of a portion of a song to "send[] a counter message" – "that it is not the genre but the authenticity of the music that matters" – was transformative. *Id.* The panel went on to find that the use of thirty-five seconds of the original work was "reasonable" because it was "necessary to emphasize [the new song's] own message" and that there was no evidence of a negative market effect because the

allegedly infringing song "appeals to a much different audience" than does the original. *Id.* at 4.

Similarly, here, the Animation uses only forty seconds of the three minute and forty-eight second Song, which comprises just 17.5% of the Song's total length. That portion of the Song is "reasonable in relation" to the purpose of the Animation, see *Cariou*, 714 F.3d at 710. As Plaintiffs allege, the Animation is a vehicle "to denigrate the Democratic Party's 2020 presidential nominee, Former Vice President Joseph Biden[.]" As such, the Animation uses enough of the song to introduce the animated caricature of Former VP Biden, to support his overlayed speech about "hairy legs," and to end the video with the phrase "BIDEN TRAIN" falling off the screen. Just enough of the song was used to fulfill the Animation's transformative purpose "into something new and different." *See Andy Warhol Found.*, 382 F. Supp. 3d at 330 (quoting *Cariou*, 714 F.3d at 710).

Accordingly, this factor also weighs in favor of a finding of fair use. *See Netflix*, 462 F. Supp. 3d 453 at 462-3.

### 4.     The Use Has No Effect on the Potential Market for the Song

The fourth factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). As the Second Circuit stated in *Cariou*, "[the] concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work.'" 714 F.3d at 708 (quoting *Blanch*, 467 F.3d at 258). A defendant usurps the market of the original work when "the infringer's target audience and the nature of the infringing content is the same as the original." *Cariou*, 714 F.3d at 709. In such instances, the secondary use competes with the original "so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Google, Inc.*, 804 F.3d at 223. This likelihood is closely linked to the first factor, as "the more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original." *Id.* (citing *Campbell*, 510 U.S. at 591). Thus, "[t]he more transformative the secondary use, the less [the] likelihood that the secondary use substitutes for the original." *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.,* 150 F.3d 132, 145 (2d Cir. 1998).

Here, the secondary use does not usurp the market for the original work. The Complaint alleges nothing that plausibly suggests that (a) the Animation, a satirical, political ad, will serve as a satisfactory substitute for the Song, a pop song; (b) the Animation and the Song target the same audience; or (c) potential purchasers of the Song would opt for the Animation instead. The Song was, as Plaintiffs allege, altered in length and in substance, by the overlay of Former VP Biden's "out-of-context" speech. And, as Plaintiffs further allege, the lyrics of the original work are not clearly audible due to the superimposition of the two audio recordings. *See* Ex. 2 at 26-55 seconds. Consequently, the snippet of the original Song included in the Animation is no substitute for the original Song.

Plaintiffs further acknowledge that the Animation and the Song target different audiences. The Song targets the pop music market. As alleged, the Song "spent five weeks at No. 2 on Billboard Magazine's Top 100 Chart and was certified platinum by the Recording Industry Association of America" (Compl. ¶ 25). The Animation, by contrast, targets followers of President Trump's personal Twitter account (*id*. at 1) and the supporters of "[President] Trump's 2020 presidential re-election campaign to 'Keep America Great'" (*id*. at 36). Accordingly, this case presents exactly the type of conflicting market considerations that weigh heavily in favor of fair use. *Netflix, Inc.*, 462 F. Supp. 3d 453 at 463-4 (finding that it would be "unlikely that parents would purchase copies of the [burlesque] film for their minor children so that they could hear the excerpt of the Song in the Film"); *Estate of Smith v. Graham*, 799 F. App'x 36, 39 (2d Cir. 2020) (finding that the secondary use consisting of a hip-hop song appeals to a much different audience than the original's jazz listening audience).

Here, finally, it is utterly implausible that fans of Mr. Grant's music, or pop music listeners in general, would opt to acquire the Animation in preference to the Song, in order to watch the Animation and thereby to hear the warped snippet of the Song accompanied Former VP Biden's voiceover. Therefore, the Animation does not affect – much less usurp – the market for the Song and does not offer a market substitute for the Song. The fourth factor weighs heavily in favor of Defendants.

## V.     CONCLUSION

For the reasons expressed herein, Defendants respectfully request that the Court enter an order dismissing the Complaint, with prejudice.

Respectfully submitted,

Dated: November 11, 2020
          New York, New York

_/s/ Darren W. Saunders_____
Darren W. Saunders
dsaunders@peroffsaunders.com
Mark I. Peroff
mark.peroff@peroffsaunders.com
Cassandra M. Tam
cassandra.tam@peroffsaunders.com
Jason H. Kasner
jkasner@peroffsaunders.com
PEROFF SAUNDERS P.C.
745 5th Avenue | Suite 500
New York, NY 10151
Tel: 646.898.2030

Kenneth Andrew Caruso
ken.caruso@mfsllp.com
MUKASEY FRENCHMAN & SKLAROFF LLP
2 Grand Central Tower
140 East 45th Street, 17th Floor
New York, NY 10017
Tel: 212.466.6400

*Attorneys for Defendants*

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing memoranda contains 4,845 words and complies with Rule II(D) of Judge John G. Koeltl's Individual Practices.

 _/s/ Cassandra M. Tam_____
Cassandra M. Tam