UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
                                                                       )
EDMOND GRANT P/K/A "EDDY GRANT,"                                       )
GREENHEART MUSIC LIMITED (UK), and                                    )
GREENHEART MUSIC LIMITED (Antigua & Barbuda),  )        Civil Action No.
                                                                       )        1:20-cv-07103-JGK
                                    Plaintiffs,                        )
                                                                       )
            -against-                                                  )
                                                                       )
                                                                       )
DONALD J. TRUMP and DONALD J. TRUMP FOR                                )
PRESIDENT, INC.,                                                       )
                                                                       )
                                    Defendants.                        )
                                                                       )
-----------------------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ................................................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

I.    12(b)(6) STANDARD ............................................................................................. 6

II.    DEFENDANTS' FAIR USE ARGUMENTS FAIL ON THE MERITS ............... 11

    A.    *The Fair Use Defense* ..................................................................................... 11

    B.    *Purpose and Character of the Use: Defendants' Use is Commercial and Not Transformative* ................................................................................................ 12

        1.    There is No Justification for the Use of the Composition and the Sound Recording in the Infringing Video ................................................................ 14

        2.    The Infringing Video Does Not Render the Composition and the Sound Recording "Barely Recognizable" ............................................................. 16

        3.    Even Assuming a Different Purpose, the Use of the Infringing Video Relies Upon the Creative Aspects or Aesthetics of the Composition ..................... 18

    C.    *Nature of the Copyrighted Work: The Composition and Sound Recording are Creative Works Entitled to Broad Protection* .................................................. 20

    D.    *Amount and Substantiality of the Portion Used: Defendants Have Appropriated the Heart and Essence of the Composition and Sound Recording* .................. 20

    E.    *The Effect of the Use Upon the Potential Market or Value of the Copyrighted Work: the Potential Market for the Works has been Impaired* ....................... 21

CONCLUSION ................................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Geophysical Union v. Texaco Inc.,*
   37 F.3d 881, *as amended*, 60 F.3d 913 (2d Cir. 1994) ........................................... 5, 21

*Anderson v. Bessemer City,*
   470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)................................................... 7

*Authors Guild v. Google, Inc.,*
   804 F.3d 202 (2d Cir. 2015)...................................................................... 11, 12, 13, 14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955 (2007).................................................................... 6, 7, 8

*Blanch v. Koons,*
   467 F.3d 244 (2d Cir. 2006)...................................................................... 15, 16, 19, 20

*Brown v. Netflix, Inc.,*
   462 F.Supp.3d 453 (S.D.N.Y. 2020).............................................................................. 19

*Browne v. McCain,*
   611 F.Supp.2d 1062 (C.D. Cal. 2009) ........................................................................... 3

*Browne v. McCain,*
   612 F.Supp.2d 1125 (C.D. Cal. 2009) ................................................................. passim

*Campbell v. Acuff-Rose Music Corp.,*
   510 U.S. 569 (1993)............................................................................................. passim

*Cariou v. Prince,*
   714 F.3d 694 (2d Cir. 2013)................................................................................. passim

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.,*
   150 F.3d 132 (2d Cir. 1990).................................................................................. 18, 24

*Comedy III Prods., Inc. v. Gary Saderup, Inc.,*
   25 Cal. 4th. 387, 21 P.3d 797 (Cal. 2001) .................................................................... 3

*Daniel v. T & M Prot. Res., Inc.,*
   992 F.Supp.2d 302 (S.D.N.Y. 2014)............................................................................... 6

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,*
   109 F.3d 1394 (9th Cir. 1997) ............................................................................. 10, 23

*Dr. Seuss Enterprises, L.P.* v. *ComicMix LLC*,
  2020 WL 7416324 (9th Cir. Dec. 18, 2020) ........................................................ 16, 20

*Erickson v. Pardus*,
  551 U.S. 89, S.Ct. 2197 (2007) ........................................................................... 6

*Estate of Smith v. Cash Money Records, Inc.*,
  253 F.Supp.3d 737 (S.D.N.Y. 2017), *aff'd*, 799 F.App'x 36 (2d Cir. 2020) ................ 19

*Four Navy Seals v. Associated Press*,
  413 F.Supp.2d 1136 (S.D. Cal. 2005) .................................................................. 10

*Graham v. Prince*,
  265 F.Supp.3d 366 (S.D.N.Y. 2017) ........................................................... 1, 9, 10

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) ............................................................................. 8, 20, 22

*Henley v. DeVore*,
  733 F.Supp.2d 1144 (C.D. Cal. 2010) ........................................................ passim

*Infinity Broadcast Corp. v. Kirkwood*,
  150 F.3d 104 (2d Cir. 1998) ............................................................................ 4, 18

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
  742 F.3d 42 (2d Cir. 2014) .............................................................................. 7

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ............................................................................ 7

*Lennon v. Premise Media Corp.*,
  556 F.Supp.2d 310 (S.D.N.Y. 2008) .................................................................. 19

*Leonard F. v. Israel Disc. Bank of New York*,
  199 F.3d 99 (2d Cir. 1999) ............................................................................. 7

*May v. Sony Music Entm't*,
  399 F.Supp.3d 169 (S.D.N.Y. 2019) ................................................................. 10

*Monge v. Maya Magazines, Inc.*,
  688 F.3d 1164 (9th Cir. 2012) .......................................................................... 18

*North Jersey Media Group, Inc. v. Pirro*,
  2015 WL 542258 (S.D.N.Y. Feb. 10, 2015) ........................................................ 18

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001)................................................................................ 13, 17

*Penguin Random House LLC v. Colting*,
  270 F.Supp.3d 736 (S.D.N.Y. 2017).................................................................... 18

*Ringgold v. Black Entm't Television, Inc.*
  126 F.3d 70 (2d Cir. 1997).................................................................................. 12

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992)........................................................................... 11, 12

*Shirman v. WHEC-TV, LLC*,
  2019 WL 2163045 (W.D.N.Y. May 17, 2019)...................................................... 10

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)............................................................................................ 22

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  808 F.Supp.2d 634 (S.D.N.Y. 2011).................................................................... 10

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016)......................................................................... passim

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001).................................................................................. 8

*Weissmann v. Friedman*,
  868 F.2d 1313 (2d Cir. 1989)......................................................................... 12, 13

*Worldwide Church of God v. Phila. Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ............................................................................ 13

*Wright v. Warner Books, Inc.*,
  953 F.2d 731 (2d Cir. 1991).................................................................................. 1

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
  341 F.Supp.2d 258 (S.D.N.Y. 2004)...................................................................... 7

**Statutes**

17 U.S.C. § 101, et seq........................................................................................ 11, 15

17 U.S.C. § 107 ............................................................................................ 11, 12, 14

17 U.S.C. § 107(4) .............................................................................................. 21, 22

**Other Authorities**

4 William F. Patry, *Patry on Copyright* § 10:139.30 (2020).............................................. 20

**Rules**

Fed.R.Civ.P. 8(a)(2).......................................................................................................... 6

Fed.R.Civ.P. 12(b)(6).................................................................................................. passim

**Constitutional Provisions**

U.S. Constitution, Article I, § 8 ...................................................................................... 11

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss dated November 11, 2020 (ECF #19).   For the reasons set forth below, the motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Lead Plaintiff Eddy Grant (together with the other named Plaintiffs, collectively "Grant" or "Plaintiffs"), is the creator and beneficial copyright owner of an internationally successful musical composition ("Composition") and sound recording ("Sound Recording") entitled "Electric Avenue."  The Composition and the Sound Recording are hereafter referred to as the "Works."   Without Plaintiffs' consent, Defendants used both Works in a video promoting the presidential candidacy of Defendant Donald J. Trump ("Trump").   Mr. Grant timely demanded that Defendants cease and desist their unauthorized use of the Works.  Defendants ignored Mr. Grant's demands, forcing Mr. Grant to seek relief in this Court.

The arguments presented in support of Defendants' motion are without foundation and should be rejected.   As set forth below, the Supreme Court has squarely held that fair use is an affirmative defense to a claim of copyright infringement, and that it is a highly fact-intensive question, as to which Defendants bear the evidentiary burden. *Campbell v. Acuff-Rose Music Corp.,* 510 U.S. 569, 590 (1993).  This Court, and the Second Circuit, have accordingly held that fair use is a "highly unlikely" ground on which to grant a motion to dismiss, *Graham v. Prince,* 265 F.Supp.3d 366, 376 (S.D.N.Y. 2017), and that courts should therefore be "cautious" about doing so.   *Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991).

1

Defendants ignore this authority, and instead urge this Court to take the unprecedented step of granting a motion to dismiss on fair use grounds in a case involving the unauthorized use of a musical composition and sound recording in a political campaign advertisement that neither comments upon, nor has any other reasonably perceivable connection with, the Works it unlawfully appropriated. Under Defendants' theory, they could have used any song whatsoever, since there is no relationship between the music or lyrics of "Electric Avenue" and the message of the Infringing Video.[1] Defendants clearly misapprehend the law of fair use as set forth by the Supreme Court.

Claims brought on virtually identical facts, such as *Browne v. McCain,* 612 F.Supp.2d 1125 (C.D. Cal. 2009) ("*Browne*") and *Henley v. DeVore,* 733 F.Supp.2d 1144 (C.D. Cal. 2010) have been resolved against the infringers, and Defendants have not even attempted to distinguish these cases in their memorandum in support of the instant motion.

In *Browne,* a California District Court denied a motion to dismiss filed by the Republican National Committee ("RNC"). The case involved the use of a portion of a Jackson Browne song, "Runnin' On Empty," in a video promoting the 2008 presidential campaign of Senator John McCain. Claiming that the song was meant as

---

[1] Remarkably, Defendants concede in their Memorandum of Law ("Def. Mem."), at page 8, that the Infringing Video is "unrelated to the original [Song]." Without any such relationship, there is no justification for the use of "Electric Avenue" as opposed to any other work. See discussion *infra* at section II.B.1.

an attack on the energy policies of McCain's rival, Barack Obama, the RNC asserted a defense of fair use, which the Court declined even to analyze prior to giving the parties "a full opportunity to conduct discovery." *Id.* at 1130. In an earlier decision, however, the Court in *Browne* had already determined that the use of the Browne song was not transformative. *Browne v. McCain*, 611 F.Supp.2d 1062, 1072 (C.D. Cal. 2009).[2]

In *Henley,* the songwriter and recording artist Don Henley, a founding member of the rock band The Eagles, won summary judgment against a California politician seeking a U.S. Senate seat. The Defendant made two campaign videos using songs co-written by Henley, sung by Defendant's campaign manager over karaoke instrumental tracks, using lyrics written by the politician to denigrate his rival Barbara Boxer, as well as Nancy Pelosi, Barack Obama, and "cap-and-trade and global-warming policies." *Henley* at 1149. The court held that the use was not transformative, *id.* at 1158, that the campaign's use was commercial, *id.* at 1159, and that the use caused cognizable harm to Henley's licensing market. *Id.* at 1162-63.

The reasoning of these cases is sound, the facts are not materially distinguishable, and Defendants' seemingly calculated failure to identify them to the Court speaks volumes.

---

[2] The transformative use determination was made in connection with a right-of-publicity claim under California state law. Courts in that state apply the same "transformative use" analysis for such claims as do federal courts in copyright fair use cases. *See Comedy III Prods, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 21 P.3d 797 (Cal. 2001).

If accepted on the merits, Defendants' fair use arguments would eviscerate copyright protection for popular songs used in campaign advertisements, because virtually no musical artist creates a popular song for the purpose of advertising for or against a partisan political candidacy.  Certainly there is no evidence that Plaintiffs' Composition and Sound Recording "Electric Avenue" was created for any such purpose, four decades ago.  Merely using an otherwise non-partisan song – like Plaintiffs' – to make a partisan political attack cannot be "transformative" in any legally significant way, especially when the use itself makes no comment on the song. *See Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998) ("difference in purpose is not quite the same thing as transformation").  As in *Henley* and *Browne*, Defendants' use makes no transformative comment on the Works; at the very least, the question is an issue of fact.

*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013), upon which Defendants rely, is not to the contrary.  First, *Cariou* was decided on summary judgment, not a motion to dismiss, so it provides no guidance here. Second, even after full discovery into the artistic intentions and respective primary and secondary markets of the parties, the Second Circuit in *Cariou* was unable to determine whether five of the twenty-five works at issue were fair use or not, and remanded the matter as to those works.   In the twenty works deemed fair use on summary judgment, the court relied on the fact that the plaintiff's photographs had often been rendered "barely recognizable." *Id.* at 712. No such determination is possible here.  In the five remanded works in *Cariou,* the Court could not determine fair use as a matter of law, even though the changes made to plaintiff's original photographs were far more extensive than the changes to

the Works here, which were not altered at all, except by combination with other unrelated elements.

Third, the defendants' works at issue in *Cariou* were visual art collages, not musical compositions or sound recordings, the use of plaintiff's works was fragmentary rather than wholesale, and the challenged use was in a "fine art" market in which the licensing of photographs like plaintiff's was not "traditional, reasonable or likely," as the Second Circuit framed the inquiry in *American Geophysical Union v. Texaco Inc.,* 37 F.3d 881, *as amended*, 60 F.3d 913, 929-930 (2d Cir. 1994).  Here, by contrast, the use of popular music as the underscore of a video advertisement, even an advertisement for a political campaign, is a cognizable market.  *See Henley* at 1162-1163 ("The Defendants offer no evidence demonstrating that their songs would not usurp the potential licensing market for remakes or remixes of Plaintiffs' songs, should they choose to license them.").  *Cariou* therefore provides no basis whatsoever on which this Court can dismiss Plaintiffs' action under Rule 12(b)(6).  More pertinent cases, such as *Browne v. McCain* and *Henley v. DeVore,* make it clear that dismissal is unwarranted.

## FACTS

The relevant facts are set forth in the Complaint (ECF #1) and must be taken as true for purposes of resolving this motion to dismiss under Rule 12(b)(6).  Unsupported factual allegations set forth only in Defendants' Memorandum of Law may not be considered by this Court.  In brief, Plaintiffs allege ownership of copyright in the Works, Complaint at ¶¶ 9-14, 21, and timely registration of the Works in the U.S. Copyright Office.  *Id.* at ¶¶ 22, 30.  Plaintiffs further allege that on August 12,

2020 Defendant Trump posted a 55-second video ("Infringing Video") to Twitter that included 40 seconds of both the Composition and the Sound Recording. *Id.* at ¶¶ 35-39. Plaintiffs allege upon information and belief that Defendant Donald J Trump for President, Inc. provided the Infringing Video to Defendant Trump, and that each of the Defendants has financially and politically benefitted from the creation, production, and/or distribution of the Infringing Video. *Id.* at ¶¶ 41-42.

## ARGUMENT

### I.      12(b)(6) STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, and the plaintiff's allegations must be taken as true. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson,* 127 S.Ct. at 2200 (quoting *Twombly,* 127 S.Ct. at 1964).

In addressing the sufficiency of a complaint under Rule 12(b)(6) the Court must draw all reasonable inferences in favor of the plaintiff. *Daniel v. T & M Prot.*

*Res., Inc.,* 992 F.Supp.2d 302, 304 n. 1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n ruling on a 12(b)(6) motion, ... a court may consider the complaint[,] ... any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.,* 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (some alterations, citation, and internal quotation marks omitted); *see also Leonard F. v. Israel Disc. Bank of New York,* 199 F.3d 99, 107 (2d Cir. 1999) (in Rule 12(b)(6) motion, a district court may consider "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and […]matters of which judicial notice may be taken" (internal quotation marks omitted)).

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258, 264 (S.D.N.Y. 2004). As the Supreme Court held in *Twombly,* "asking for *plausible* grounds to infer an agreement *does not impose a probability requirement at the pleading stage." Id.,* 550 U.S. at 556 (emphases added). Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible. *See generally Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("two or more witnesses" may tell mutually inconsistent but "coherent and facially plausible stor[ies]"). In this case, the fair use doctrine compels the Court to address multiple fact issues, including the "meaning or message" of

Plaintiffs' Works and the Infringing Video; the qualitative and quantitative significance of the copied portions; the "traditional, reasonable or likely to develop" markets for musical compositions and sound recordings "in general"; and the degree to which Defendants' conduct, if it were to become widespread, would have an impact on such markets.  The choice between plausible inferences or scenarios is one for the factfinder.  *See id.*

 "[F]act-specific question[s] cannot be resolved on the pleadings." *Todd v. Exxon Corp.,* 275 F.3d 191, 203 (2d Cir. 2001). A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.  Even if the truth of plaintiff's factual allegations seems doubtful, "Rule 12(b)(6)  does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *Twombly* at 556.  Accordingly, the *Twombly* Court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).  And the Supreme Court long ago established that fair use is not simply a legal question, but a "mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985).

For the above reasons, the Courts have consistently held that fair use is not generally a proper basis for ruling on a motion to dismiss: it is a fact-intensive affirmative defense, as the Supreme Court held in *Campbell*. This affirmative defense requires Defendants to come forward with evidence to satisfy their pleading burden.

The necessary elements of Defendants' affirmative defense are not established by the allegations of Grant's Complaint, and Defendants themselves fail to adduce admissible evidence of all the facts necessary to establish this defense.

For this reason, Courts in the Second Circuit seldom grant motions to dismiss on the ground of fair use.  For example, in *Graham v. Prince*, 265 F.Supp.3d 366 (S.D.N.Y. 2017), Judge Stein of this Court declined to resolve an asserted defense of fair use on a motion to dismiss:

> Since it is conceivable—albeit *highly unlikely*—that a fair use affirmative defense can be addressed on a motion to dismiss, *see TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016), the Court reviews defendants' allegedly infringing uses of [plaintiff's work] by considering the four fair use factors in light of the factual allegations of the Complaint and its exhibits …
>
> As explained below, this is not a case in which the "open-ended and context-sensitive" fair use inquiry, *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013), can be properly applied at the motion to dismiss stage. Defendants' motion is premised on the supposition that [defendant's work] is transformative as a matter of law and that crediting its transformative character compels a finding that the other fair use factors also weigh decidedly in defendants' favor. This logical chain breaks at the first link; the Second Circuit's precedents do not support a finding that [defendant's work] is transformative as a matter of law. Moreover, because the Court can only review the narrow set of facts that appear in the Complaint and its appended exhibits—and because all of the plausible factual allegations contained in those documents must be viewed in the light most favorable to the plaintiff—the Court cannot conclude that *any* of the four fair use factors favors defendants.

*Id.* at 379-380 (emphasis added).

This Court in *Graham* further noted,

> Although the Second Circuit has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim, there is a dearth of cases granting a motion to dismiss on the basis of fair use.

*Id.* at 377, *citing TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir.

2016); *see also Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 808 F.Supp.2d 634, 641 (S.D.N.Y. 2011) (declining to address "fact-intensive issue" of fair use prior to discovery).

The *Graham* Court relied in part upon *Browne v. McCain*, 612 F.Supp.2d 1125 (C.D. Cal. 2009), a case that is virtually indistinguishable from the facts presented here, as noted above. The *Browne* court stated:

> Generally, when analyzing a Rule 12(b)(6) motion, a court's analysis of the plaintiff's claims is limited to its allegations in the complaint. [citation omitted] At this stage, a court does not make factual findings, nor deem material facts undisputed or admitted. Thus, in light of a court's narrow inquiry at this stage and limited access to all potentially relevant and material facts needed to undertake the analysis, courts rarely analyze fair use on a 12(b)(6) motion. *See Four Navy Seals v. Associated Press,* 413 F.Supp.2d 1136, 1148 (S.D.Cal.2005); *see also Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1403 (9th Cir.1997).
>
> Here, the Court declines to analyze fair use on RNC's 12(b)(6) motion. *The facts, as alleged in the complaint, are simply insufficient to conduct a thorough analysis of fair use at this time. The parties have not had a full opportunity to conduct discovery. As a result, Plaintiff is not yet aware of all relevant and material facts supporting his claim and potentially refuting RNC's fair use defense*.
>
> Moreover, RNC has not established that Plaintiff's claim is barred, as a matter of law, under the fair use doctrine. *The mere fact that Plaintiff's claim is based on Defendants' use of his copyrighted work in a political campaign does not bar Plaintiff's claim as a matter of law.*

*Id.* at 1130 (emphasis added).[3]

---

[3] *See also*, *e.g., May v. Sony Music Entm't*,  399 F.Supp.3d 169 (S.D.N.Y. 2019) (declining to grant dismissal on fair use grounds); *Shirman v. WHEC-TV, LLC*, 2019 WL 2163045 (W.D.N.Y. May 17, 2019) (same).

Therefore, as in *Browne*, this Court should decline to address Defendants' motion on the merits.

## II.   DEFENDANTS' FAIR USE ARGUMENTS FAIL ON THE MERITS

A.   <u>The Fair Use Defense.</u>

The goal of copyright is to expand public knowledge and understanding by giving creators exclusive control of their works for a limited period of time thereby providing "financial incentive to create informative, intellectually enriching works for public consumption." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 212 (2d Cir. 2015).  The ultimate intended beneficiary is the public "whose access to knowledge copyright seeks to advance by providing rewards for authorship." *Id.*  The equitable doctrine of fair use was created by the courts to fulfill the purpose of the copyright as set forth in Article I, § 8 of the United States Constitution: "to promote the progress of science and useful arts", by permitting others to build upon copyrighted material without the owner's consent in a reasonable manner for certain purposes.  *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 575 (1994); *Authors Guild* at 212; *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992).  The Copyright Act of 1976 encapsulated the fair use doctrine in 17 U.S.C. § 107.

The statute provides that a determination as to whether a use is a "fair use" requires an examination of the four non-exclusive factors set forth in the statute (17 U.S.C. § 107): (1) the purpose and character of the use and whether the use was for a commercial purpose of for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market or value of the copyrighted work.  These

factors are not to be treated in isolation, but all must be explored, and the results weighed together in light of the purposes of copyright. *Campbell* at 578. *See also Authors Guild*, *supra*.

In assessing a fair use claim a Court should take into consideration whether the defendant's use is within any of the categories that preamble to Section 107 identifies as illustrative, or even similar to these categories. *Ringgold v. Black Entm't Television, Inc.* 126 F.3d 70, 78 (2d Cir. 1997). The listed categories, criticism, comment, news reporting, teaching, scholarship, and research, have an illustrative and not a limitative function, and the four factors should be considered even if the challenged use is not within any of these categories. *Id.* Notwithstanding this, the Supreme Court has instructed that "the inquiry [concerning the first use factor] may be guided by the examples given in the preamble to § 107 looking into whether the use is for criticism or comment, or news reporting, and the like…." *Ringgold* at 78, *quoting Campbell* at 578-579. *See also TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016) (a use set forth in the Preamble is deemed most appropriate for a purpose or character indicative of fair use).

B.  <u>Purpose and Character of the Use: Defendants' Use is Commercial and Not Transformative.</u>

The first factor, purpose and character of the use, asks whether the original was copied in good faith to benefit the public or for the commercial interests of the infringer. *Rogers*, 960 F.2d at 309. Here, the use is commercial, whether or not Defendants themselves made a financial profit from their activities. As the Second Circuit held in *Weissmann v. Friedman*, 868 F.2d 1313, 1324 (2d Cir. 1989),

"monetary gain is not the sole criterion[,] particularly in a setting where profit is ill-measured in dollars." *See also Worldwide Church of God v. Phila. Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) (*quoting Weissmann*).

In *Henley,* also involving use of music in political campaign videos, the Court found that defendants

> stood to gain publicity and campaign donations from their use of Henley's music. In fact, the videos contained links directing viewers to the DeVore campaign website, encouraging them to donate. Thus, . . . the Defendants "profited" from their use by gaining an advantage without having to pay customary licensing fees to the Plaintiffs. In fact, Hart himself directly profited, as his compensation was tied to the amount of funds he raised. (Pls.' SS 38.)

> Accordingly, both [of Defendants'] songs are used for commercial purposes under the fair use analysis, which weighs against the Defendants.

*Henley*, 733 F.Supp.2d at 1159.

While not absolutely necessary to a finding of fair use, Courts in the Second Circuit have also focused on whether the new work is "transformative", or whether it merely "supersedes the objects" of the original creation. *Authors Guild*, 804 F.3d at 290-91, *quoting Campbell*, 510 U.S. at 579.  A work is "transformative" if it adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Id.*  The commercial use aspect of the first factor is not a binary yes/no question, but is determined on a sliding scale, the more transformative the work the less important the commercial purpose. *On Davis v. The Gap, Inc*., 246 F.3d 152, 176 (2d Cir. 2001).

The use of the Works in the Infringing Video was not a comment or criticism of the Composition or the Sound Recording.  Nor does the use fall within one of the

illustrative examples set forth in the preamble to 17 U.S.C. § 107.

1.  <u>There is No Justification for the Use of the Composition and the Sound Recording in the Infringing Video.</u>

The Supreme Court in *Campbell* instructed that where a use makes no critical commentary on the substance or style of the original composition, but is used "to get attention or to avoid the drudgery in working up something fresh" the claim to fair use "diminishes accordingly (if it does not vanish)", and other factors such as commerciality "loom larger". *Id.*, 510 U.S. at 580.

The Second Circuit has stated that a "would be fair-user" must have justification for taking another work stating:  "A secondary author is not necessarily at liberty to make wholesale takings of the original author's expression merely because of how well the original author's expression would convey the secondary author's different message." *Authors Guild*, 804 F.3d at 215.  See also *TCA Television*, 839 F.3d 168 (the use of a comic routine to capture audience attention in a stage play is insufficient justification to support a finding of fair use.)

Note that the Second Circuit in *Authors Guild* rejected the defendant's fair use argument, even where the defendant conveyed a "different message."  Because the Defendants here base their entire fair use argument on the "different message" allegedly conveyed by the Infringing Video, it must be reversed under *Author's Guild v. Google, Inc.*  There is no bright-line rule that the use of an author's work to convey a different message is by definition transformative.

Further, there is no justification for the use of the Composition and the Sound Recording in the Infringing Video.  Certainly Defendants could have used similar

music, or, as the Copyright Act was designed to promote the progress of the arts, Defendants could have expressed their anti-Biden message by creating new music with the sound they considered appropriate, rather than "avoid[ing] the drudgery in working up something fresh" by copying Plaintiffs' Works without authorization. *Campbell*, 510 U.S. at 580. Since the material taken is irrelevant to the purpose for which it was taken, justification for the use is required to qualify for a fair use defense. Here there is none.

*Henley* illustrates the above principle, finding that the defendants' uses of the Henley songs in their campaign videos lacked sufficient justification to be favored under fair use, because they did not directly target the Henley songs themselves for ridicule or critique. The defendants' songs did not comment on the plaintiff's work,

> but instead uses the same themes to comment on entirely different subjects, namely Boxer, taxation, global warming, and the proposed cap-and-trade program. . . . The song may mock political views that Henley allegedly supports, but that is *insufficient justification* for appropriating Henley's works, as discussed above. The Defendants have innumerable alternatives with which to mock Boxer and her policies. . . .

> The Defendants also argue that, even if their works are more satirical than parodic, they may still constitute fair use, citing *Blanch v. Koons,* 467 F.3d 244, 247 (2d Cir.2006). This is undoubtedly true; parody is not the only form of fair use. However, as noted in *Campbell* satire faces a higher bar for fair use because it requires *greater justification* for appropriating the original work.

Defendants here concede in their moving brief (Def. Mem. at 1), that they deem the Infringing Video to be "satire" rather than parody, thus they face a higher burden and require a greater justification for the use of Plaintiffs' Works. They have not met that burden. As the Supreme Court held in *Campbell*, 510 U.S. at 580-581,

15

"[p]arody needs to mimic an original to make its point, and so has some claim to use the creation of its victim's (or collective victims') imagination, whereas satire can stand on its own two feet and so requires justification for the very act of borrowing." Defendants have offered no justification for using "Electric Avenue," rather than any other composition, as the musical underscore for the Infringing Video.[4]  Moreover, as the Ninth Circuit recently held in *Dr. Seuss Enterprises, L.P.* v. *ComicMix LLC,* 2020 WL 7416324 (9th Cir. Dec. 18, 2020), merely incorporating elements of existing material into a new context to make a "funny" juxtaposition does not thereby critique or comment on the borrowed material.  *Id.* at *5.

2. The Infringing Video Does Not Render the Composition and the Sound Recording "Barely Recognizable".

In the absence of justification for a use, the new work "generally must alter the original with new expression, meaning or message." *TCA Television*, 839 F.3d at 180. As an example, the Court in *TCA Television* referred to *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013), upon which Defendants here rely heavily.  The Second Circuit in *TCA Television* explained that the defendant in *Cariou*, an "Appropriation Artist",

_____

[4] This case is therefore unlike *Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006), on which Defendants rely heavily.  In *Blanch,* a visual collage by artist Jeff Koons was deemed a satire rather than a parody, because it did not critique or comment on the plaintiff's work (a magazine photo), but rather on other aspects of society.  The collage was nonetheless deemed fair because Koons offered a detailed and persuasive justification for his use of plaintiff's work as part of his collage. *Id.* at 255. Defendants here have offered nothing.

16

satisfied the standard for transformative use as a matter of law *only* where Defendant's use so heavily obscured and altered the plaintiff's original photographs that the earlier works were "barely recognizable". *TCA Television,* at 181.  It noted that the *Cariou* Court found that where lesser changes in other accused infringements retained more of the original works' aesthetics, transformative use could not be established as a matter of law.  *Id.*  Here, despite the voiceover elements that occur simultaneously with the Composition and Sound Recording, the Plaintiffs' Works are very much recognizable.  At the very least, the recognizability of Plaintiffs' Works as used in the Infringing Video presents an issue of fact that cannot be resolved here.

In *TCA Television*, 839 F.3d 168, the Court was faced with the issue of whether the use of the Abbott and Costello "Who's on First" comedy routine as a dramatic device in defendant's play was transformative.  The Court found that the use was not transformative because the routine was used for the same purpose for which was it was created, to be entertaining, and the routine was not changed or altered so as to create a new or different expression.  *Id*. at 181.  *See also On Davis*, 246 F.3d at 174 (no fair use where eye jewelry used in an advertisement by defendant is shown in the manner it was meant to be worn).

Here, Defendants used the Composition and Sound Recording for the same purpose for which it was created, as a memorable, melodic expression of the music of its time period. As such the use was not even remotely transformative. Merely using the Works to evoke the 1980s, for purposes of suggesting that candidate Biden was not up to date, is not a sufficient change *in the Works* to provide transformative value.

17

By Defendants' argument, any use of any music to evoke a historical period in a video, movie or TV show would be fair use.  That is not the law.

> 3.    Even Assuming a Different Purpose, the Use of The Infringing Video Relies Upon the Creative Aspects or Aesthetics of the Composition.

Using the original work for a different purpose – even assuming *arguendo* that Defendants did so – does not necessarily create a work with "new expression, meaning or message" that is transformative. Not every new purpose is transformative, *Infinity Broadcast v. Kirkwood,* 150 F.3d 104, 108, and just because the infringer's purpose is arguably distinct from that of plaintiff does not necessarily result in the work being transformative. *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012); *North Jersey Media Group, Inc. v. Pirro*, 2015 WL 542258 at *8 (S.D.N.Y. Feb. 10, 2015).  The new work will not be transformative if it relies upon the creative aspects or aesthetics of the original work.  *Id.*

In *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1990), for example, the Court was faced with a claim of fair use by the author and publisher of a book containing trivia questions about the events, characters, and their peccadilloes, in the copyrighted Seinfeld television series. Despite the allegedly different purpose, testing trivia knowledge versus the telecast of Seinfeld episodes, the court found the use not transformative as it directly took from the Seinfeld episodes without substantial alteration.  *Id*. at 143. In short, defendants relied upon the creative aspects of the Seinfeld television series for their trivia book. See also *Penguin Random House LLC v. Colting*, 270 F.Supp.3d 736 (S.D.N.Y. 2017) (works written for children as abridgments of famous novels found not to be fair use).

In *Henley*, the Court made precisely this objection to defendants' transformative use argument, because the political campaign's use of the Henley songs had no critical bearing on the substance or style of the copied work:

> Here, the Defendants made minimal changes to the lyrics of the Plaintiffs' songs to make new songs *about different subjects*. This is hardly transformative in the manner of *Blanch [v. Koons,* 467 F.3d 244 (2d Cir. 2006)]. Moreover, as discussed below, the Defendants have *borrowed heavily from the creative aspects* of [plaintiff's works], unlike Koons's minor appropriation in *Blanch.*

733 F.Supp.2d at 1158 (emphases added).

Defendants here also rely on *Blanch*, *see* Def. Mem. at 8, 13, 14, and that reliance is just as misplaced here as it was held to be in *Henley*. In fact, the Defendants' use here relies even more heavily on the aesthetic aspects of the Plaintiffs' Works than the defendant did in in *Henley*, because Defendants here did not even go to the trouble of writing new lyrics or making a new sound recording.[5]

---

[5] Defendants' cited authorities for their transformative use argument, see Def. Mem. at 9, are easily distinguishable. Unlike *Henley,* none of them involve uses of a prior musical work and sound recording in a campaign video, but instead involve either documentary films (*Brown v. Netflix, Inc.*, 462 F.Supp.3d 453 (S.D.N.Y. 2020)) or commentary directly targeted at the plaintiff's work (*Estate of Smith v. Cash Money Records, Inc.*, 253 F.Supp.3d 737 (S.D.N.Y. 2017), *aff'd*, 799 F.App'x 36 (2d Cir. 2020)) or both (*Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310 (S.D.N.Y. 2008)). These cases provide no guidance whatsoever to resolving the fact-intensive fair use issue presented in this case.

C.      Nature of the Copyrighted Work: The Composition and Sound Recording are Creative Works Entitled to Broad Protection.

The Composition and Sound Recording are clearly creative expressions which lie "close to the core of copyright protective purposes." *Campbell*, 510 U.S. at 586. Defendants do not dispute the creative nature of the Works, but simply assert that this statutory factor should be ignored because the Infringing Video is allegedly transformative, which it is not, *see* above, and the Works are published and publicly available. Def. Mem. at 13.  If the latter considerations were sufficient to favor Defendants under the second factor, virtually no plaintiff would ever prevail on this factor, and many do.  Defendants cite no authority for this egregiously overbroad argument.   In fact, as the Ninth Circuit very recently held in *Dr. Seuss Enterprises, L.P. v. ComicMix LLC,* 2020 WL 7416324 (9th Cir. Dec. 18, 2020) "neither *Harper & Row* nor any principle of fair use counsels that the publication of the copyrighted work weighs in favor of fair use. *See* 4 William F. Patry, *Patry on Copyright* § 10:139.30 (2020) (explaining that 'the fact that a work is published does not mean that the scope of fair use is per se broader')".

D.      Amount and Substantiality of the Portion Used: Defendants Have Appropriated the Heart and Essence of the Composition and Sound Recording.

The Second Circuit in *Blanch v. Koons* stated that the test in assessing the third factor is "whether the quantity and value of the materials used [] are reasonable in relation to the purpose of the copying".  467 F.3d 244, 257.  Here, the purpose of the copying is at best a disputed factual issue as to which Defendants have adduced no evidence, so this Court literally cannot undertake the statutorily-required analysis on a motion to dismiss.

The evidence of the Works and the Infringing Video themselves, however, which are referenced in the Complaint, leave no doubt that Defendants have copied a qualitatively and quantitatively significant portion of both the Composition and the Sound Recording. What has been copied is not mere "barely recognizable" fragments of the Works, as in *Cariou*, but the heart and essence of Plaintiffs' Works. It is at least a fact question as to whether Defendants have used the most recognizable and compelling portions of the Works. Because that inference must be resolved in Plaintiffs' favor, the third factor favors Plaintiffs.

E.      The Effect of the Use Upon the Potential Market or Value of the Copyrighted
        Work: the Potential Market for the Works has been Impaired.

Defendants willfully ignore the well-settled law of this Court, and the U.S. Supreme Court, regarding market harm under the fourth fair use factor. They argue to this Court that market harm is only cognizable when "potential purchasers may opt to acquire the copy in preference to the original." Def. Mem. at 14. Defendants are incorrect.

As the Second Circuit held in *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994) ("*Texaco*"), market harm under section 107(4) is not limited to direct substitution, where a purchaser chooses defendant's product instead of plaintiff's, but also reaches harm to *licensing* markets that are "traditional, reasonable, or likely to develop" for copyright owners generally. *Texaco* at 930. Defendants have offered neither argument nor evidence to challenge the reasonable inference that the licensing of music, lyrics, or sound recordings, for inclusion in the soundtrack of promotional videos, is "traditional, reasonable or likely to develop." *Texaco*'s

express recognition of markets that are "*likely* to develop" belies any requirement that such markets must presently exist, *Campbell* further commands that the analysis under section 107(4) cannot be restricted to markets the plaintiff itself has exploited, or has even developed plans to exploit, but looks more broadly to markets that "*creators of original works*" – not just the plaintiff in a particular case – "*would in general* develop or license others to develop." *Campbell*, 510 U.S. at 591 (emphasis added). *Campbell* further holds that the market harm caused by a particular defendant is not the only question; instead cognizable market harm results where "unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially adverse impact on the potential market for the original." *Id*., at 590 (internal citation omitted). *See also Harper & Row*, 471 U.S. at 568 (market harm present "if the challenged use 'should become widespread it would adversely affect the potential market for the copyrighted work.'"), *quoting Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984). Here, there is at least a reasonable inference that if the makers of promotional videos stopped paying music and sound recording license fees on a "widespread" basis, creators of music and sound recordings "would in general" suffer harm to a market that is "traditional, reasonable, or likely to develop."

This Court is not at liberty to disregard *Campbell*, however much Defendants may argue that only presently-existing markets for the plaintiff's specific work are cognizable, and that only harm caused by Defendants' own actions is relevant.

Defendants have pointed to no evidence that "creators of original works" would not "in general" license their works for inclusion on the soundtracks of

promotional videos, a proposition which is absurd on its face. The inclusion of *any* copyrighted material in the soundtrack of such a video is at the very least a "reasonable" or "likely to develop" market, and the Court must give Plaintiffs the benefit of that inference for purposes of this motion.

The remand in *Campbell* itself, in fact, sent that case back for further factfinding as to the effect of the defendants' use on the market for "non-parody rap derivatives" of the Roy Orbison song at issue, though the Supreme Court made no reference to any record evidence that such a market in fact existed, or that the plaintiffs in that case had sought to exploit it.  The *lack* of a finding on this issue required a remand, even where the Supreme Court held the defendant's use to be a highly transformative parody.  So here, the need for factfinding on market harm precludes a ruling for Defendants on this motion to dismiss.  *See Campbell*, 510 U.S. at 590 ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets.").

*Henley,* which provides a near-exact factual parallel to the instant case, had no trouble finding, at 1162-1163, market harm from a political campaign's unauthorized use of plaintiff's songs in campaign videos:

> This analysis requires consideration of more than just the market effect of the particular infringement at issue. . . . The burden is on the defendant to "bring forward favorable evidence" that potential markets will not be harmed. *Dr. Seuss II,* 109 F.3d at 1403. "[U]ncontroverted submissions that there was no likely effect on the market" do not suffice. *See id.* (quoting *Campbell,* 510 U.S. at 590, 114 S.Ct. 1164). . . .
>
> However, the Court does not find that the Defendants have made an adequate showing on this factor. The question is not whether [the infringing works]

23

specifically threaten the market for the original; the question is whether widespread dissemination of similar satirical spins on the Plaintiffs' music will harm the market for the originals. *See Campbell,* 510 U.S. at 590, 114 S.Ct. 1164. Relevant to this inquiry is the fact that the Defendants have taken the entire musical composition and have changed a minimal amount of lyrics. The Court cannot say as a matter of law that widespread use in a similar manner would not harm the market for the originals.

The parties also dispute the effect on the market for derivative works. . . . [W]hether the Plaintiffs have actually permitted licensing is irrelevant because the copyright laws protect the "potential market" for derivatives. *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 145–46 (2d Cir.1998). . . . The Defendants offer no evidence demonstrating that their songs would not usurp the potential licensing market for remakes or remixes of the Plaintiffs' songs, should they choose to license them. . . .

The Defendants argue that this sort of harm is not market-substitution. The Court disagrees. The advertisers would be deterred from using the Plaintiffs' music *because it has been used before,* not because of the particular association with DeVore's message (though that may impact the valuation as well). (Pls.' SS 155–58.) This injury is the very essence of market substitution.

To summarize the fair use analysis: when resolving all reasonable inferences in Plaintiffs' favor, the Defendants' use is commercial and not transformative; the Plaintiffs' works are creative and entitled to broad copyright protection; a qualitatively and quantitatively significant portion of the Works has been copied; and the use has a significant potential to impact the actual or potential market for, or value of, the Plaintiffs' Works.  All the statutory factors therefore favor Plaintiffs, and the motion to dismiss should be denied.

**CONCLUSION**

Based on the above reasons and authorities, Defendants' motion to dismiss the

Complaint should be denied in all respects.


Dated: December 28, 2020
        New York, New York

Respectfully submitted,

*/s/ Brian D. Caplan*
Brian D. Caplan
bcaplan@reitlerlaw.com
*/s/ Robert W. Clarida*
Robert W. Clarida
rclarida@reitlerlaw.com
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th FL
New York New York 10022
(212) 209-3050

## CERTIFICATE OF COMPLIANCE

I, ROBERT W. CLARIDA, an attorney admitted to practice in the Southern District of New York and a member of Reitler Kailas & Rosenblatt LLC, counsel for Plaintiffs herein, hereby certify that the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6), exclusive of the cover page, table of contents, table of authorities, and this certificate of compliance, is 6,802 words and complies with the formatting rules contained in Section II.D. of the Individual Practices of Judge John G. Koeltl.

Dated: December 28, 2020                    /s/ *Robert W. Clarida*
      New York, New York                    Robert W. Clarida