UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMOND GRANT P/K/A "EDDY GRANT", GREENHEART MUSIC LIMITED, a United Kingdom Limited Company, and GREENHEART MUSIC LIMITED, an Antigua and Barbuda Limited Company, <br><br> Plaintiffs, <br><br> -against- <br><br> DONALD J. TRUMP and DONALD J. TRUMP FOR PRESIDENT, INC., <br><br> Defendants. | Civil Action No. 1:20-cv-07103-JGK |

### DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants Donald J. Trump and Donald J. Trump For President, Inc. (together, "Defendants") respectfully submit this Supplemental Brief in support of their Motion to Dismiss the Complaint of Plaintiffs Edmond Grant p/k/a "Eddy Grant" ("Grant"), Greenheart Music Limited, an Antigua and Barbuda Limited Company, and Greenheart Music Limited, a United Kingdom Limited Company (collectively, "Plaintiffs"). Defendants submit this brief to address the Second Circuit's recent decision in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, No. 19-2420-CV, 2021 WL 3742835 (2d Cir. Aug. 24, 2021) ("*Andy Warhol* II"). (*See* Dkt. No 41.) Defendants also address *Brown v. Netflix, Inc.* 855 F. App'x 61 (2d Cir. 2021), in which, on May 18, 2021, after the close of the prior briefing here, the Second Circuit affirmed a case on which Defendants relied on their motion to dismiss.

  **A.** ***Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith***

In *Andy Warhol* II, the Second Circuit reversed a summary judgment, which this Court had granted in favor of the plaintiff Andy Warhol Found. for the Visual Arts, Inc. ("Warhol"). *See* 382

1

F. Supp. 3d 312 (S.D.N.Y. 2019) ("*Andy Warhol* I"). This Court had held that Warhol's fourteen silkscreen prints and two pencil illustrations of the musician Prince (collectively, the "Prince Series") constituted fair use of a photograph of Prince, taken by the [plaintiff?] photographer Lynn Goldsmith ("Goldsmith"). Reversing, the Second Circuit held that all four statutory fair use factors favor Goldsmith and that the Prince Series works are not fair use as a matter of law. *Andy Warhol* II, 2021 WL 3742835, at *1.

As explained below, there are significant factual distinctions between *Andy Warhol* II and the present case. Nothing in *Andy Warhol* II changes the fair use analysis in this case or affects Defendants' position that the Animation is a fair use as a matter of law.

In *Andy Warhol* II, the Second Circuit primarily found that the first factor of transformativity weighed heavily in favor of Goldsmith. The Second Circuit recognized: "In evaluating the extent to which a work is transformative in the fair use context, we consider the 'purpose and character' of the primary and secondary works." *Id*. at *7 (citing *Google LLC v. Oracle Am., Inc*., ⸺ U.S. ⸺, 141 S. Ct. 1183, 1204, 209 L.Ed.2d 311 (2021)). The Second Circuit discussed its prior decision in *Bill Graham Archives v. Dorling Kindersley Ltd*., which "held that the reproduction in a book about the Grateful Dead of images of posters originally created to advertise Grateful Dead concerts was transformative because that use was 'plainly different from the original purpose for which they were created.'" *Id.* (quoting *Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 609-10 (2d Cir. 2006)).

In *Andy Warhol* II, the Second Circuit further emphasized cases in which fair use was properly found – where the secondary work obviously comments on the original, relates back to the original or uses the original for a purpose other than that for which the original was created. *Id*. (*see e*.*g*., citing *Blanch v*. *Koons*, 467 F.3d 244, 253 (2d Cir. 2006)). To be transformative, the secondary work "must reasonably be perceived as embodying a distinct artistic purpose, one that conveys a new meaning or message separate from its source material." *Id*. In finding that the Prince Series was not transformative, the Second Circuit determined that the works shared the same overarching purpose – they both function as works of visual art that are portraits of the same person. *Id*. at *9.

Here, by contrast, the parties' works have entirely different purposes: a sound recording for **musical entertainment** and an animated video for **political commentary**. As explained in Defendants' prior briefs, the purpose and character of the original Song and the Animation are entirely different. *See* Dkt. No. 19, Mem. at 2, 5 8-11; Dkt. No. 27, Reply at 4.

In sum, the Animation had a "fundamentally different and new" purpose and character from that of the Song. Therefore, under *Andy Warhol* II and prior law, the Animation is transformative as a matter of law. *Andy Warhol* II, 2021 WL 3742835, at *9.

With regard to the second factor, the nature of the copyrighted work, the Second Circuit in *Andy Warhol* II found this to favor Goldsmith mainly because the original work was unpublished, and a single license of the work did not change its status as an unpublished work. *Andy Warhol* II, 2021 WL 3742835, at *12. In this case, by contrast, the Song is indisputably a published work. *See* Dkt. No. 24, Opp. at 20. Published works are not afforded the "considerably narrower" scope of fair use applicable to the unpublished work at issue in *Andy Warhol* II, 2021 WL 3742835, at *11. Here, furthermore, this factor has limited weight because the Animation is transformative under *Andy Warhol* II and prior law. *See* Mem. at 12-13.

With regard to the third factor, the amount and substantiality of the use, the Second Circuit in *Andy Warhol* II found that this factor strongly favored Goldsmith because "the Prince Series borrows significantly from the Goldsmith Photograph, both quantitatively and qualitatively." *Id*. at *13. An analysis of this factor requires a consideration of both "the quantity of the materials used [and] also their quality and importance in relation to the original work." *Id*. at *12 (citations and internal quotations omitted).

In *Andy Warhol* II, the quantity and quality of use was significant due to the use of a large portion of the Goldsmith Photograph (Prince's head and face) and the image of Prince's face as the most important aspect of both works. Also, Warhol used the Goldsmith Photograph to create 16 individual secondary works.

Here, the opposite is true. The quantity and quality of use of the Song in the Animation is *de minimus*. Whereas in *Andy Warhol* II, the vast majority of the original work was used in the

secondary Andy Warhol works, here only 17.5% of the Song was used in the Animation. *See* Mem. at 14. Further, the central component of the Animation is the animated caricatures of then-Presidential candidate Joe Biden and other video content, which are obviously not contained in the original work. Finally, the snippet of the Song was obscured by an audio overlay of Biden's voice. This also cuts against the finding that the song was a central component of the Animation; the Song was aurally altered by the overlay of Mr. Biden's speech. Accordingly, this factor favors Defendants under *Andy Warhol* II.

With regard to the fourth factor, the effect of the use on the market for the original, the Second Circuit in *Andy Warhol* II found this to favor Goldsmith due to the potential harm to Goldsmith's derivative market – for example, lost royalty payments to Goldsmith as a result of Warhol's licensing of the Prince Series. *Andy Warhol* II, 2021 WL 3742835, at *15-16. In *Andy Warhol* II, the original photograph of Prince was licensed to Vanity Fair magazine to create an artistic illustration. *Id*. The Second Circuit found it persuasive that there currently exists a market for Goldsmith to license her artistic photograph to other artists for similar artistic purposes. *Id*. at *16.

Here, by contrast, there is no such derivative market. As a single social media post by Defendant former President Trump on his personal Twitter account, the Animation could not have been a lost licensing opportunity for Plaintiffs, as no licensing payments were generated. Therefore, the Animation posed absolutely no threat to Plaintiffs' licensing opportunities or use of the Song in derivative markets. Accordingly, this factor favors Defendants under *Andy Warhol* II and prior law.

In sum, in weighing the four fair use factors, *Andy Warhol* II does not alter Defendants' position: The first, third and fourth factors weigh in favor of fair use, and the second factor is neutral. Indeed, under the Second Circuit's elucidation of the fair use factors in *Andy Warhol* II, the Animation was a fair use as a matter of law.

B. *Brown v. Netflix, Inc.*

Defendants relied primarily on *Brown v. Netflix, Inc.* in support of their motion to dismiss. *See* Mem. at 7-10, 12, 14-15. On the facts, *Netflix* is far more analogous here than *Andy Warhol*.

4

Initially, in *Netflix,* the Second Circuit reaffirmed the proposition that "a fair use defense may be 'so clearly established by a complaint as to support dismissal.'" *Netflix*, 855 F. App'x at 62 (quoting *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016)). Therefore, the Court may determine fair use on Defendants' motion to dismiss.

Defendants' opening brief at page 9 states the facts of *Netflix*. The Second Circuit agreed with the District Court that the first, third and fourth fair use factors favored the defendants, while the second factor was neutral. *Netflix*, 855 F. App'x at 62.

With regard to the first factor, the Second Circuit found that the secondary work (the film) provides a commentary on the burlesque art form and does not merely re-broadcast the performance – "rather, it combines those performances with cultural commentary…." *Id*. at 63. The Court noted that the secondary work "captures this dancer's use of the Song as brief background accompaniment to her burlesque act." *Id*. The Court explained that in this context, the "Defendants' incidental use of the Song is consistent with the Film's nature as a documentary providing commentary and criticism" and is therefore transformative. *Id.*

The same is true here. The use of 40 seconds of the Song in the Animation does not merely rebroadcast the Song, but rather combines a short portion of it with commentary and satire. Accordingly, for the same reasons as in *Netflix*, the Animation is transformative and is "entitled to a presumption in favor of fair use with regard to factor one." *Id*. (*see* cited cases).

The Second Circuit found that the third factor – the amount of the borrowing – also favors a fair use finding because only eight seconds of the song are heard in the film, and although the "refrain used may be the 'heart' of the Song, a recognizable chorus can be used fairly when use of that segment of the song is 'reasonable in relation to the purpose of the copying.'" *Id*. at 64 (citing *Campbell*, 510 U.S. 569, 586–88 (1994). This case presents precisely the same scenario. The Animation contains a mere 17.5% of the Song; whether or not the Song is recognizable, its limited use in the overall context of the Animation is reasonable. Therefore, under the Second Circuit's analysis in *Netflix*, factor three favors a finding of fair use.

5

Finally, the fourth factor – the effect of the secondary use on the potential market for the original work – also favored the defendants in *Netflix*. The film contained only an eight-second excerpt of the three-minute Song, such that the intended audience for the Song would be unlikely to purchase the film "in preference to the original." *Id*. (quoting *Authors Guild v. Google, Inc*., 804 F.3d 202, 223 (2d Cir. 2015) (internal quotations omitted)).

Similarly, here, the limited use of the snippet of the Song in the Animation (obscured by audio overlay of President Biden speaking) cannot possibly usurp the market for the original work; the intended audience would not likely purchase the Animation (even if it were for sale, which it is not), instead of the Song. As in *Netflix*, the brief, obscured use of a small excerpt from the song, as a component of a work recorded for documentary purposes, or for purposes of political satire and commentary, does not plausibly fall within the traditional or well-developed market for the Song. Therefore, the fourth factor weighs in favor of fair use.

For these reasons, and those stated in Defendants' prior briefs in support of their motion to dismiss, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

|  |  |
|---|---|
| Dated: September 8, 2021<br>New York, New York | Respectfully submitted,<br><br> /s/ Darren W. Saunders<br>Darren W. Saunders<br>dsaunders@peroffsaunders.com<br>Mark I. Peroff<br>mark.peroff@peroffsaunders.com<br>Cassandra M. Tam<br>cassandra.tam@peroffsaunders.com<br>Jason H. Kasner<br>jkasner@peroffsaunders.com<br>PEROFF SAUNDERS P.C.<br>745 5th Avenue \| Suite 500<br>New York, NY 10151<br>Tel: 646.898.2030<br><br>Kenneth Andrew Caruso<br>ken.caruso@mfsllp.com<br>MUKASEY FRENCHMAN LLP<br>570 Lexington Ave., Suite 3500<br>New York, NY 10022<br>Tel: 212.466.6400<br><br>*Attorneys for Defendants* |