UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMOND GRANT P/K/A "EDDY GRANT", GREENHEART MUSIC LIMITED, a United Kingdom Limited Company, and GREENHEART MUSIC LIMITED, an Antigua and Barbuda Limited Company,<br><br>                 Plaintiffs,<br><br>     – against –<br><br>DONALD J. TRUMP and DONALD J. TRUMP FOR PRESIDENT, INC.,<br><br>                Defendants. | Civil Action No. 1:20-cv-07103-JGK |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................................II

PRELIMINARY STATEMENT .......................................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................................ 2

ARGUMENT ........................................................................................................................................ 9

   I.   LEGAL STANDARD ON SUMMARY JUDGMENT ....................................................... 9

   II.   PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT
      DEFENDANTS COMMITTED COPYRIGHT INFRINGMENT .................................... 10

      A.   Plaintiffs Own a Valid Copyright in the Works ............................................................ 10

      B.   Defendants Copied the Works Without a License or Authorization or Consent by
         Publishing the Tweet Containing the Infringing Video ................................................. 11

         1.   Evidence of Defendants' Direct Copying .................................................................. 11

         2.   Circumstantial Evidence of Defendants' Copying .................................................... 12

   III.  DEFENDANTS' FAIR USE DEFENSE DOES NOT RAISE A GENUINE ISSUE OF
      MATERIAL FACT .............................................................................................................. 13

      A.   Defendants' use of the Works is Commercial and Not Transformative ....................... 14

      B.   The Works are Creative and Entitled to Broad Copyright Protection .......................... 17

      C.   Defendants Appropriated the Heart and Essence of the Works .................................... 18

      D.   The Infringing Video Impaired the Potential Market for The Works ........................... 19

CONCLUSION ................................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*175 Brown v. Eli Lilly & Co.*,
654 F.3d 347 (2d Cir. 2011)........................................................................... 13

*American Geophysical Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994)............................................................................. 18

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
143 S. Ct. 1258 (2023)………………………………………………………...……13, 16, 17

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
11 F.4th 26 (2d Cir. 2021) ............................................................................. 13

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)............................................................ 11

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2015)................................................................................. 13, 15

*Bridgeport Music, Inc. v. Dimension Films*,
410 F.3d 792 (6th Cir. 2005) ......................................................................... 12

*Campbell v. Acuff–Rose Music, Inc.*,
510 U.S. 569 .................................................................................................. 17

*Capitol Recs., LLC v. Escape Media Grp.*, Inc.,
2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ............................................... 11

*Cordiano v. Metacon Gun Club, Inc.*,
575 F.3d 199 (2d Cir. 2009)........................................................................... 13

*Fox News Network, LLC v. Tveyes, Inc.*,
883 F.3d 169 (2d Cir. 2018)........................................................................... 20

*Gaste v. Kaiserman*,
863 F.2d 1061 (2d Cir. 1988)......................................................................... 10

*Goldman v. Breitbart News Network, LLC*,
302 F. Supp. 3d 585 (S.D.N.Y. 2018)............................................................ 11

*Grant v. Trump*,
563 F. Supp. 3d 278 (S.D.N.Y. 2021)………….………………….………………...….………*passim*

*Hamil Am. Inc. v. GFI*,
193 F.3d 92 (2d Cir. 1999)..................................................................................... 10

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)............................................................................................... 14

*Henley v. DeVore*,
733 F.Supp.2d 1144 (C.D. Cal. 2010) ……………………………………….……….....14, 20

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010).................................................................................... 9

*In re Rubin Bros. Footwear, Inc.*,
119 B.R. 416 (S.D.N.Y. 1990)................................................................................. 8

*Jaquez v. Flores*,
2016 WL 1267780 (S.D.N.Y. Mar. 30, 2016) ......................................................... 9

*Jorgensen v. Epic/Sony Records.*,
351 F.3d 46 (2d Cir. 2003)……………………………………………………………………9, 11

*Justin R. v. Bloise*,
2009 WL 1953422 (S.D.N.Y. July 2, 2009) ........................................................... 4

*Nicklen v. Sinclair Broad. Grp., Inc.*,
551 F. Supp. 3d 188 (S.D.N.Y. 2021)..................................................................... 11

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010)...................................................................................... 10

*Price v. Cushman & Wakefield, Inc.*,
808 F.Supp.2d 670 (S.D.N.Y. 2011)....................................................................... 9

*R.F.M.A.S., Inc. v. Mimi So*,
619 F. Supp. 2d 39 (S.D.N.Y. 2009)....................................................................... 11

*Ringgold v.  Black Entertainment Television, Inc.*
126 F.3d 70 (2d Cir. 1997)...................................................................................... 15

*Rogers v. Koons*,
960 F.2d 301 (2d Cir. 1992)..................................................................................... 11

*SCR Joint Venture L.P. v. Warshawsky*,
559 F.3d 133 (2d Cir. 2009)................................................................................... 8

*Swift Spindrift Ltd. v. Alvada Insurance Inc.*,
175 F.Supp.3d 169 (S.D.N.Y. 2016) .......................................................... 8

*TCA Television Corp. v. McCollum*,
839 F.3d 168 (2d Cir. 2016) .................................................................... 16

*Toho Co. v. William Morrow & Co.*,
33 F. Supp. 2d 1206 (C.D. Cal. 1998) .................................................... 16

*Weissmann v. Freeman*,
868 F.2d 1313 (2d Cir. 1989) ................................................................. 14

**Statutes**
17 U.S.C. § 107(3) ................................................................................... 17

**Other Authorities**
4 William F. Patry, *Patry on Copyright* § 10:139.30 (2020) ..................... 17

**Rules**
Federal Rule of Civil Procedure 56 ......................................................... 8

Plaintiffs Edmond Grant ("Grant"), Greenheart Music Limited, a United Kingdom Limited Company ("Greenheart UK") and Greenheart Music Limited, an Antigua and Barbuda Limited Company ("Greenheart Antigua," and together with Greenheart UK and Grant, "Plaintiffs"), by their attorneys Reitler Kailas & Rosenblatt LLP, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment as to Liability against defendants Donald J. Trump ("Trump") and Donald J. Trump for President, Inc. (the "Campaign," and together with Trump, "Defendants") pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1.

## PRELIMINARY STATEMENT

This case concerns Defendants' willful taking and infringement of the musical composition (the "Composition") and sound recording (the "Sound Recording") of Plaintiffs' works entitled "Electric Avenue."  The Composition and the Sound Recording are hereafter referred to as the "Works."  Declaration of Edmond Grant dated September 15, 2023 ("Grant Decl.") Exhibit 1. [1] Defendants used the Works in a video (the "Infringing Video") supporting Trump's 2020 presidential campaign for reelection, which was posted on August 12, 2020 on Trump's Twitter account to nearly ███████████ and on other social media platforms without consent or authorization from Plaintiffs.  Declaration of Brett Van Benthysen dated September 15, 2023 ("Van Benthysen Decl.") Exhibit 15.[2]  There are no material facts in dispute that Defendants infringed Plaintiffs' Works and as such Plaintiffs are entitled to judgment as a matter of law as to liability on Counts I and II of the Complaint.

Defendants will rely on the affirmative defense of fair use, which the Court rejected at the pleading stage.  Discovery has revealed unequivocally that Defendants' use of the Works was not

---

[1] Exhibit 1 is an audio file of the Sound Recording embodying the Composition.

[2] Exhibit 15 is a video file of the Infringing Video.

transformative and does not comport with any theory of the fair use doctrine.  The defense, which Defendants have the burden of proving, should be rejected again as a matter of law and Plaintiffs' motion that Defendants committed copyright infringement should be granted in its entirety.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

This is a copyright infringement action brought by Plaintiffs to redress Defendants' unauthorized and unlawful use of Plaintiffs' Works in violation of the Copyright Act.

### *Plaintiffs and the Works*

Grant is a musician and songwriter residing in Barbados and is a citizen of the United Kingdom.  Grant Decl. at ¶¶1-2.  Grant wrote, recorded, and produced the Works entitled "Electric Avenue."

Plaintiff Greenheart Antigua is a limited company organized and existing under the laws of Antigua and Barbuda with a principal place of business located at 39 Market Street, St. John's, Antigua and Barbuda, West Indies.  *Id.* and Exhibit 11 (Deposition Transcript of Edmond Grant "Grant Tr.") at 19:4-21:21.

Greenheart UK is a limited company organized and existing under the laws of United Kingdom with a principal place of business located at 1341 High Road, Whetstone, London N20 9HR.  Greenheart UK was formed in 1997 to act as the licensing arm of Greenheart Antigua with respect to Grant's musical works, including but not limited to the Sound Recording.  *Id.*

Grant is the sole owner of both Greenheart UK and Greenheart Antigua.  *Id.* at ¶¶1-2.  In or about 1983 Grant assigned all of his rights and interests in the Works to Greenheart Antigua.  *Id.* at ¶4.

On February 7, 1983, Greenheart Antigua registered the Composition in the United States Copyright Office (the "Copyright Office") under registration number PA0000164029.  Grant Decl. Exhibit 2.

The Sound Recording, which embodies Grant's musical performance of the Composition, was initially released in 1983.  *Id.* at ¶2.

By written agreement with Warner Music UK Limited ("Warner Music") dated May 3, 2001 (the "Warner Music Agreement"), Greenheart UK licensed the copyright in the Recording, among other works, to Warner Music for a territory including the United States for a period of five (5) years from the date of the first release of the Recording in the United Kingdom.  *Id.* Exhibit 4.

During the term of the Warner Music Agreement, Warner Music's affiliate, London Records, re-released the Recording in 2001 on the album entitled "Eddy Grant: The Greatest Hits" (the "Album").  On March 22, 2002, London Records registered the Album containing the Sound Recording in the Copyright Office under registration number SR0000344006. *Id*. Exhibit 3.

The Warner Music Agreement expired by its terms and/or terminated no later than September 20, 2006, at which point Greenheart UK became the beneficial owner of the SR copyright registration for the Album and Sound Recording.  Grant Decl. at ¶7.

On July 21, 2008, Greenheart UK licensed the publishing rights in Electric Avenue to EMI Music Publishing Limited ("EMI").  Greenheart Antigua remained the beneficial owner of the Composition copyright and has had the continuing right to receive royalties for the commercial exploitation of the copyright.  Further, Greenheart Antigua continued to own the Sound Recording

copyright.  Grant Decl. at ¶8 and Exhibit 5.  In or about 2018, Sony purchased EMI.  Van Benthysen Decl. Exhibit 12.[3]

On August 29, 2020, Grant confirmed the assignment in 1983 of all his rights and interests, including the copyrights, in and to the Works, to Greenheart Antigua, in an ex post facto written agreement between Grant and Greenheart Antigua.  Grant Decl. Exhibit 7.

### Defendants and their infringing conduct

Trump was the 45th President of the United States.  The Campaign ███████████████ ███████████████████████████████████████████████████████.  Van Benthysen Decl. Exhibit 21 (Deposition Transcript of Donald Trump, hereinafter "Trump Tr.") at 10:23-12:7, Exhibit 22 (Deposition Transcript of Daniel J. Scavino, hereinafter "Scavino Tr.") at 28:18-29:5.[4]

On August 12, 2020, Daniel Scavino ("Scavino"), ██████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

---

[3] The Court can take judicial notice of Sony's acquisition of EMI.  *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (affirming district court's judicial notice of news articles); *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 490 (N.D.N.Y. 2020) ("any facts subject to judicial notice may be properly considered in a motion for summary judgment").

[4] Defendants could not produce a 30(b)(6) witness for the Campaign.  Van Benthysen Decl. at ¶14 and Exhibit 23.  Defendant should be precluded from presenting evidence in their opposition concerning any of the 30(b)(6) topics identified in Plaintiffs' deposition notice.  *Justin R. v. Bloise*, 2009 WL 1953422, *1 (S.D.N.Y. July 2, 2009).

███████████████████████████ a 55 second video  (the Infringing Video) in which the Sounds

Recording, which embodies the Composition, can be heard starting at the 15 second mark and

continuing for the duration of the video.  Van Benthysen Decl. Exhibits 13, 14, and 15 (a video

file of the Infringing Video); Scavino Tr. at 49:13-51:18.  Scavino testified that ████████████

███████████████████████████████████████████████████████████████████████████████████

███████████████████████.  Scavino Tr. at 55:2-56:17.  He also ██████████████████████████

███████████████████████████████████████████████████████████████████████████████████

█████████████████████████████  Scavino Tr. at 49:13-51:18.  Trump testified that ████████████

████████████████████████████████████.  Trump Tr. at 33:19-34:21, 36:24-37:11.

Trump, Scavino, and/or the Campaign never licensed the Works, and Plaintiffs never authorized

or consented to Defendants' use of the Works.  Grant Decl. at ¶15.

The Infringing Video endorses Trump's 2020 presidential re-election campaign to "Keep

America Great" (aka "KAG") and attempts to denigrate the Democratic Party's 2020 presidential

nominee, Former Vice President Joseph Biden.  Van Benthysen Decl. Exhibit 15.  The Infringing

Video contains a visual depiction of a high-speed red train bearing the words "Trump Pence KAG

2020" in stark contrast to a slow moving handcar bearing the words "Biden President: Your Hair

Smells Terrific" being powered by an animated likeness of Former Vice President Biden while

out-of-context excerpts of Former Vice President Biden's speeches and interviews are played over

the Sound Recording.

In 2020 Trump and the Campaign ████████████████████████████████████████████

███████████████████████████████████████████.  Trump Tr. at 17:1-17; Scavino Tr.

at 33:1-34:10.  Trump and Scavino ███████████████████████████████████████████████

█████████████████.  Trump Tr. at 20:20-21:15, 23:16-24:3; Scavino Tr. at 20:11-21:2, 35:2-38:4; Van

Benthysen Decl. Exhibit 18 (Attorney for the Trump Organization stating "The campaign primarily runs these accounts").  Scavino testified that ███████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████.  Scavino Tr. at 25:14-26:17.  Trump, Scavino, and the Campaign ████████████████████████

████████████████  Trump Tr. at 27:20-29:24; Scavino Tr. at 44:5-20.

Trump testified that ████████████████████████████████████████

████████████████████████████.  Trump Tr. at 26:5-20.  He testified that █

█████████████████████████████████████████.  Trump Tr. at 44:8-45:12.  ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████  Trump Tr. at 42:8-25; see also *Id*. at 44:2-7.

Scavino testified that ████████████████████████████████████████

████████████████████████████████████████████████.  Scavino Tr. at 40:11-14, 52:15-18.  Scavino testified that ███████████████████████████

████████████████████████████████████████████.  Scavino Tr. at 39:15-40:1, 40:19-41:3.  Scavino also testified that ████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████.  *Id.* at 64:14-65:19.

Trump ████████████████████████████████████████.  *Id.* at 76:15-

18. In Scavino's own words ████████████████████████████████████

████████████████████████████ *Id.* at 66:12-67:18.

████████████████████████████████████████████████████

████████████████████. Trump Tr. at 20:10-19.  According to Twitter, the Infringing Video has

been viewed more than 13.7 million times.  Van Benthysen Decl. Exhibits 13 and 14.  The Tweet

containing the Infringing Video has been "liked" more than 350,000 times, re-tweeted more than

139,000 times, and has received close to 50,000 comments.  *Id.*

By letter dated August 13, 2020 (the "Cease and Desist Letter"), Plaintiffs, through their

counsel, advised Defendants of Plaintiffs' beneficial copyright ownership in the Works and

Defendants' unauthorized uses thereof in connection with the Infringing Video, and demanded

that Defendants cease and desist from any further infringing conduct.  Grant Decl. Exhibit 6.

Defendants failed and/or refused to comply with Plaintiffs' demands set forth in the Cease and

Desist Letter, and specifically did not cease and desist from using the Infringing Video as

requested.  As of September 1, 2020, the date the Complaint was filed, neither the Infringing Video

nor the Tweet containing the Infringing Video had been removed from Twitter.  Van Benthysen

Decl. Exhibit 19 at GRANT0293.

On August 13, 2020, Plaintiffs also sent Twitter a notice to remove the Tweet and

Infringing Video.  Van Benthysen Decl. Exhibit 16.  As of September 1, 2022, Twitter had not

removed the Tweet or Infringing Video.  *Id.* Exhibit 19 at GRANT0293.  The Tweet and Infringing

Video were ultimately removed by Twitter.

### *Procedural history*

On September 1, 2020, Plaintiffs filed their Complaint against Defendants.  Van Benthysen

Decl. Exhibit 17.

On November 11, 2020, Defendants moved to dismiss the Complaint on the ground that the use of the Works constituted a fair use, a complete defense against any claim for infringement. ECF Doc. No. 19.   On September 28, 2021, the Court issued an Order and Opinion denying Defendants' motion in its entirety.   *Grant v. Trump*, 563 F. Supp. 3d. 278, 282 (S.D.N.Y. 2021). In rejecting Defendants' fair use arguments, the Court held that the Defendants use of the Works was not transformative, and highlighted that: (i) the Infringing Video did not relate back to the Works or use the Works for a purpose other than for which they were created; (ii) the Works were not edited or modified in any way; and (iii) the "song is immediately recognizable when it begins playing around the fifteen-second mark."   *Id.* at 284-285.   The Court also rejected Defendants' argument that the Infringing Video was for a non-commercial use, finding that the Works were not integral to the Infringing Video's political message and the Works were not parodied or used as commentary.   *Id.* at 287.   The Court also found that the amount and substantiality of the use of the Works favored Plaintiffs because the introduction of the Works is immediately recognizable in the Infringing Video, the chorus is repeated six times in the excerpted 40 seconds of the Works, and the Works play for 72.7% of the duration of the Infringing Video.[5]   Finally, the Court held that "widespread, uncompensated use of Grant's music in promotional videos – political or otherwise – would embolden would-be infringers and undermine Grant's ability to obtain compensation in exchange for licensing the music."   *Id.* at 289.

On October 19, 2021, Defendants filed their Answer.  Van Benthysen Decl. Exhibit 20.

---

[5] The Court found the second factor in a fair use analysis, the nature of the copyrighted work, also cut in Plaintiffs' favor, but had "limited weight in the overall fair use determination."   *Id.* at 287-288.

## **ARGUMENT**

## I.    **LEGAL STANDARD ON SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Swift Spindrift Ltd. v. Alvada Insurance Inc.*, 175 F.Supp.3d 169, 174 (S.D.N.Y. 2016) ("Summary judgment is appropriate when, after reviewing the parties' submissions in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). An issue of fact is only "genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (citation omitted); *Swift Spindrift Ltd.*, 175 F.Supp.3d at 174. "A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P.*, 559 F.3d at 137; *Swift Spindrift Ltd.*, 175 F.Supp.3d at 174.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 421 (S.D.N.Y. 1990). Upon such a showing, "the opposing party must set out specific facts showing a genuine issue of material fact for trial." *Jaquez v. Flores*, 2016 WL 1267780, at *2 (S.D.N.Y. Mar. 30, 2016). While a court must resolve ambiguities in the non-movant's favor, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); *Price v. Cushman & Wakefield, Inc.*, 808 F.Supp.2d 670, 685 (S.D.N.Y. 2011) ("[T]he non-moving party

cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial").

There is no genuine issue of material fact that Defendants infringed Plaintiffs' copyrights in the Works by creating, producing, distribution, promoting, advertising, performing by means of digital audiovisual transmission, and otherwise commercially exploiting the Infringing Video, and/or authorizing others to do the same, without Plaintiffs' authority or consent, in violation of 17 U.S.C. § 101 et seq.  The uncontroverted facts demonstrate that Plaintiffs own a valid and persisting copyright in the Works and that Defendants unlawfully appropriated the Works in the Infringing Video.  Plaintiffs are thus entitled to judgment as a matter of law as to liability on Count I and II of the Complaint.

## II.    PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT DEFENDANTS COMMITTED COPYRIGHT INFRINGMENT

In order to establish a claim of copyright infringement, a plaintiff must demonstrate: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work.  *Jorgensen v. Epic/Sony Records.*, 351 F.3d 46, 51 (2d Cir. 2003).  Unauthorized copying is proven by demonstrating actual copying and improper or unlawful appropriation.  *Id.*  Evidence of copying may be proven directly or circumstantially "by demonstrating that the person who composed the defendant's work had access to the copyrighted material . . . and that there are similarities between the two works that are probative of copying."  *Id.; see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) *quoting Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999); *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).

### A.  Plaintiffs Own a Valid Copyright in the Works

"A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Jorgensen*, 351 F.3d at 51; 17 U.S.C.

§ 410(c).  Plaintiffs registered the Composition in 1983.  Grant Decl. Exhibit 2.  The Sound Recording was licensed in 2002 by London Records, an affiliate of the licensee under the Warner Music Agreement.  *Id*. Exhibit 3.  The Warner Music Agreement expired by its terms no later than September 20, 2006, and ownership of the copyright in the Sound Recording reverted back to Plaintiffs.  Grant Decl. at ¶7 and Exhibit 4 at ¶1(b).  Plaintiffs thus demonstrate prima facie evidence of ownership in the copyrights to the Works.

### B. Defendants Copied the Works Without a License or Authorization or Consent by Publishing the Tweet Containing the Infringing Video

Plaintiffs can prove unauthorized copying both directly and through circumstantial evidence.

#### 1. Evidence of Defendants' Direct Copying

The facts unequivocally demonstrate direct evidence of copying.  Trump admits ███.  ███████████████████████████████████████████████████████ ████████████████████████████.  Trump Tr. at 20:10-19, 33:19-34:21, 36:24-37:11.  Scavino admitted █████████████████████████████████████████████████████ ████████████████████████████████████.  Scavino Tr. at 55:2-56:17.  Scavino ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████.  Scavino Tr. at 25:14-26:17, 49:13-51:18.  Defendants did not have a license and Plaintiffs did not provide authority or consent for Defendants to use the Works as contained in the Infringing Video.  The undisputed direct evidence of copying is sufficient to support a grant of summary judgment.  *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992); *Capitol Recs., LLC v. Escape Media Grp.*, Inc., 2015 WL 1402049, at *3, *39 (S.D.N.Y. Mar. 25, 2015) (awarding summary judgment based on streaming copyrighted recordings without authorization

which constitutes evidence of direct infringement of public performance rights); *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 423 (S.D.N.Y. 2011) (sharing and downloading sound recordings without authorization constitutes evidence of direct infringement).  Finally, courts have recently confirmed that publishing an embedded photo or video, as Defendants did by publishing the Tweet containing the Infringing Video, is sufficient for direct infringement.  *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 196 (S.D.N.Y. 2021) (embedding video in news article violated display right under Copyright Act); *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 586 (S.D.N.Y. 2018).

### 2.  Circumstantial Evidence of Defendants' Copying

Plaintiffs can also prove unauthorized copying through circumstantial evidence of access and substantial similarity.  "Access means that an alleged infringer had a 'reasonable possibility'— not simply a 'bare possibility'—of [viewing] the prior work; access cannot be based on mere 'speculation or conjecture.'"  *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 62 (S.D.N.Y. 2009) (*citing Jorgensen*, 351 F.3d at 51).  Substantial similarity exists where "the accused work is so substantially similar to the copyrighted work that reasonable jurors could not differ on this issue." *Rogers*, 960 F.2d at 307.

Both elements are easily satisfied and not in dispute.  Trump and Scavino admitted ███

██████████████████████████████████████████████████████████

████████████████████████████.  Moreover, Defendants admit in their Answer that substantial similarity exists because the Infringing Video contains an "excerpt of the song referenced as Plaintiffs' Recording can be heard at or around the 15 second mark of the [Infringing Video] and continues for the duration of the video."  Van Benthysen Decl. Exhibit 20 at ¶39.  And as the Court previously ruled, the Infringing Video "did not edit the song's lyrics, vocals, or instrumentals at all, and the song is immediately recognizable when it begins playing around the

fifteen second mark of the video . . . ." *Grant*, 563 F. Supp. 3d. at 285.  The Sixth Circuit has held

that substantial similarity is not an issue when the question is "whether the actual sound recording

has been used without authorization."  *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792,

798 (6th Cir. 2005) (citations omitted).   Accordingly,  through  direct  and/or  circumstantial

evidence, Plaintiffs satisfy their burden of proof as a matter of law with respect to each element of

the copyright infringement claims.[6]

### III.   DEFENDANTS' FAIR USE DEFENSE DOES NOT RAISE A GENUINE ISSUE OF MATERIAL FACT

As in Defendants' unsuccessful motion to dismiss, they will raise the defense of fair use to

attempt to defeat Plaintiff's motion, but the defense should be rejected as a matter of law.  Under

the Copyright Act, the four non-exclusive factors used to evaluate a fair use defense are as follows:

(1) the purpose and character of the use, including whether such use is of a commercial nature or

is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and

substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect

of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107; *Grant*,

563 F. Supp. 3d at 283–84.  The factors are not to be treated in isolation, but all must be explored,

and the results weighed together in light of the purposes of copyright. *Authors Guild v. Google,*

*Inc.*, 804 F.3d 202, 212 (2d Cir. 2015); *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 578

(1994).

Critically, notwithstanding Plaintiffs' burden on summary judgment, it is Defendants'

ultimate burden of proving their fair use defense.  *Grant*, 563 F. Supp. 3d at 284 (*citing Andy*

---

[6] At trial, Plaintiffs intend to prove that Defendants acted willfully, and the amount by which

Plaintiffs were damaged by Defendants' infringing conduct.

*Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 36 (2d Cir. 2021), *aff'd sub nom.*
*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 215 L. Ed. 2d 473
(2023). Where the nonmoving party bears the burden of proof at trial, "it ordinarily is sufficient
for the [summary judgment] movant to point to a lack of evidence" supporting the nonmovant's
claim. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). There is no
evidence to support Defendants' fair use defense and Defendants will not "come forward with
specific evidence demonstrating the existence of a genuine dispute of material fact" to survive
summary judgment. *175 Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal
quotation marks and citations omitted). Accordingly, there is no genuine issue of material fact in
considering the fair use factors that can defeat Plaintiffs' motion for summary judgment.

### A.  Defendants' use of the Works is Commercial and Not Transformative

The first factor, "the purpose and character of the use, including whether such use is of a
commercial nature or is for nonprofit educational purposes," asks whether the original work was
copied in good faith to benefit the public or for the commercial interests of the infringer. *Rogers*,
960 F.2d at 309.

The Court previously found that the Infringing Video was commercial in nature and not
transformative. *Grant*, 563 F. Supp. 3d at 286–87. The Court relied in part on *Henley v. DeVore,*
733 F.Supp.2d 1144 (C.D. Cal. 2010). In *Henley,* a founding member of the rock band The Eagles
was granted summary judgment against a California politician seeking a United States Senate seat.
The defendant made two campaign videos using songs co-written by plaintiff, sung by defendant's
campaign manager over karaoke instrumental tracks, using lyrics written by the politician to
denigrate his rival Barbara Boxer, as well as Nancy Pelosi, Barack Obama, and "cap-and-trade and
global-warming policies." *Henley,* 733 F. Supp. 2d  at 1149. The district court in *Henley* held that

the use was not transformative, *id.* at 1158, that the campaign's use was commercial, *id.* at 1159, and that the use caused cognizable harm to plaintiff's licensing market. *Id.* at 1162-63.

The Court also relied on *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985), and its holding that in determining whether a use is of a commercial purpose, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Grant*, 563 F. Supp. 3d at 286.  In other words, "[m]onetary gain is not the sole criterion, especially in settings where profit is ill-measured in dollars." *Id. quoting Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989).

Based on these principles, the evidence demonstrates unequivocally that the Infringing Video was used for a commercial purpose.  Defendants benefitted from their use of the Works by not having to pay Plaintiff customary licensing fees and by gaining publicity.  *Grant*, 563 F. Supp. 3d at 287, *citing Henley*, 733 F.Supp.2d at 1159.   Indeed, The Infringing Video was distributed by Trump via Twitter to Trump's ███████████████ .  According to Twitter, the Infringing Video has been viewed more than 13.7 million times.  Van Benthysen Decl. Exhibits 13 and 14.  The Tweet containing the Infringing Video has been "liked" more than 350,000 times, re-tweeted more than 139,000 times, and has received close to 50,000 comments.  *Id.*

Moreover, the Infringing Video is not transformative, so the commercial nature of Defendants' use, and the harm to the Plaintiffs, is not offset by any public benefit, as would be the case with a parody that comments on the Plaintiffs' works.  The Second Circuit has held that a work is transformative if, instead of merely superseding "the objects' of the original creation," the new work "instead adds something new, with a further purpose" or different character, altering the original work with new expression, meaning or message. *Authors Guild*, 804 F.3d at 214, *quoting*

*Campbell*, 510 U.S. at 579.  The Supreme Court has recently clarified that a defendant's work does not qualify as transformative merely because it "adds new expression" to the original use, however. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1273 (2023).  The "new expression" added by the defendant must have a compelling justification, such as targeted commentary or criticism about the original work, for the defendant to prevail under the first fair use factor. *Id.*  This is consistent with the pre-*Warhol* case law of the Second Circuit, which has stated that a "would be fair-user" must have justification for taking another's work. *Authors Guild*, 804 F.3d at 215.

There is no evidence of such justification here. The Infringing Video is not within the categories identified in Section 107 of the Copyright Act (criticism, comment, news reporting, teaching, scholarship, and research), which the Second Circuit has identified as being illustrative of (but not per se) fair use.  *Ringgold v. Black Entm't Television, Inc.*  126 F.3d 70, 78 (2d Cir. 1997).  Moreover, the Works are not integral to the political message in the Infringing Video.  Any other song could have been used or the Defendants could have "avoid[ed] the drudgery in working up something fresh" rather than copying Plaintiffs' Works without authorization. *Campbell*, 510 U.S. at 580.  Further, the Infringing Video does not purport to be a comment, criticism, or parody on the Works.  Indeed, Defendants conceded in their motion to dismiss (ECF Doc. No. 19 at page 1), that the Infringing Video was satirical, which faces a higher burden and requires a greater justification to be deemed a fair use. *Campbell*, 510 U.S. at 580.

Here, the only justification propounded came from Scavino, who stated ████████████ ██████████████████████████████████████████████████████████ Scavino Tr. at 49:13-51:18.  Trump offered ██████████████████████████████████ ██████████ Trump Tr. at 35:7-17.

Finally, nothing about the Infringing Video changed or altered the original entertainment purpose of the Works so as to create a fundamentally new or different purpose, even though the Infringing Video adds a multi-media component to the lyrics (much the same as a music video). *Andy Warhol Found.*, 143 S. Ct. at 1273 (2023); *TCA Television Corp. v. McCollum*, 839 F.3d 168, 181 (2d Cir. 2016)  (finding no transformative purpose in defendant's use of Abbott and Costello "Who's on First" comedy routine in a play because the routine was used for the same purpose for which was it was created, to be entertaining); *see Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1217 (C.D. Cal. 1998) ("numerous pictures from Toho's films do not transform anything, they are merely aesthetically pleasing to the reader.").

The Court previously summarized the first fair use factor as follows:

> Nothing about the song was integral to the video's political message, which is conveyed by the animation and the unflattering excerpts of President Biden's speech. Indeed, the defendants explicitly disclaim any overlap between the purposes of the song and the video. See, e.g., ECF No. 19, at 10. Thus the video does not rely on the song to express its political message; rather, the video incorporates music–like many videos do–to make the video more entertaining and memorable. In no sense does the video parody the copyrighted song or use the song for purposes of commentary. Cf. Nader, 2004 WL 434404, at *12-13. Moreover, there is a well-established market for music licensing, but the defendants sought to gain an advantage by using Grant's popular song without paying Grant the customary licensing fee. Accordingly, the video's use of Electric Avenue appears to be commercial, notwithstanding the video's political purpose.

*Grant*, 563 F. Supp. 3d at 287.  The facts have not changed and as a matter of law, Defendants' use of the Works is commercial and not transformative.

## B.  The Works are Creative and Entitled to Broad Copyright Protection

The second fair use factor "directs courts to consider the nature of the copyrighted work, including (1) whether it is expressive or creative or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work

is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower." *Id*. (citations omitted).

The nature of the Works is creative as opposed to factual. Grant testified that he created Electric Avenue as a "protest song, in common vernacular," but that "[e]veryone interprets a song in their own way." Grant Tr. at 41:9-15. Grant emphasized that while the inspiration for the song included commentary on sociological issues, songwriters "find meaning in words and images that those words create." *Id*. at 41:21-42:18. Even as to the title of the song, Grant testified "[i]t's not specific inasmuch as that there are many Electric Avenues in the world." *Id*. at 43:9-10. The Court previously held "it is clear that Electric Avenue is a creative work and therefore is closer to the core of intended copyright protection." *Grant*, 563 F. Supp. 3d at 288, *quoting Campbell*, 510 U.S. at 586.

As to the second factor, the Ninth Circuit has held that "neither *Harper & Row* nor any principle of fair use counsels that the publication of the copyrighted work weighs in favor of fair use." *Dr. Seuss Enterprises, L.P. v. ComicMix LLC,* 2020 WL 7416324 (9th Cir. Dec. 18, 2020); 4 William F. Patry, *Patry on Copyright* § 10:139.30 (2020) (explaining that the fact that a work is published does not mean that the scope of fair use is per se broader). The Court recognized the Ninth's Circuit's *Dr. Seuss* holding in its prior ruling on the motion to dismiss. *Grant*, 563 F. Supp. 3d at 288. Therefore, "the nature of the song favors the plaintiffs. However, this factor is assigned limited weight in the overall fair use determination." *Id.*

### C. Defendants Appropriated the Heart and Essence of the Works

The third fair use factor measures "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). "In assessing this factor, [the court] consider[s] not only the quantity of the materials used but also their quality and importance in relation to the original work." *Grant*, 563 F. Supp. 3d at 288 *quoting Andy Warhol Found.*, 11

F.4th at 45–46.  The Second Circuit stated that the test in assessing the third factor is "whether the quantity and value of the materials used [] are reasonable in relation to the purpose of the copying". *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006).

Defendants have copied a qualitatively and quantitatively significant portion of the Works, which the Court previously summarized as follows:

> The introductory portion of the song that is used in the animation is immediately recognizable. The excerpted portion of the song also includes the chorus, which repeats six times during the song, comprises the majority of the song's lyrics, and is of central importance to the original work. Moreover, while the excerpted forty seconds of the song make up only 17.5% of the song's total length, the song plays for 72.7% of the animation's duration. . . .  The song plays for the majority of the animation; the excerpt is of central importance to the original work . . . .

*Grant*, 563 F. Supp. 3d at 288.  Moreover, as explained in Section III.A above, Defendants offered no legitimate purpose or persuasive justification for why the Works were used.  The third factor favors Plaintiffs.

### D.  The Infringing Video Impaired the Potential Market for The Works

The fourth fair use factor considers "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Grant*, 563 F. Supp. 3d at 288 *quoting Andy Warhol Found.*, 11 F.4th at 48.  The market at issue includes licensing markets that are "traditional, reasonable, or likely to develop" for copyright owners generally.  *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994); *Grant*, 563 F. Supp. 3d at 288 *quoting Andy Warhol Found.*, 11 F.4th at 48 ("[t]his analysis embraces both the primary market for the work and any derivative markets that exist or that its author might reasonably license others to develop, regardless of whether the particular author claiming infringement has elected to develop such markets.").  "Analysis of this factor requires [the court] to balance the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if

the use is denied." *Id.*; *see Campbell*, 510 U.S. at 590-591 ("unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially adverse impact on the potential market for the original.").

The evidence in the record demonstrates that Plaintiffs have received at times considerable sums of money licensing the Works.  Grant Decl. Exhibits 8, 9, and 10.  Thus, the personal gain to Plaintiffs if Defendants' unauthorized use of the Works is denied is significant.  As the Court previously held, "[i]t is plain that widespread, uncompensated use of Grant's music in promotional videos–political or otherwise–would embolden would-be infringers and undermine Grant's ability to obtain compensation in exchange for licensing his music." *Grant*, 563 F. Supp. 3d at 289.  The burden is thus on Defendants to "bring forward favorable evidence" that potential markets will not be harmed, but no such evidence exists in this case.  *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997); *Henley*, 733 F. Supp. 2d at 1162–63 ("Defendants offer no evidence demonstrating that their songs would not usurp the potential licensing market for remakes or remixes of the Plaintiffs' songs, should they choose to license them.").

On the other hand, there is no value to the public if Defendants' unauthorized use of the Works is permitted because as stated above, Defendants could have used any song, created a new song, or used no song at all, to convey the same political message in the Infringing Video. "Relevant to this inquiry is the fact that the Defendants have taken the entire musical composition and have changed a minimal amount of lyrics." *Henley*, 733 F. Supp. 2d at 1162–63.  The Infringing Video "did not edit the song's lyrics, vocals, or instrumentals at all, and the song is immediately recognizable when it begins playing around the fifteen second mark of the video." *Grant*, 563 F. Supp. 3d. at 285; *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 177 (2d Cir. 2018) ("use of copyrighted material that merely repackages or republishes the original is

unlikely to be deemed a fair use") (citations omitted).  Defendants' fair use defense does not raise

a genuine issue of material fact and cannot defeat Plaintiff's Motion for Summary Judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be granted in

its entirety.

Dated:  September 15, 2023                          Respectfully submitted,

By: _s/ Brett Van Benthysen_
    Brian D. Caplan
    Robert W. Clarida
    Brett Van Benthysen
    Reitler Kailas & Rosenblatt LLP
    885 Third Avenue, 20th Floor
    New York, New York 10022
    bcaplan@reitlerlaw.com
    rclarida@reitlerlaw.com
    bvanbenthysen@reitlerlaw.com

*Attorneys for Plaintiffs*

21

## <u>CERTIFICATE OF COMPLIANCE</u>

I, BRETT VAN BENTHYSEN, an attorney admitted to practice in the Southern District of New York and a member of Reitler Kailas & Rosenblatt LLP, counsel for Plaintiffs herein, hereby certify that the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY, exclusive of the cover page, table of contents, table of authorities, and this certificate of compliance, is 6,465 words and complies with the formatting rules contained in Section II.D. of the Individual Practices of Judge John G. Koeltl.

Dated: September 15, 2023

                                          *s/ Brett Van Benthysen*
                                          Brett Van Benthysen