## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMOND GRANT P/K/A "EDDY GRANT", GREENHEART MUSIC LIMITED, a United Kingdom Limited Company, and GREENHEART MUSIC LIMITED, an Antigua and Barbuda Limited Company, <br><br><br> Plaintiffs, <br><br> -against- <br><br> DONALD J. TRUMP and DONALD J. TRUMP FOR PRESIDENT, INC., <br><br> Defendants. | Civil Action No. 1:20-cv-07103-JGK |

---

**DEFENDANTS DONALD J. TRUMP AND DONALD J. TRUMP
FOR PRESIDENT, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

Mark I. Peroff
mark.peroff@peroffsaunders.com
Jason H. Kasner
jkasner@peroffsaunders.com
PEROFF SAUNDERS P.C.
745 5th Avenue | Suite 500
New York, NY 10151
Tel: 646.898.2030

*Attorneys for Defendants
Donald J. Trump and Donald J. Trump for
President, Inc*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………………………………..1

STATEMENT OF FACTS……………………………………………………………….2

    The Song and the Registration …………………………………………………………2

    The Tweet and Animated Video………………………………….………………...3

    Procedural History…………………………………………………………………...5

ARGUMENT……………………………………………………………………...5

I.    SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNT II OF PLAINTIFFS' COMPLAINT BECAUSE THERE IS NO REGISTRATION OF THE SOUND RECORDING OF ELECTRIC AVENUE

    …………………………………………………………………………... 6

II.    THERE ARE ISSUES OF FACT AS TO DEFENDANTS' AFFIRMATIVE DEFENSE OF FAIR USE

    …………………………………………………………………………....6

    A.    Defendants' Use Of The Song Was Transformative And Not Commercial

        …………………………………………………………………7

    B.    The Video's Use Of The Song Did Not Impair The Potential Market For The Song

        ………………………………………………………………..11

    C.    The Nature Of The Work And Substantiality Of The Use Factors Do Not Require The Court To Grant Plaintiffs' Motion For Summary Judgment

        ………………………………………………………………..14

CONCLUSION…………………………………………………………………15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*Am. Geophysical Union v. Texaco,*
    60 F.3d 913 (2d Cir. 1994)…………………………………………………………8, 12

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
    143 S. Ct. 1258 (2023)………………………………………………...…8, 9, 11

*Authors Guild v. Google, Inc.,*
    804 F.3d 202 (2d Cir. 2015)……………………………………………………..12

*Blanch v. Koons,*
    467 F.3d 244 (2d Cir. 2006)……………………………………………………7, 9

*Brown v. Netflix, Inc.,*
    462 F. Supp. 3d 453 (S.D.N.Y. 2020)………………………………………………...10

*Cambridge Univ. Press v. Patton,*
    769 F.3d 1232 (11th Cir. 2014)……………………………………………...…..12

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994)………………………………………………….………7, 14

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP,*
    735 F.3d 114 (2d Cir. 2013)…………………………………………………………6

*Grant v. Trump,*
    563 F. Supp. 3d 278 (S.D.N.Y. 2021)…………………………………..5, 11, 12, 13, 14

*Henley v. DeBore,*
    733 F. Supp. 2d 1144 (C.D. Cal. 2010)………………………………………...10, 13

*Lennon v. Premise Media Corp.,*
    556 F. Supp. 2d 310 (S.D.N.Y. 2008)……………………………………….……11

*Mastercard Int'l, Inc. v. Nader 2000 Primary Committee, Inc.*
    No. 00 Civ. 6068, 2004 WL 434404 (S.D.N.Y. Mar. 8, 2004)…………………….…..9

*Mattel, Inc. v. Pitt,*
    229 F. Supp. 2d 315 (S.D.N.Y. 2002)…………………………………………..13

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.,*
    756 F.3d 73 (2d Cir. 2014)…………………………………………….…………7

*Tardif v. City of N.Y.,*
    991 F.3d 394 (2d Cir. 2021)……………………………….…………………………………6

*Vivenzio v. City of Syracuse,*
    611 F.3d 98 (2d Cir. 2010)……………………………………………………………...5

*Weissmann v. Freeman,*
    868 F.2d 1313 (2d Cir. 1989)…………………………………………………….……8

*Worldwide Church of God v. Philadelphia Church of God, Inc.,*
    227 F.3d 1110 (9th Cir. 2000)…………………………………………….…………..8

**Statutes and Rules**

17 U.S.C. § 107…………………………………………………………….................6

17 U.S.C. § 107(1)……………………………………………………….............7

17 U.S.C. § 107(4)………………………………………………………..........11

**Secondary Sources**

4 Patry on Copyright §10:151…………………………………………….….……12

Defendants Donald J. Trump and Donald J. Trump for President, Inc. (the "Company") (collectively, "Defendants") respectfully submit this memorandum of law in opposition to the motion for summary judgment of Plaintiffs Edmond Grant ("Grant"), Greenheart Music Limited, a United Kingdom Company and Greenheart Music Limited an Antigua and Barbuda Limited Company (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs seek summary judgment on their two claims for copyright infringement that arise out of a post from President Trump's Twitter account that contained an animated video created by an unaffiliated third-party that used approximately forty seconds of the song "Electric Avenue" as background music.  The record that has been developed since the Court ruled that the pleadings did not conclusively establish Defendants' fair use defense reveals that Plaintiffs' summary judgment motion should be denied.

*First*, Plaintiffs' motion papers concede that they did not register the sound recording of Electric Avenue at the time of its publication in 1983, but rather, purportedly only as component of a "greatest hits" compilation decades later in 2002.  As established in Defendants' motion for summary judgment, however, the registration of such a compilation only acts as a registration of its component parts to the extent such parts are previously unpublished.  Accordingly, Plaintiffs' summary judgment motion should be denied with respect to Count II of their Complaint.  *See* Point I, *infra*.

*Second*, there are disputed issues of material fact with respect to Defendants' fair use defense.  Specifically, discovery has revealed that: (i) the video was the sole creation of a third-party, (ii) that the video's whimsical use of Electric Avenue transforms what Grant testified was a

1

"protest against social conditions" into an unflattering depiction of a political candidate, (iii) Plaintiffs have never, and do not intend to, license Electric Avenue to third-parties for the purpose of gaining "political capital," and that (iv) Plaintiffs have not lost any out any other licensing opportunities as a result of the video having been posted on social media.  It is for the finder of fact at trial to take these facts into account and assess whether the video's use of Electric Avenue constitutes fair use.  *See* Point II, *infra*.

## STATEMENT OF FACTS

### The Song and the Registration

Grant wrote, recorded and produced the 3-minute-48 second song entitled "Electric Avenue" (sometimes referred to hereafter as the "Song").  The Song was first released in 1983. Grant testified: "[t]he bottom line of the song is that it is a protest against social conditions." (Declaration of Jason Kasner in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Kasner Opp. Decl."), ¶ 2, Ex. 1 ("Grant Tr.") at 42:14-16).   While negotiations with potential licensees of the Song are handled through third-parties, Grant testified that there is "a tacit agreement between us that they will not ever license anything without my express consent – written consent."  (Grant Tr. 58:4-7).   Over the years, Plaintiffs have licensed the Song for use in product advertising, feature motion pictures, and television shows.  (Kasner Opp. Decl. ¶ 3).  Plaintiffs have never licensed the Song for use by a political campaign.  (*Id.*) Grant testified that he had no intention of ever licensing the song for use by a political campaign, stating: "I did not write the song to gain Donald Trump or any other person political capital." (Grant Tr. 138:5-7).  Mr. Grant further testified that he has been able to license the Song since the time of the tweet from President Trump's Twitter account.  (*Id.* 142:6-11).

Details regarding the registration (or lack thereof) of the musical composition and sound recording are described in detail in Defendants' motion for summary judgment (Dkt 100) and will not be repeated here in full.  Suffice it to say that the musical composition of the Song was registered in the United States Copyright Office (the "Copyright Office") on or about February 2, 1983 under Registration Number PA0000164029 (the "PA Registration").  (Dkt 101-2)  Plaintiffs did not register the sound recording of the Song at the time they registered the PA Registration. Instead, Plaintiffs rely on a copyright registration for the compilation work "Eddy Grant: the greatest hits" under registration number SR000344006 (the "SR Registration"), which was registered with the Copyright Office on or about March 22, 2002.  (Dkt 101-3)  Specifically, when asked to identify the factual and legal basis for any contention that the SR Registration covers the sound recording of Electric Avenue, Plaintiffs, after lodging various objections, stated as follows:

> Greenheart Antigua is the beneficial copyright owner of the copyright in the Recording.  The US Copyright Registration No. SR0000344006 covers the sound recording contained on the compilation album Eddy Grant: the greatest hits.  The Recording is contained on the album.  London Records, the foreign subsidiary of Warner Music UK Limited ("Warner"), pursuant to the May 3, 2011 letter agreement between Warner and Greenheart UK, the licensing arm of Greenheart Antigua (the "Agreement"), registered the subject SR copyright registration, which reverted back to Greenheart Antigua on the expiration of the Agreement.  [Dkt 101-4].

### The Tweet and Animated Video

On or about August 12, 2020, a tweet (the "Tweet") from President Trump's Twitter account posted a 55-second animated video (the "Animation" or "Video"), which included the use of 40 seconds of the Song which played in the background of the Animation.  (Dkt. 1, Compl. ¶¶ 35, 38-40).  The Animation starts with the "Trump Pence KAG 2020" high-speed red train.  After the "Trump Pence KAG 2020" high-speed train quickly passes, the Song starts at the 15-second mark of the Animation (Dkt 108-4). The Song introduces the "Biden President: Your Hair Smells Terrific" slow-moving handcar powered by then-candidate Biden, which trails far behind President

Trump's train on the same track. (*Id.*) As Mr. Biden slowly pumps his handcar along the train track, the following excerpt from a speech of his plays over the Song ("the Speech"):

> I got a lot of — I got hairy legs that turn blond in the sun.  And the kids used to come up and reach in the pool and rub my leg down so it was straight and then watch the hair come back up again.  So I learned about roaches.  I learned about kids jumping on my lap.  And I've loved kids jumping on my lap. (*Id.*)

Mr. Biden's voice is intertwined with Grant's voice singing lyrics of the Song. (*Id.*) Following the Speech, the Animation ends with the phrase "BIDEN TRAIN" and the letters of the phrase falling apart. (*Id.*)

Plaintiffs have characterized the Animation as "a campaign video deriding the Democratic Party's 2020 nominee for President, Former Vice President Joseph Biden" and as "clearly an attempt to denigrate the Democratic  Party's 2020 presidential nominee, Former Vice President Joseph Biden."  Plaintiffs also asserted that the Animation "appears to be an endorsement of [President] Trump's 2020 presidential re-election campaign to 'Keep America Great' (aka 'KAG')."  (Dkt 1, Compl. ¶¶ 1, 36-37).   The Animation was provided to Defendants by an unaffiliated third-party.

On or about August 13, 2020, Grant's counsel, Wallace E.J. Collins, III, Esq. sent a takedown notice to Twitter demanding that the Tweet be removed.  (Dkt 101-6 at ¶ 4).  Twitter eventually complied with the demand, and removed the Tweet on or about September 1, 2020.  (Dkt 101-7).  Mr. Collins claimed that, on the same day he sent the takedown notice to Twitter, he mailed a cease-and-desist letter to Defendants at an address (or addresses) he found on the internet.  (Dkt 101-6 at ¶¶ 5-8).  Mr. Collins admitted that he did not use any tracking or verification delivery method for the cease-and-desist letter.  (*Id.*)

**Procedural History**

On or about September 1, 2020, Plaintiffs filed a Complaint that asserted two claims of copyright infringement against both Defendants: (1) copyright infringement of the musical composition of the Song; and (2) copyright infringement of the sound recording of the Song. Attached to the Complaint were what Plaintiffs claimed were printouts of records from the U.S. Copyright Office that evidenced the registration of the copyrights for both the sound recording and composition of the Song.  (*See* Dkt. 1, Compl. ¶¶ 54-71, Exs. A & B).

Defendants moved to dismiss the Complaint in its entirety on the grounds that use of the Song in the Animation was a fair use, as a matter of law.  (*See* Dkt. 18).  By Opinion and Order dated September 28, 2021, the Court denied the motion.  *See Grant v. Trump*, 563 F. Supp. 3d 278 (S.D.N.Y. 2021).

On September 15, 2023, Defendants moved for partial summary judgment seeking dismissal of Count II of the Complaint on the grounds that there was no registration of the Sound Recording.  (Dkt. 99-100).  The same day, Plaintiffs moved for summary judgment as to liability on both of their claims for copyright infringement.  (Dkt. 104-105).  For the reasons described below, Plaintiffs' motion should be denied.

## ARGUMENT

Fed. R. Civ. P. 56(a)(1) provides that "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial burden of demonstrating the absence of an issue of material fact and entitlement to judgment as a matter of law.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  If the non-movant bears the burden of proof at trial, the movant's "initial burden at summary judgment can be met by pointing to a lack of evidence

supporting the non-movant's claim." *Tardif v. City of N.Y.*, 991 F.3d 394, 403 (2d Cir. 2021) (citation omitted). The non-movant, while receiving the benefit of all favorable inferences, then must point to evidence, in admissible form, demonstrating the existence of a genuine issue of material fact. *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013).

## I. SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNT II OF PLAINTIFFS' COMPLAINT BECAUSE THERE IS NO REGISTRATION OF THE SOUND RECORDING OF ELECTRIC AVENUE

Defendants, by separate motion, have sought summary judgment dismissing Count II of Plaintiffs' Complaint on the grounds that the sound recording of the Song has never been registered with the Copyright Office. (*See* Dkt. 99-100). Defendants see no need to recapitulate the arguments in their motion here, which they incorporate herein in their entirety by reference. Suffice it to say that Plaintiffs' sole putative proof of registration of the sound recording is the registration of the work "Eddy Grant: the greatest hits," which is described as a "compilation of recordings, artwork: Greenheart Music, Ltd., employer for hire." As Defendants' motion for summary judgment has explained, because the SR Registration is, by its own terms, a "compilation," it only covers the constituent parts contained therein to the extent they were previously unpublished. As Plaintiffs admit that the Song was released, and therefore published, in 1983, it is not covered by the SR Registration.

## II. THERE ARE ISSUES OF FACT AS TO DEFENDANTS' AFFIRMATIVE DEFENSE OF FAIR USE

The Copyright Act provides that "the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107. The statute instructs that "the factors to be considered" in determining whether there has been a fair use "shall include:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work."

While, as indicated above, the finder of fact is required to consider all of the four factors, "defendants . . . need not establish that each of the factors set forth in § 107 weigh in their favor." *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (internal quotations and citations omitted). "[T]he determination of fair use is an open-ended and context sensitive inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). The factors are not to "be treated in isolation" but rather, "are to be explored, and the results weighed together in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994).

A.      **Defendants' Use Of The Song Was Transformative And Not Commercial**

Section 107(1) of the Copyright Act states that the first factor to be weighed in a fair use analysis is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes[.]" Thus, it is important, if not dispositive to the inquiry whether the alleged infringer's use of the work "is of a commercial nature." *See Blanch*, 467 F.3d at 253 (quoting 17 U.S.C. § 107(1)). As the Supreme Court recently and succinctly stated:

> [T]he first fair use factor considers whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and the degree of difference must be balanced against the *commercial nature* of the use. If an original work and a secondary use share the same or highly similar purposes, *and* the secondary use is of a *commercial nature*, the first factor is likely to weigh

7

> against fair use, absent some other justification for the
> copying.

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1277 (2023)

("*Warhol*") (emphasis added).   As Justice Gorsuch explained in concurrence, the inquiry is

"comparatively modest," and focuses on "whether the purpose and character of that use is different

from (and thus complements) or is the same as (and thus substitutes for) a copyrighted work."   *Id.*

at 1289 (Gorsuch, *J.* concurring).   That is, the "better" view of the analysis is whether "the purpose

and character of . . . the challenged use and the purpose and character of [the copyright owner's]

protected use overlap so completely."   *Id.*

Prior to *Warhol*, the Second Circuit explained that "[t]he commercial/nonprofit dichotomy

concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted

material to capture significant revenues as a direct consequence of copying the original work."

*Am. Geophysical Union v. Texaco*, 60 F.3d 913, 922 (2d Cir. 1994).   The court explained that the

use is more likely to be commercial where "the copier directly and exclusively acquires

conspicuous financial rewards from its use of the copyrighted material" in contrast to "value that

benefits the broader public interest."   *Id.* (citations omitted).   While, depending on the

circumstances, commercial use does not necessarily hinge on whether the use of the copyrighted

work results in a direct pecuniary gain, the alleged infringer must still hope to gain some advantage

that it is commercial in nature for the first fair use factor to weigh in favor of the copyright owner.

*See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir.

2000) (finding commercial use of copied religious tract even though text was distributed at no cost

because use would attract "new members who tithe ten percent of their income [and] by enabling

the ministry's growth"); *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989) (holding that

first fair use factor weighed against researcher who "stood to gain recognition among his peers in the profession and authorship credit with his attempted use of [copyrighted] article").

This Court in *Mastercard Int'l, Inc. v. Nader 2000 Primary Committee, Inc.* No. 00 Civ. 6068, 2004 WL 434404, at *12 (S.D.N.Y. Mar. 8, 2004) employed this framework to hold that a political campaign advertisement supporting Ralph Nader's 2000 presidential run that used MasterCard's copyrighted "Priceless" slogan was "not commercial" in nature. The Court focused on "the stated purpose of . . . the advertisement," which "was to raise public awareness of Ralph Nader's desire to be included in the upcoming, televised Presidential candidates" by "depict[ing] . . . the two major candidates [as being] beholden to special interests," in contrast to Mr. Nader "who was not so beholden[.]" *Id.* In the same way, the purpose of the Video was to "deride the Democratic Party's 2020 nominee for President, Former Vice President Joseph Biden," by portraying him as awkward and lacking vitality, in contrast to President Trump, whose campaign is likened to a high-speed train, and thus not awkward or lacking in vitality. This message is starkly different, and therefore, transformative of the meaning Grant testified the Song was meant to convey, which was a "protest against social conditions," in contrast to providing "Donald Trump or any other person political capital." (Grant Tr. 42:14-16, 138:5-7). *Warhol*, 143 S. Ct. at 1281 (noting that Andy Warhol's Campbell Soup Can painting is transformative because its objective was to provide "artistic commentary on consumerism" while "the purpose of Campbell's logo is to advertise soup"). While it is true that the Video's creator (again, unaffiliated with the Trump campaign) did not alter Song as such, the Video overlays the Song with unflattering quotes from then-candidate Biden, further demonstrating its transformative nature. *Blanch*, 467 F.3d at 253 (finding artist's use of copyrighted photograph in painting was transformative where purpose of use was "commentary on the social and aesthetic consequences

of mass media"); *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (holding that documentary's use of children's song was transformative where documentary played song "while a scantily clad woman begins to perform a strip dance routine") (alterations in original omitted). Accordingly, the fact that a work might be "unaltered" in a secondary use does not necessarily make that use non-transformative. *Netflix*, 462 F. Supp. 3d at 461 (rejecting argument that "when there is no alteration from the original there can be no fair use") (alterations in original omitted).

Plaintiffs rely on *Henley v. DeBore*, 733 F. Supp. 2d 1144 (C.D. Cal. 2010) to suggest that the use of a copyrighted work for the purpose of obtaining political office is necessarily "commercial" in nature.  (Plaintiffs' Memorandum of Law ("PlMem.") at 14-15).  In addition to such an expansive reading being at odds with this Court's ruling in *Nader*, Plaintiffs omit important context from that non-binding decision.  For starters, most of the *Henley* court's analysis of the "character of use" factor focused on whether the defendants' use of the copyrighted work was transformative because it was parody. *See id* at 1156-58.  *Henley*'s conclusion that the use of the copyrighted work was "commercial" in nature rested largely on the fact that the videos at issue "contained a link to [the candidate's] campaign website, where one could make online donations to the campaign, and that emails sent out by the campaign publicize the videos contained a link directly to [the candidate's] donation webpage." *Id.* at 1159.  The court also found the fact that the candidate's campaign manager's compensation was tied to such fundraising and that the defendants paid a licensing fee for other aspects of the campaign videos to be further evidence of commercial use. *Id.* at 1159, n.12.  In this case, the Video was created by an unaffiliated third-party and was far attenuated, if not completely divorced, from any fundraising purpose, Plaintiffs having pointed to no evidence that the Trump campaign received any donations as a result of the

Tweet, much less that the video contained anything directing the viewer to make a campaign contribution.

Nor does Plaintiffs' customary licensing of the Song make the Video's use of the Song "commercial" in nature.  While the Court previously ruled that "the possibility of commercial advantage" could not be ruled out at the pleading stage, *Grant*, 563 F. Supp. 3d at 287, discovery has revealed that Plaintiffs have never licensed the Song for political use, and have strongly indicated that they have no interest of doing so in the future, Grant having testified that he did not wish the Song to be used to "gain any other person political capital."  (Grant Tr. 138:5-7).  That Plaintiffs might disapprove of the Song being used as "political capital" does not make that use commercial or any less transformative.  *See Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 322-34 (S.D.N.Y. 2008) (finding documentary's use of the song "Imagine" to be transformative where it was accompanied by image of Josef Stalin).

In sum, the record developed in discovery makes clear that the Video and its use of the Song did not give the Defendants any "commercial" advantage, and that it transformed Grant's original conception of Electric Avenue as a "protest against social conditions" into a colorful attack on the character and personality traits of a rival political figure.  Again, the issue is not whether Plaintiffs disapprove of Defendants' purposes, but rather whether "the purpose and character of [their] own protected use overlap[s] so completely" with that of Defendants.  *Warhol*, 143 S. Ct. at 1289 (Gorsuch, *J.* concurring).  As it is clear that they do not, the first fair use factor favors Defendants.

**B.    The Video's Use Of The Song Did Not Impair The Potential Market For The Song**

The fourth factor in the fair use analysis requires the finder of fact to determine: "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).

The Court has previously found, and Plaintiffs do not seriously dispute, that the Video did not serve as a substitute in the market for the Song. *Grant*, 563 F. Supp. 3d at 289. That is, the Video does not compete with the Song "so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015). Rather, taking a lead from the Court's denial of Defendants' motion to dismiss, Plaintiffs assert that the Video usurped the licensing market for the Song. (Pl. Mem 19-21).

While a copyright owner's loss of potential licensing revenue can tip the balance of the fair use analysis in its favor, the Second Circuit has cautioned that "a copyright holder can always assert some degree of adverse affect on its potential licensing revenues as a consequence of the second use at issue simply because the copyright holder has not been paid a fee to permit the particular use." *Am. Geophysical Union*, 60 F.3d at 929 n.17. Or, as the Eleventh Circuit has explained, "licensing poses a particular threat that the fair use analysis will become circular, and Plaintiffs may not head off a defense of fair use by complaining that every potential licensing opportunity represents a potential market for purposes of the fourth fair use factor." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1277-78 (11th Cir. 2014). Thus, "courts have recognized limits on the concept of 'potential licensing revenues' by considering only traditional, reasonable, or likely to be developed markets" when examining the fourth fair use factor. *Am. Geophysical Union*, 60 F.3d at 929-30 (citation omitted); *see also Cambridge Univ. Press*, 769 F.3d at 1276 ("it is not determinative that programs exist through which universities may license excerpts of Plaintiffs' works. In other words, the fact that Plaintiffs have made paying easier does not automatically dictate a right to payment."). That is, courts should look to "only those uses that the copyright owner has actually licensed or is negotiating to license." 4 Patry on Copyright § 10:151;

*see also Mattel, Inc. v. Pitt*, 229 F. Supp. 2d 315, 324 (S.D.N.Y. 2002) (holding that the fourth fair use factor weighed against a finding a finding of infringement where "[t]he sale or display of 'adult' dolls does not appear to be a use Mattel would likely develop or license others to develop").

Here, Grant admitted that he did not know whether the Video impaired his ability to license the Song.  (Grant Tr. 141:18-21).  He further admitted that he has been able to license the Song since the Video was posted on Trump's Twitter account.  (*Id.* at 142:6-11).  And, while Plaintiffs have licensed the Song for use in product advertising, feature motion pictures and television programs, they have never licensed the Song in connection with any kind of political campaign. (Kasner Opp. Decl. ¶¶ 3).  Indeed, Grant emphatically disclaimed his intention to ever do so, testifying: "I did not write the song to gain Donald Trump or any other person political capital." (Grant Tr. 138:5-7).

Grant's admission that he has no interest in permitting the use of the Song to provide "political capital" to any political figure, be it Trump or anyone else, also undercuts Plaintiffs' assertion that the Video's use of the Song has "no value to the public."  (Pl. Mem. 20).  As the Court has already recognized, there is undoubtedly a long-standing tradition of political satire that serves the public interest of open and unfettered political debate.  *Grant*, 563 F. Supp. 3d at 289. While, to be sure, the Court observed that this interest must be balanced against the right of the copyright owner to require permission to use its work and to receive a license,  that observation came at an "early stage in the litigation," *id.*, prior to discovery revealing that Plaintiffs have never licensed the Song for political use, and without the benefit of Grant admitting that he has no interest in ever doing so.  *Cf., Henley*, 733 F. Supp. 2d at 1163 (finding that fourth fair use factor did not favor defendant where "Plaintiffs have licensed their works for satirical or other commercial uses in the past and intend to consider licensing their works in the future.").

In sum, Plaintiffs have admitted that the Video has not impaired their ability to exploit the markets to which they have traditionally licensed the Song.  And, given that they have previously shown no interest in licensing the Song for political use, and have strongly indicated that they have no interest in doing so in the future, there is, at least, a disputed issue of material fact as to whether they will be harmed if such political use theoretically became widespread.  This is especially the case in light of the undisputed importance of open political discourse.  Accordingly, the fourth fair use factor weighs in Defendants' favor.

**C.     The Nature Of The Work And Substantiality Of The Use Factors Do Not Require The Court To Grant Plaintiffs' Motion For Summary Judgment**

Defendants concede that the Song is a creative and published work, and therefore the second fair use factor favors Plaintiffs.  *Campbell*, 510 U.S. at 586.  As the Court has previously recognized, however, "this factor is assigned limited weight in the overall fair use determination." *Grant*, 563 F. Supp. 3d at 288 (citation omitted).  And while Defendants respectfully disagree with the Court's prior ruling that the amount and substantiality of the use factor favors Plaintiffs, *id.*, Defendant likewise concede that because the length of the excerpted portion of the Song and the percentage of time that it takes up in the Video are undisputed, there is no issue of material fact as to that issue.

Nevertheless, the fact remains that the Video used the Song for an entirely different purpose from Grant's conception of it as a "protest against social conditions," and that the Video appealed to a market in which Plaintiffs admittedly have not traditionally licensed the Song and have no interest of doing so in the future.  Defendants respectfully submit that, under these circumstances, there is, at the very least, an issue of material fact as to fair use, especially in light of the very real possibility that copyright infringement suits would tend to chill open and unobstructed political discourse when they are directed at political figures.  *See Grant*, 563 F. Supp. 3d at 289.  To be

14

sure, Defendants do not suggest that politics and political figures should be immune from copyright law.  Rather, when balancing the fair use factors against one another, the Court should take into account that the Video was fundamentally political speech that, by Grant's own admission, has not impacted his ability to commercially exploit his creative work.

## CONCLUSION

For all of the foregoing reasons, defendants Donald J. Trump and Donald J. Trump For President, Inc. respectfully request that the Court deny Plaintiffs' motion for summary judgment in its entirety.

Respectfully submitted,

Dated: New York, New York
       October 6, 2023

*/s/ Jason H. Kasner*
Jason H. Kasner
jkasner@peroffsaunders.com
Mark I. Peroff
mark.peroff@peroffsaunders.com
PEROFF SAUNDERS P.C.
745 5th Avenue | Suite 500
New York, NY 10151
Tel: 646.898.2030

*Attorneys for Defendants*
*Donald J. Trump and Donald J. Trump for*
*President, Inc.*

## **CERTIFICATION OF COMPLIANCE**

The undersigned hereby certifies that the foregoing memoranda contains 4,690 words and complies with Rule II(D) of Judge John G. Koeltl's Individual Practices.

_/s/ Jason H. Kasner_____
Jason H. Kasner