UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMOND GRANT P/K/A "EDDY GRANT", GREENHEART MUSIC LIMITED, a United Kingdom Limited Company, and GREENHEART MUSIC LIMITED, an Antigua and Barbuda Limited Company,<br><br>  Plaintiffs,<br><br>  – against –<br><br>DONALD J. TRUMP and DONALD J. TRUMP FOR PRESIDENT, INC.,<br><br>  Defendants. | Civil Action No. 1:20-cv-07103-JGK |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................II

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF MATERIAL FACTS.................................................................................... 2

ARGUMENT ............................................................................................................................ 4

    I.    LEGAL STANDARD ON SUMMARY JUDGMENT ......................................................... 4

    II.   PLAINTIFFS OWN A VALID COPYRIGHT REGISTRATION BECAUSE THE SOUND
        RECORDING IS INCLUDED IN THE REGISTRATION OF A COLLECTIVE WORK,
        AND PLAINTIFFS ARE OWNERS OF BOTH ................................................................ 4

      A.   The Album is Not an Unprotectable Compilation ........................................................ 7

      B.   The Sound Recording is Not Required to be Unpublished............................................ 8

CONCLUSION......................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bartok v. Boosey & Hawkes, Inc.,*
   523 F.2d 941 (2d Cir. 1975) ................................................................................................ 9

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*,
   44 F.3d 61 (2d Cir. 1994) ................................................................................................... 7

*Computer Assoc. Int'l v. Altai, Inc.,*
   775 F. Supp. 544 (E.D.N.Y. 1991) .................................................................................... 5

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ........................................................................................................... 7

*Greenwich Film Productions, S.A. v. DRG Records, Inc.,*
   833 F.Supp. 248 (S.D.N.Y. 1993) .................................................................................. 5, 6

*Guardian Life Ins. Co. v. Gilmore,*
   45 F. Supp. 3d 310 (S.D.N.Y. 2014) ................................................................................ 4

*Gund, Inc. v. Swank, Inc.,*
   673 F.Supp. 1233 (S.D.N.Y.1987) .................................................................................... 6

*In re Rubin Bros. Footwear, Inc.*,
   119 B.R. 416 (S.D.N.Y. 1990) .......................................................................................... 4

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
   413 F.3d 257 (2d Cir. 2005) ............................................................................................. 7

*Jorgensen v. Epic/Sony Records.*,
   351 F.3d 46 (2d Cir. 2003) ............................................................................................ 4, 5

*Morris v. Bus. Concepts, Inc.*,
   259 F.3d 65 (2d Cir. 2001) ............................................................................................... 8

*Morris v. Business Concepts, Inc.*,
   283 F.3d 502 (2d Cir. 2002) ......................................................................................... 1, 5

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) ........................................................................................................ 8

*Schwartz v. Morgan Stanley DW, Inc.*,
    2011 WL 13257530 (S.D.N.Y. Jan. 5, 2011) ........................................................... 4

*Schwartzwald v. Zealot Networks, Inc.*,
    2020 WL 8187749 (E.D.N.Y. Dec. 27, 2020) ......................................................... 7

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998) ................................................................................. 4, 5, 8

*Swift Spindrift Ltd. v. Alvada Insurance Inc.*,
    175 F.Supp.3d 169 (S.D.N.Y. 2016) ......................................................................... 4

*Szabo v. Errisson*,
    68 F.3d 940 (5th Cir. 1995) ................................................................................... 8, 9

*Woods v. Universal City Studios, Inc.*,
    920 F.Supp. 62 (S.D.N.Y. 1996) ............................................................................ 5, 8

**Statutes**

17 U.S.C. § 101 ................................................................................................................... 6
17 U.S.C. § 410(c) .............................................................................................................. 5
17 U.S.C. § 411(a) .............................................................................................................. 1
17 U.S.C. § 504(c)(1) ......................................................................................................... 5

**Rules**

37 C.F.R. § 202.3 ............................................................................................................ 8,9

**Treatises**

*Nimmer on Copyright* § 7.16[B][2] (1997) ..................................................................... 5

Plaintiffs Edmond Grant ("Grant"), Greenheart Music Limited, a United Kingdom Limited Company ("Greenheart UK") and Greenheart Music Limited, an Antigua and Barbuda Limited Company ("Greenheart Antigua," and together with Greenheart UK and Grant, "Plaintiffs"), by their attorneys Reitler Kailas & Rosenblatt LLP, respectfully submit this Memorandum of Law in Opposition to Defendants' Donald J. Trump ("Trump") and Donald J. Trump for President, Inc. (the "Campaign," and together with Trump, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1.

## PRELIMINARY STATEMENT

In this copyright infringement action for Defendants' willful taking of the musical composition (the "Composition") and sound recording (the "Sound Recording") of Plaintiffs' works entitled "Electric Avenue," Defendants' argue that Plaintiffs do not have a valid copyright registration in the Sound Recording.  The argument should be rejected, and Defendants' limited motion should be denied.

The SR Registration dated March 22, 2002, of the album "Eddy Grant: the greatest hits" (the "Album"), which is beneficially owned by Plaintiffs, and not challenged in Defendants' motion, covers the individual Sound Recording of "Electric Avenue" and meets the jurisdictional requirements under the Copyright Act.  17 U.S.C. § 411(a).  The Second Circuit has expressly held that where an author retains all rights to constituent parts of a collective work, such as the Album here, "a copyright registration in a collective work also registers a copyright claim in a particular constituent work."  *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002).  This holding applies equally where the constituent works are previously published.  Defendants cite to and rely on *Morris*, but as stated above the holding therein is fatal to their argument.

## STATEMENT OF MATERIAL FACTS

This is a copyright infringement action brought by Plaintiffs to redress Defendants' unauthorized and unlawful use of the Composition and the Sound Recording in violation of the Copyright Act.  The Composition and the Sound Recording are hereafter referred to as the "Works."  Grant is a musician and songwriter residing in Barbados and is a citizen of the United Kingdom.  Declaration of Edmond Grant dated September 15, 2023, ("Grant Decl.") at ¶¶1-2.[1] Grant wrote, recorded, and produced the Works entitled "Electric Avenue."

Plaintiff Greenheart Antigua is a limited company organized and existing under the laws of Antigua and Barbuda with a principal place of business located at 39 Market Street, St. John's, Antigua and Barbuda, West Indies.  *Id.* and Exhibit 11 (Deposition Transcript of Edmond Grant "Grant Tr.") at 19:4-21:21.

Greenheart UK is a limited company organized and existing under the laws of United Kingdom with a principal place of business located at 1341 High Road, Whetstone, London N20 9HR.  Greenheart UK was formed in 1997 to act as the licensing arm of Greenheart Antigua with respect to Grant's musical works, including but not limited to the Sound Recording.  *Id.*

Grant is the sole owner of both Greenheart UK and Greenheart Antigua.  *Id.* at ¶¶1-2.  In or about 1983 Grant assigned all of his rights and interests in the Works to Greenheart Antigua.  *Id.* at ¶4.

On February 7, 1983, Greenheart Antigua registered the Composition in the United States Copyright Office (the "Copyright Office") as registration number PA0000164029.  *Id.* Exhibit 2.

---

[1] Mr. Grant's Declaration and exhibits are part of the existing record in support of Plaintiffs' Motion for Summary Judgment.  ECF Doc. No. 107.

The Sound Recording, which embodies Grant's musical performance of the Composition, was initially released in 1983.  *Id.* at ¶2.

By written agreement with Warner Music UK Limited ("Warner Music") dated May 3, 2001 (the "Warner Music Agreement"), Greenheart UK licensed the copyright in the Sound Recording, among other works, to Warner Music for a territory including the United States for a period of five (5) years from the date of the first release of the Recording in the United Kingdom. *Id.* Exhibit 4.

In 2001, during the term of the Warner Music Agreement, Warner Music's affiliate, London Records, re-released the Recording on the Album entitled "Eddy Grant: The Greatest Hits.".   On March 22, 2002, London Records registered the Album containing the Sound Recording in the Copyright Office under registration number SR0000344006. *Id.* Exhibit 3.

The Warner Music Agreement expired by its terms and/or terminated no later than September 20, 2006, at which point Greenheart UK became the beneficial owner of the SR copyright registration for the Album and Sound Recording.  *Id.* at ¶7.

On July 21, 2008, Greenheart UK licensed the publishing rights in "Electric Avenue" to EMI Music Publishing Limited ("EMI").  Greenheart Antigua remained the beneficial owner of the Composition copyright and has had the continuing right to receive royalties for the commercial exploitation of that copyright.  Further, Greenheart Antigua continued to own the Sound Recording copyright.  *Id.* at ¶8 and Exhibit 5.

On August 29, 2020, Grant confirmed the assignment in 1983 of all his rights and interests, including the copyrights, in and to the Works, to Greenheart Antigua, in an ex post facto written agreement between Grant and Greenheart Antigua.  *Id.* Exhibit 7.

## ARGUMENT

### I.     LEGAL STANDARD ON SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Swift Spindrift Ltd. v. Alvada Insurance Inc.*, 175 F.Supp.3d 169, 174 (S.D.N.Y. 2016).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 421 (S.D.N.Y. 1990)  The moving party must satisfy its burden with admissible evidence.  *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 332 (S.D.N.Y. 2014).  And when considering the substantive evidentiary burden on the movant, a court must also resolve ambiguities and draw all reasonable inferences against the moving party.  *Schwartz v. Morgan Stanley DW, Inc.*, 2011 WL 13257530, at *1 (S.D.N.Y. Jan. 5, 2011).

Well settled case law and undisputed facts confirm that Plaintiffs own a valid copyright registration in the Sound Recording.  Under Second Circuit law, the registration of the Album as a collective work extends copyright protection to the Sound Recording as a constituent work.  *Morris*, 283 F.3d at 505; *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998).  Defendants' motion for summary judgment should be denied.

### II.     PLAINTIFFS OWN A VALID COPYRIGHT REGISTRATION BECAUSE THE SOUND RECORDING IS INCLUDED IN THE REGISTRATION OF A COLLECTIVE WORK, AND PLAINTIFFS ARE OWNERS OF BOTH

In order to establish a claim of copyright infringement, a plaintiff must demonstrate: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work. *Jorgensen v. Epic/Sony Records.*, 351 F.3d 46, 51 (2d Cir. 2003).  Specifically, Section 411(a) of the Copyright Act requires a plaintiff to register a copyright claim before bringing an action for infringement.  The only issue raised by Defendants' motion is whether Plaintiffs own a valid

registration in the Sound Recording.   The undisputed facts establish that they do, under the law of this Circuit.   Defendants rely almost exclusively on out of circuit case law to support their argument.

"A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Jorgensen*, 351 F.3d at 51; 17 U.S.C. § 410(c).  Where a claimant seeks to register multiple constituent works as part of a collection, and "all rights [in the constituent work] have been transferred to the claimant, then the constituent work is included in the registration of the collective work." *Morris*, 283 F.3d at 505.  This is the law even where the certificate relates to pre-existing works. *Streetwise Maps,*, 159 F.3d at 747 ("That plaintiff need not produce a separate registration relating to the pre-existing work is a proposition which finds support in other courts and in the writings of scholarly commentators."); *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 64 (S.D.N.Y. 1996) ("where the owner of the copyright for a collective work also owns the copyrights for its constituent parts, ***registration of the collective work satisfies the requirements of Section 411(a) for purposes of bringing an action for infringement of any of the constituent parts***")(emphasis added); *Greenwich Film Productions, S.A. v. DRG Records, Inc.*, 833 F.Supp. 248, 252 (S.D.N.Y. 1993) (registration of soundtrack to motion picture covers musical compositions owned by plaintiff contained on the soundtrack); *Computer Assoc. Int'l v. Altai, Inc.*, 775 F. Supp. 544, 556-57 (E.D.N.Y. 1991), *aff'd in relevant part* 982 F.2d 693 (2d Cir. 1992). *See also* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2] (1997) (copyright owners of derivative work that own pre-existing work should be able to pursue copyright infringement action against individuals infringing the pre-existing work, even when only derivative work registered)(cited in *Streetwise Maps*).  This result is also consistent with the Copyright Act provision regarding statutory damages in 17 U.S.C.

504(c)(1), which states that in computing statutory damages, "all the parts of a compilation or derivative work constitute one work."

In 2001, Plaintiff Greenheart UK licensed the copyright to the Sound Recording in the Warner Music Agreement.  Grant Decl. Exhibit 4.  In 2002, London Records, an affiliate of the licensee under the Warner Music Agreement, registered the Sound Recording by registering the Album containing the Sound Recording as a compilation.  *Id.*  Exhibit 3.[2]  The Sound Recording is contained on the Album, although Defendants do not challenge the inclusion of "Electric Avenue" on the Album or the subject SR copyright registration.  Declaration of Jason Kasner dated September 15, 2023, ECF Doc. No. 100-1 ("Kasner Decl."), Exhibit D at Interrogatory 16.  The Warner Music Agreement expired by its terms no later than September 20, 2006, and ownership of the copyright in the Sound Recording reverted back to Plaintiffs.  *Grant Decl.* at ¶7 and Exhibit 4 at ¶1(b).  The undisputed record thus demonstrates Plaintiffs' prima facie evidence of ownership in the copyright to the Sound Recording.[3]

---

[2] To the extent Defendants argue that the Album registration needed to say, "collective work" instead of "compilation," the argument has been previously rejected.  A collective work is a compilation, by statutory definition. 17 U.S.C. sec. 101, definition of "compilation" ("The term 'compilation' includes collective works").  Moreover, "[m]inor mistakes in a registration statement, made in good faith and unaccompanied by deceptive intent, will not serve to invalidate registration." *Greenwich Film Productions*, 833 F.Supp. at 252 *citing Gund, Inc. v. Swank, Inc.*, 673 F.Supp. 1233, 1273 (S.D.N.Y.1987).

[3] Defendants' argument that copies of the registration information displayed on the Copyright Office website is insufficient to demonstrate ownership has been rejected by the Second Circuit.

### A.  The Album is Not an Unprotectable Compilation

Defendants' motion cites to *Morris*, which examines the scope of a registration when determining a party's rights under the Copyright Act, and as outlined above supports Plaintiffs' argument that Plaintiffs have a valid copyright registration in the Sound Recording.  Defendants ignore the holding in *Morris*, however, and argue that the registration of the Album here does not cover the Sound Recording.  The argument is inapposite and relies on a misinterpretation of the case law.  *See* Def. Memo at 8 *citing Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) and *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*, 44 F.3d 61 (2d Cir. 1994).

For example, in *Feist*, the underpinning of the Court's holding starts with the "interaction of two well-established propositions. The first is that facts are not copyrightable; the other, that compilations of facts generally are." 499 U.S. at 344.  The Court held that a *compilation* containing *otherwise unprotectable facts* from a public utility telephone directory does not extend copyright protection to those materials solely by way of the compilation because "[t]o qualify for copyright protection, a work must be original to the author." *Id.* at 345, 348.  Similarly, the Second Circuit's holding in *CCC Info. Servs.* that "facts [of used car valuations] set forth in the compilation are not protected and may be freely copied," must be read in context with its earlier statement that "collecting information does not justify conferring copyright protection on a compilation of facts."

---

A court is permitted to take judicial notice of federal copyright registrations published in the Copyright Office's registry. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *Schwartzwald v. Zealot Networks, Inc.*, 2020 WL 8187749, at *2 (E.D.N.Y. Dec. 27, 2020), report and recommendation adopted, 2021 WL 173996 (E.D.N.Y. Jan. 19, 2021).

44 F.3d at 65-66.  Unlike the telephone directory and car valuation data, the Sound Recording itself is undeniably protectable under the Copyright Act and Defendants do not argue otherwise.

### B.  The Sound Recording is Not Required to be Unpublished

Defendants' alternative argument, that registration of a compilation or collective work does not extend to previously published constituent works owned by the copyright owner of the collective work, also fails.  The argument runs contrary to well settled Second Circuit case law, which considers previously published constituent works as a part of a collection so long as the claimant owns the rights in the constituent work.  *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 67–68 (2d Cir. 2001), *as clarified on denial of reh'g*, 283 F.3d 502 (2d Cir. 2002), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ("Condé Nast received Certificates of Registration from the Register of Copyrights for each issue of Allure in which Morris's articles were published."); *Streetwise Maps*, 159 F.3d at 746 (certificate of registration protecting pre-existing published map); *Woods*, 920 F.Supp. at 64 ("submissions show that [plaintiff] owns the copyright in the earlier published [illustration]").

Defendants do not cite any Second Circuit authority supporting their argument, and to the extent out of circuit case law conflicts with the holdings in *Streetwise* and *Morris*, the Second Circuit authority prevails.  Moreover, Defendants' reliance on *Szabo v. Errisson*, 68 F.3d 940 (5th Cir. 1995) is misplaced.  The Fifth Circuit did not hold that a collective work registration only covered unpublished works.  In *Szabo*, the constituent work was unpublished, leading the Fifth Circuit to refer to the requirements under the 1995 version of Section 202.3(b)(3)(i)(B) of Title 37 C.F.R. to register multiple unpublished works as a single work.  *Id.* at 940 n.1 and 943.  However, the 1995 version of Section 202.3(b)(3)(i)(A) permitted the same registration for multiple *published* works.  A copy of the historical language of Section 202.3 of Title 37 is included in Appendix A.   The current version of the CFR also permits registration for multiple *published*

works on a single application.  37 C.F.R. § 202.3(b)(4).  The district court cases relied on by Defendants mischaracterize the holding in *Szabo*, as do Defendants, or misinterpret the older version of Section 202.3(b)(3)(i)(B) as a limitation on collective works.

Finally, Defendants cite various administrative policies of the Copyright Office, including the *Compendium,* but as the Second Circuit has held, "the Copyright Office has no authority to give opinions or define legal terms," *Bartok v. Boosey & Hawkes, Inc.,* 523 F.2d 941, 946–47 (2d Cir. 1975).  In fact, the *Compendium* states that "[t]he policies and practices set forth in the Compendium do not in themselves have the force and effect of law and are not binding upon the Register of Copyrights or Copyright Office staff."  Moreover, much of the language from the *Compendium* on which Defendants rely cites *Feist* which is distinguishable for the reasons discussed herein.  Kasner Decl. Exhibit H at Section 508.2.  To the extent the Copyright Office imposes different registration requirements on sound recordings, as opposed to other works of authorship, it lacks a statutory basis for making such a distinction and does not support Defendants' motion.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

Dated:  October 6, 2023

Respectfully submitted,

By: *s/ Brett Van Benthysen*
     Brian D. Caplan
     Robert W. Clarida
     Brett Van Benthysen
     Reitler Kailas & Rosenblatt LLP
     885 Third Avenue, 20th Floor
     New York, New York 10022
     bcaplan@reitlerlaw.com
     rclarida@reitlerlaw.com
     bvanbenthysen@reitlerlaw.com
     *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, BRETT VAN BENTHYSEN, an attorney admitted to practice in the Southern District of New York and a member of Reitler Kailas & Rosenblatt LLP, counsel for Plaintiffs herein, hereby certify that the foregoing MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, exclusive of the cover page, table of contents, table of authorities, and this certificate of compliance, is 2,624 words and complies with the formatting rules contained in Section II.D. of the Individual Practices of Judge John G. Koeltl.

Dated: October 6, 2023                      _s/ Brett Van Benthysen_
                                            Brett Van Benthysen

# APPENDIX A

## Code of Federal Regulations - 1995

37 C.F.R. s 202.3
CODE OF FEDERAL REGULATIONS
TITLE 37—PATENTS, TRADEMARKS, AND COPYRIGHTS
CHAPTER II—COPYRIGHT OFFICE, LIBRARY OF CONGRESS
SUBCHAPTER A—COPYRIGHT OFFICE AND PROCEDURES
PART 202—REGISTRATION OF CLAIMS TO COPYRIGHT

s 202.3 Registration of copyright.

 **(a) General.**

 (1) This section prescribes conditions for the registration of copyright, and the application to be made for registration under sections 408 and 409 of Title 17 of the United States Code, as amended by Pub. L. 94-553.

 (2) For the purposes of this section, the terms "audiovisual work", "compilation", "copy", "derivative work", "device", "fixation", "literary work", "motion picture", "phonorecord", "pictorial, graphic and sculptural works", "process", "sound recording", and their variant forms, have the meanings set forth in section 101 of Title 17. The term "author" includes an employer or other person for whom a work is "made for hire" under section 101 of Title 17.

 (3) For the purposes of this section, a copyright "claimant" is either:

 (i) The author of a work;

 (ii) A person or organization that has obtained ownership of all rights under the copyright initially belonging to the author.[1]

[1] This category includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration.

 **(b) Administrative Classification and Application Forms—**

 (1) Classes of Works. **For the purpose of registration, the Register of Copyrights has prescribed the classes of works in which copyright may be claimed. These classes, and examples of works which they include, are as follows:**

 **(i) Class TX: Nondramatic Literary Works.** This class includes all published and unpublished nondramatic literary works. Examples: Fiction; nonfiction; poetry; textbooks; reference works; directories; catalogs; advertising copy; and compilations of information.

 **(ii) Class PA: Works of the Performing Arts.** This class includes all published and unpublished works prepared for the purpose of being performed directly before an audience or indirectly by means of a device or process. Examples: Musical works, including any accompanying words; dramatic works, including any accompanying music; pantomimes and choreographic works; and motion pictures and other audiovisual works.

 **(iii) Class VA: Works of the Visual Arts.** This class includes all published and unpublished pictorial, graphic, and sculptural works. Examples: Two dimensional and three dimensional works of the fine, graphic, and applied arts; photographs; prints and art reproductions; maps, globes, and charts; technical drawings, diagrams, and models; and pictorial or graphic labels and advertisements.

**(iv) Class SR: Sound Recordings.** This class includes all published and unpublished sound recordings fixed on and after February 15, 1972. Claims to copyright in literary, dramatic, and musical works embodied in phonorecords may also be registered in this class under paragraph (b)(3) of this section if: (A) Registration is sought on the same application for both a recorded literary, dramatic, or musical work and a sound recording; (B) the recorded literary, dramatic, or musical work and the sound recording are embodied in the same phonorecord; and (C) the same claimant is seeking registration of both the recorded literary, dramatic, or musical work and the sound recording.

(v) Class SE: Serials. A serial is a work issued or intended to be issued in successive parts bearing numerical or chronological designations and intended to be continued indefinitely. This class includes periodicals; newspapers; annuals; and the journals, proceedings, transactions, etc. of societies.

**(2) Application Forms.** For the purpose of registration, The Register of Copyrights has prescribed the basic forms to be used for all applications submitted on and after January 1, 1978. Each form corresponds to a class set forth in paragraph (b)(1) of this section and is so designated ("Form TX"; "Form PA"; "Form VA"; "Form SR"; "Form SE"; and "Form SE/Group"). Copies of the forms are available free upon request to the Public Information Office, United States Copyright Office, Library of Congress, Washington, DC 20559. Applications should be submitted in the class most appropriate to the nature of the authorship in which copyright is claimed. In the case of contributions to collective works, applications should be submitted in the class representing the copyrightable authorship in the contribution. In the case of derivative works, applications should be submitted in the class most appropriately representing the copyrightable authorship involved in recasting, transforming, adapting, or otherwise modifying the preexisting work. In cases where a work contains elements of authorship in which copyright is claimed which fall into two or more classes, the application should be submitted in the class most appropriate to the type of authorship that predominates in the work as a whole. However, in any case where registration is sought for a work consisting of or including a sound recording in which copyright is claimed [2] the application shall be submitted on Form SR.

[2] A "sound recording" does not include the sounds accompanying a motion picture or other audiovisual work (17 U.S.C. 101). For this purpose, "accompanying" does not require physical integration in the same copy. Accordingly, registration may be made for a motion picture or audiovisual kit in Class PA and that registration will cover the sounds embodied in the "sound track" of the motion picture or on disks, tapes, or the like included in the kit. Separate application in Class SR is not appropriate for these elements.

**(3) Registration as a Single Work.**

(i) For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:

(A) In the case of published works: All copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same; and

(B) In the case of unpublished works: all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished "collection." For these purposes, a combination of such elements shall be considered a "collection" if: (1) The elements are assembled in an orderly form; (2) the combined elements bear a single title identifying the collection as a whole; (3) the copyright claimant in all of the elements, and in the collection as a whole, is the same; and (4) all of the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element. Registration of an unpublished "collection" extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX A

(ii) In the case of applications for registration made under paragraphs (b)(3) through (b)(8) of this section, the "year in which creation of this work was completed", as called for by the application, means the latest year in which the creation of any copyrightable element was completed.

(4) Group registration of related works: Automated databases.

(i) Pursuant to the authority granted by section 408(c)(1) of Title 17 of the United States Code, the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for automated databases and their updates or other derivative versions that are original works of authorship, if, where a database (or updates or other revisions thereof), if unpublished, is (or are) fixed, or if published is (or are) published only in the form of machine-readable copies, all of the following conditions are met:

(A) All of the updates or other revisions are owned by the same copyright claimant;

(B) All of the updates or other revisions have the same general title;

(C) All of the updates or other revisions are similar in their general content, including their subject;

(D) All of the updates or other revisions are similar in their organization;

(E) Each of the updates or other revisions as a whole, if published before March 1, 1989, bears a statutory copyright notice as first published and the name of the owner of copyright in each work (or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner) was the same in each notice;

(F) Each of the updates or other revisions if published was first published, or if unpublished was first created, within a three-month period in a single calendar year; and

(G) The deposit accompanying the application complies with s 202.20(c)(2)(vii)(D).

(ii) A single registration may be made on one application for both a database published on a single date, or if unpublished, created on a single date, and also for its copyrightable revisions, including updates covering a three-month period in a single calendar year. An application for group registration of automated databases under section 408(c)(1) of Title 17 and this subsection shall consist of:

(A) A Form TX, completed in accordance with the basic instructions on the form and the Special Instructions for Group Registration of an Automated Database and its Updates or Revisions;

(B) A filing fee of $20; and

(C) The deposit required by 202.20(c)(2)(vii)(D).

**(5) Group registration of related serials.**

(i) Pursuant to the authority granted by section 408(c)(1) of title 17 of the United States Code, the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for a group of serials published at intervals of a week or longer if all the following conditions are met:

(A) The Library of Congress receives two complimentary copies promptly after publication of each issue of the serial.

(B) The single application covers no more than the issues published in a given three month period.

(C) The claim to copyright for which registration is sought is in the collective work.

(D) The collective work authorship is essentially new material that is being published for the first time.

(E) The collective work is a work made for hire.

(F) The author(s) and claimant(s) of the collective work are the same person(s) or organization(s).

(G) Each issue must have been created no more than one year prior to publication and all issues included in the group registration must have been published in the same calendar year.

(ii) To be eligible for group registration of serials, publishers must submit a letter affirming that two complimentary subscriptions to the particular serial have been entered for the Library of Congress. The letter

should be sent to: Office of the General Counsel, Copyright Office, Library of Congress, Department 17, Washington, DC 20540.

(iii) The complimentary subscription copies must be addressed to: Group Periodicals Registration Library of Congress, Washington, DC 20540.

(iv) The Register of Copyrights may revoke the privilege of group registration of serials for any publisher who fails to submit the required complimentary subscription copies promptly after publication of each issue. Notice of revocation of the group registration of serials privilege shall be given in writing and shall be sent to the individual person or organization applying for group registration of serials, at the last address shown in the records of the Copyright Office. A notice of revocation may be given at any time if the requirements of the regulation are not satisfied, but it shall state a specific date of revocation that is at least 30 days later than the date the notice is mailed.

(v) To apply for group registration of serials under section 408(c)(1) of title 17 and this subsection, the following items must be sent together in the same package:

(A) A completed Form SE/Group giving the requested information.

(B) A filing fee of $10 for each issue covered by the group registration.

(C) A deposit consisting of one complete copy of the best edition of each issue included in the group registration.

(6) Group registration of daily newspapers.

(i) Pursuant to the authority granted by 17 U.S.C. 408(c)(1), the Register of Copyrights has determined that, on the basis of a single application, microfilm deposit, and filing fee, a single registration may be made for a group of daily newspapers published in a microfilm format if the following conditions are met:

(A) Registration covers a full month of issues of the same newspaper title published with issue dates in one calendar month.

(B) A completed GDN application form is submitted.

(C) A publication date is specified designating the first and last day that issues in the group were published.

(D) A deposit is made of positive, 35mm silver halide microfilm meeting the Library's best edition criteria that includes all issues published as final editions in the designated calendar month. In addition to the final edition of the daily newspaper, the claim to copyright and the deposit may also include earlier editions published the same day in a given metropolitan area served by the newspaper, but may not include national or regional editions distributed beyond a given metropolitan area.

(E) A nonrefundable filing fee of $40 is included with the submission, or charged to an active deposit account.

(F) Registration is sought within three months after the publication date of the last issue included in the group.

(ii) As used in this regulation, newspapers means serials which are classified as newspapers under the policy document "Newspapers Received Currently in the Library of Congress,"which is administered by the Newspaper Section of the Serials & Government Publications Division of the Library of Congress. In general, serials classified as newspapers are serials mainly designed to be a primary source of written information on current events, either local, national, or international in scope. A newspaper contains a broad range of news on all subjects and activities and is not limited to any specific subject matter. Newspapers are intended either for the general public or for a particular ethnic, cultural, or national group.

**(7) Group Registration of Contributions to Periodicals.**

(i) As provided by section 408(c)(2) of Title 17 of the United States Code, as amended by Pub. L. 94-553, a single registration, on the basis of a single application, deposit, and registration fee, may be made for a group of works if all of the following conditions are met:

(A) All of the works are by the same author;

(B) The author of each work is an individual, and not an employer or other person for whom the work was made for hire;

# APPENDIX A

---

(C) Each of the works first published as a contribution to a periodical (including newspapers) within a twelve-month period; [3]

[3] This does not require that each of the works must have been first published during the same calendar year; it does require that, to be grouped in a single application, the earliest and latest contributions must not have been first published more than twelve months apart.

(D) Each of the works, if first published before March 1, 1989, bore a separate copyright notice, and the name of the owner of copyright in each work (or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner) was the same in each notice; and

(E) The deposit accompanying the application consists of one copy of the entire issue of the periodical, or of the entire section in the case of a newspaper, in which each contribution was first published.

(ii) An application for group registration under section 408(c)(2) of Title 17 and this s 202.3(b)(7) shall consist of:

(A) A basic application for registration on Form TX, Form PA, or Form VA,[4] which shall contain the information required by the form and its accompanying instructions;

[4] The basic application should be filed in the class appropriate to the nature of authorship in the majority of the contributions. However, if any of the contributions consists preponderantly of nondramatic literary material that is in the English language, the basic application for the entire group should be submitted on Form TX.

(B) An adjunct form prescribed by the Copyright Office and designated "Adjunct Application for Copyright Registration for a Group of Contributions to Periodicals (Form GR/CP)", which shall contain the information required by the form and its accompanying instructions; and

(C) A fee of $20 and the deposit required by paragraph (b)(7)(i)(E) of this section.

(8) Group registration of daily newsletters. Pursuant to the authority granted by 17 U.S.C. 408(c)(1), the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for a group of two or more issues of a daily newsletter if the following conditions are met:

(i) As used in this regulation, daily newsletter means a serial published and distributed by mail or electronic media (online, telefacsimile, cassette tape, diskette or CD-ROM). Publication must occur at least two days per week and the newsletter must contain news or information of interest chiefly to a special group (for example, trade and professional associations, corporate house organs, schools, colleges, and churches).

(ii) The works must be essentially all new collective works or all new issues that have not been published before.

(iii) Each issue must be a work made for hire.

(iv) The author(s) and claimant(s) must be the same person(s) or organization(s) for all of the issues.

(v) All the items in the group must bear issue dates within a single calendar month under the same continuing title.

(vi) If requested in writing by the Copyright Acquisitions Division of the Library of Congress, the publisher of the newsletter must give the Library of Congress up to two complimentary subscriptions of the newsletter in the edition most suitable to the Library's needs. Subscription copies must be mailed or transmitted to the separate address specified by the Copyright Acquisitions Division in its request. Subscription copies are not required unless expressly requested by the Library of Congress.

(vii) A Form SE/Group shall be submitted for daily newsletters bearing issue dates within a single month, together with one copy of each issue, and a filing fee of $10 for each issue included in the group registration.

**(9) One registration per work.** As a general rule only one copyright registration can be made for the same version of a particular work. However:

(i) Where a work has been registered as unpublished, another registration may be made for the first published edition of the work, even if it does not represent a new version;

(ii) Where someone other than the author is identified as copyright claimant in a registration, another registration for the same version may be made by the author in his or her own name as copyright claimant; [5]

[5] An "author" includes an employer or other person for whom a work is "made for hire" under 17 U.S.C. 101. This paragraph does not permit an employee or other person working "for hire" under that section to make a later registration in his or her own name. In the case of authors of a joint work, this paragraph does permit a later registration by one author in his or her own name as copyright claimant, where an earlier registration identifies only another author as claimant.

(iii) Where an applicant for registration alleges that an earlier registration for the same version is unauthorized and legally invalid, a registration may be made by that applicant; and

(iv) Supplementary registrations may be made, under the conditions of s 201.5 of these regulations, to correct or amplify the information in a registration made under this section.

**(c) Application for Registration.**

(1) An application for copyright registration may be submitted by any author or other copyright claimant of a work, or the owner of any exclusive right in a work, or the duly authorized agent of any such author, other claimant, or owner.

(2) An application for copyright registration shall be submitted on the appropriate form prescribed by the Register of Copyrights under paragraph (b) of this section, and shall be accompanied by a fee of $20 and the deposit required under 17 U.S.C. 408 and s 202.20 of these regulations.[6] The application shall contain the information required by the form and its accompanying instructions, and shall include a certification. The certification shall consist of: (i) A designation of whether the applicant is the author of, or other copyright claimant or owner of exclusive rights in, the work, or the duly authorized agent of such author, other claimant, or owner (whose identity shall also be given); (ii) the handwritten signature of such author, other claimant, owner, or agent, accompanied by the typed or printed name of that person; (iii) a declaration that the statements made in the application are correct to the best of that person's knowledge; and (iv) the date of certification. An application for registration of a published work will not be accepted if the date of certification is earlier than the date of publication given in the application.

[6] In the case of applications for group registration of newspapers, contributions to periodicals, and newsletters, under paragraphs (b)(6), (b)(7), and (b)(8) of this section, the deposits and fees shall comply with those specified in the respective paragraphs.

(Authority: Pub. L. 94-553; secs. 408, 409, 410, 702)

[43 FR 966, Jan. 5, 1978; 54 FR 13181, March 31, 1989; 54 FR 21059, May 16, 1989; 55 FR 50557, Dec. 7, 1990; 56 FR 7813, 7815, Feb. 26, 1991; 56 FR 27197, June 13, 1991; 56 FR 59885, Nov. 26, 1991; 56 FR 65190, 65191, Dec. 16, 1991; 57 FR 39616, Sept. 1, 1992; 58 FR 17778, April 6, 1993; 60 FR 15875, March 28, 1995; 60 FR 34168, June 30, 1995]

SUBCHAPTER A—COPYRIGHT OFFICE AND PROCEDURES

Source: 59 FR 23981, May 9, 1994, unless otherwise noted.

# APPENDIX A

**37 C.F.R. s 202.3, 37 C.F.R. s 202.3**

---

PART 202—REGISTRATION OF CLAIMS TO COPYRIGHT

Authority: 17 U.S.C. 702.

Source: 24 FR 4956, June 18, 1959; 50 FR 30172, July 24, 1985; 51 FR 6403, Feb. 24, 1986; 56 FR 7813, 7815, Feb. 26, 1991; 60 FR 34168, June 30, 1995, unless otherwise noted.

---

**End of Document**                                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.