UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMOND GRANT P/K/A "EDDY GRANT", GREENHEART MUSIC LIMITED, a United Kingdom Limited Company, and GREENHEART MUSIC LIMITED, an Antigua and Barbuda Limited Company,<br><br>                      Plaintiffs,<br><br>– against –<br><br>DONALD J. TRUMP and DONALD J. TRUMP FOR PRESIDENT, INC.,<br><br>                      Defendants. | Civil Action No. 1:20-cv-07103-JGK |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................II
PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT .......................................................................................................................... 2
   I.   DEFENDANTS' FAIR USE DEFENSE DOES NOT RAISE A GENUINE ISSUE OF MATERIAL FACT ............................................................................................................ 2
      A.   Defendants' Use Is Not Transformative, Is Commercial In Nature, And Defendants Had No Justification To Use The Works............................................................................ 2
      B.   The Infringing Video Impaired the Potential Market for The Works............................. 5
   II.   DEFENDANTS' CHALLENGE TO PLAINTIFFS' REGISTRATION OF THE SOUND RECORDING SHOULD BE REJECTED .......................................................................... 7
CONCLUSION....................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*175 Brown v. Eli Lilly & Co.*,
   654 F.3d 347 (2d Cir. 2011) .................................................................................... 2

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   143 S. Ct. 1258 (2023) ............................................................................................ 3

*Bartok v. Boosey & Hawkes, Inc.*,
   523 F.2d 941 (2d Cir. 1975) .................................................................................... 9

*Brown v. Netflix, Inc.*,
   462 F. Supp. 3d 453 (S.D.N.Y. 2020) ..................................................................... 4

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*,
   44 F.3d 61 (2d Cir. 1994) ........................................................................................ 9

*Cordiano v. Metacon Gun Club, Inc.*,
   575 F.3d 199 (2d Cir. 2009) .................................................................................... 2

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ................................................................................................ 8

*Fox News Network, LLC v. Tveyes, Inc.*,
   883 F.3d 169 (2d Cir. 2018) .................................................................................... 5

*Grant v. Trump*,
   563 F. Supp. 3d 278 (S.D.N.Y. 2021) ..................................................................... 4

*Henley v. DeVore*,
   733 F.Supp.2d 1144 (C.D. Cal. 2010) .................................................................. 4,6

*In re Rubin Bros. Footwear, Inc.*,
   119 B.R. 416 (S.D.N.Y. 1990) ................................................................................ 7

*Infinity Broadcast Corp. v. Kirkwood*,
   150 F.3d 104 (2d Cir. 1998) .................................................................................... 3

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
   413 F.3d 257 (2d Cir. 2005) .................................................................................... 8

*Lennon v. Premise Media Corp.*,
   556 F. Supp. 2d 310 (S.D.N.Y. 2008) ..................................................................... 4

*Mastercard Int'l, Inc. v. Nader 2000 Primary Committee, Inc.*,
  2004 WL 434404 (S.D.N.Y. Mar. 8, 2004) ........................................................................ 3

*Morris v. Bus. Concepts, Inc.*,
  259 F.3d 65 (2d Cir. 2001) ............................................................................................... 9

*Morris v. Business Concepts, Inc.*,
  283 F.3d 502 (2d Cir. 2002) ........................................................................................ 1, 7

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ......................................................................................................... 9

*Schwartzwald v. Zealot Networks, Inc.*,
  2020 WL 8187749 (E.D.N.Y. Dec. 27, 2020) ................................................................. 8

*Steinberg v. Columbia Pictures Indus., Inc.*,
  663 F. Supp. 706 (S.D.N.Y. 1987) .................................................................................. 4

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) ............................................................................................ 7

*Weissmann v. Freeman*,
  868 F.2d 1313 (2d Cir. 1989) ......................................................................................... 5

*Woods v. Universal City Studios, Inc.*,
  920 F.Supp. 62 (S.D.N.Y. 1996) ..................................................................................... 9

Plaintiffs Edmond Grant ("Grant"), Greenheart Music Limited, a United Kingdom Limited Company ("Greenheart UK") and Greenheart Music Limited, an Antigua and Barbuda Limited Company ("Greenheart Antigua," and together with Greenheart UK and Grant, "Plaintiffs"), by their undersigned attorneys, respectfully submit this Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment as to Liability against defendants Donald J. Trump ("Trump") and Donald J. Trump for President, Inc. (the "Campaign," and together with Trump, "Defendants").

## PRELIMINARY STATEMENT

Defendants assert the affirmative defense of fair use to oppose Plaintiffs' summary judgment motion. The Court rejected the defense at the pleading stage and Defendants cannot satisfy their burden to defeat summary judgment based on the same defense. Defendants concede the second and third factors of the fair use analysis (the nature of the copyrighted work and the amount and substantiality of the portion used). Moreover, Defendants mischaracterize the first and fourth fair use factors by focusing on the conduct of Plaintiffs, the copyright owners, instead of Defendants, the alleged infringing parties.

Separately, Defendants argue that Plaintiffs lack a valid copyright registration in the Sound Recording. The argument fails because the Second Circuit has expressly held that where an author retains all rights to constituent parts of a collective work, as Plaintiffs did with respect to the album containing "Electric Avenue," "a copyright registration in a collective work also registers a copyright claim in a particular constituent work." *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002). Defendants do not raise a genuine issue of material fact to defeat Plaintiffs' motion.

# ARGUMENT

I. **DEFENDANTS' FAIR USE DEFENSE DOES NOT RAISE A GENUINE ISSUE OF MATERIAL FACT**

Plaintiffs demonstrated in their motion papers "a lack of evidence" supporting the Defendants' affirmative defense of fair use. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). As to the first and fourth factors in a fair use analysis, Defendants do not identify "specific evidence demonstrating the existence of a genuine dispute of material fact" and thus their argument fails as a matter of law. *175 Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

### A. Defendants' Use Is Not Transformative, Is Commercial In Nature, And Defendants Had No Justification To Use The Works

There is no evidence to support a finding that the Infringing Video is transformative and not commercial in nature. The Works were not copied in good faith but rather for the commercial interests of the infringer. *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992). As the Supreme Court held in *Harper & Row v. Nation Enters.*, 471 U.S. 539, 562 (1985), the "crux of the profit/nonprofit distinction" in fair use is whether the defendant stands to benefit from using the work "without paying the customary price." That is exactly what Defendants did here.

As this Court previously held,

> Defendant did not edit the song's lyrics, vocals, or instrumentals at all, and the song is immediately recognizable when it begin playing around the fifteen-second mark of the video. . . . Moreover, the animation does not use Electric Avenue as a vehicle to deliver its satirical message, and it makes no effort to poke fun at the song or Grant.

*Grant v. Trump*, 563 F. Supp. 3d 278, 285 (S.D.N.Y. 2021).

The Infringing Video does not add new expression to the Works, and Defendants did not have a compelling justification to use the Works, as the Supreme Court requires under *Andy*

2

*Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1277-1278 (2023)("*Warhol*"). Scavino testified ███████████████████████████████████████████████████████████████████ Declaration of Brett Van Benthysen dated September 15, 2023, ECF Doc. No. 108 ("Van Benthysen Decl."), Exhibit 22 ("Scavino Tr.") at 49:13-51:18. Trump offered ██████████████████████████████████████████████ Van Benthysen Decl. Exhibit 21 ("Trump Tr.") at 35:7-17. Defendants merely copied Plaintiff's Works without authorization, to "avoid the drudgery in working up something fresh." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994). Under Supreme Court precedent, the lack of transformative justification is fatal to Defendants' argument. *Warhol* at 1273; *Authors Guild v. Google, Inc*., 804 F.3d 202, 215 (2015).

Defendants argue that the purpose of the Infringing Video as a "colorful attack on the character and personality traits of a rival political figure" transformed the "original conception of Electric Avenue as a protest against social conditions." Def. Opp. Br. at page 11. Defendants' argument misapplies the first fair use factor because a "difference in purpose is not quite the same thing as transformation." *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998). The Works are not integral to the political message in the Infringing Video, and the Infringing Video does not purport to comment on, critique, or parody the Works. Defendants concede that the Infringing Video is merely a satire, not a parody (ECF Doc. No. 19 at page 1), which places a higher burden on Defendants and requires a greater justification, which is not present here, to be deemed fair use. *Campbell*, 510 U.S. at 580.

Defendants cannot rely on *Mastercard Int'l, Inc. v. Nader 2000 Primary Committee, Inc.*, 2004 WL 434404 (S.D.N.Y. Mar. 8, 2004) because the advertisement there was a parody. The court specifically held that it was "important to note the difference between an advertisement that

3

promotes a parody of a copyrighted work and an advertisement that itself actually infringes a copyright. . . . an advertisement infringes a copyright when what is being advertised 'bears no relationship to the copyrighted work.'" *Id.* at *11 citing *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 714 (S.D.N.Y. 1987). In *Nader*, the advertisement "wittingly comments on the craft of the original," *Id.* at *13, whereas here, "in no sense does the [Infringing Video] parody the copyrighted song or use the song for purposes of commentary." *Grant*, 563 F. Supp. 3d at 287.

This case is also distinguishable from *Lennon v. Premise Media Corp.*, where the defendants used an excerpt of the song "Imagine" "over carefully selected archival footage that implicitly comments on the song's lyrics" and on a "public debate regarding the role of religion in public life." 556 F. Supp. 2d 310, 324 (S.D.N.Y. 2008). Defendants do not argue that the Infringing Video here commented at all on the Works – they could have picked any song. Further, use of the copyrighted work in *Lennon* constituted **0.27%** of the documentary's running time. *Lennon* at 324. The 40 second except of the "Electric Avenue" here constitutes 73% of the running time of the Infringing Video.[1]

Finally, the use of songs in political advertisements has previously been held to be commercial in nature. *Henley v. DeVore,* 733 F.Supp.2d 1144, 1159 (C.D. Cal. 2010). The fact

---

[1] The Court previously distinguished *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 458 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021), which Defendants rely on again, because "the song at issue there . . . was used as part of the film's 'commentary on the burlesque art form and its resurgence in Portland, Oregon'." *Grant*, 563 F. Supp. 3d at 286. The Infringing Video did not comment on the Works.

4

that the alleged infringing work in *Henley* was a parody does not support Defendants' argument. Defendants point out the Infringing Video here did not contain a link to donate to the Campaign, but "[m]onetary gain is not the sole criterion, especially in settings where profit is ill-measured in dollars." *Grant*, 563 F. Supp. 3d at 286 *quoting Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989). The Infringing Video was distributed by Defendants via Twitter to Trump's then nearly 100 million followers. Trump Tr. at 20:10-19. The Infringing Video has been viewed more than 13.7 million times. Van Benthysen Decl. Exhibits 13 and 14. The Tweet containing the Infringing Video has been "liked" more than 350,000 times, re-tweeted more than 139,000 times, and has received close to 50,000 comments. *Id.*

Accordingly, there is no basis for the Court to deviate from its initial determination (in denying Defendants' motion to dismiss) that "defendants have failed to show that the use was noncommercial as a matter of law." *Grant*, 563 F. Supp. 3d at 287.

### B. The Infringing Video Impaired the Potential Market for The Works

The parties agree that the analysis of the fourth fair use factor "requires [the court] to balance the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." *Grant*, 563 F. Supp. 3d at 286 (citations omitted). Defendants argue that the benefit to the public is substantiated by the fact that Grant did not write the song to provide "political capital" to politicians and that political satire has long been held to serve the public interest. Defendants' analysis is flawed.

The focus of the public benefit portion of the balancing test is on Defendants' conduct and not that of the copyright owner. There is no value to the public if the Infringing Video is permitted because Defendants could have used any song, created a new song, or used no song at all, to convey the same political message in the Infringing Video. As noted above, courts distinguish between parody that comments on or critiques the copyrighted work and Defendants' use which "merely

5

repackages or republishes the original." *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 177 (2d Cir. 2018). As this Court previously held, "widespread, uncompensated use of Grant's music in promotional videos-political or otherwise-would embolden would-be infringers and undermine Grant's ability to obtain compensation in exchange for licensing his music." *Grant*, 563 F. Supp. 3d at 289. Plaintiffs' expert opined that the Infringing Video, being broadcast on the internet and social media, "likely cannibalized listeners causing a reduction in the volume of Subject Master and Subject Composition royalty bearing streams and downloads and the royalties reported thereon." Reply Declaration of Brett Van Benthysen dated October 19, 2023 ("Reply Van Benthysen Decl."), Exhibit 24.

Further, while the Court previously recognized that satirical videos can contain protected political speech, the Court quickly cautioned that "[c]reators of satirical videos like the one at issue here must simply conform any use of copyrighted music with copyright law by, for example: paying for a license; obtaining the copyright owner's permission; or 'transforming' the chosen song by altering it with 'new expression, meaning, or message.'" *Id. quoting Campbell*, 510 U.S. at 579. Defendants willfully ignored this instruction.

Defendants repeatedly stress Plaintiff Grant's testimony that he did not wish to license his work for purposes of a political campaign, see Def. Opp. Br. at 11-13, but the Supreme Court made clear that the analysis under section 107(4) cannot be restricted to markets the plaintiff itself has exploited, or has even developed plans to exploit, but looks more broadly to markets that "*creators of original works*" – not just the plaintiff in a particular case – "*would in general* develop or license others to develop." *Campbell*, 510 U.S. at 591 (emphasis added).

As to the remaining considerations, Defendants concede that the second and third factors weigh in favor of Plaintiffs because the Works are creative and entitled to broad copyright

6

protection and because Defendants copied qualitatively and quantitatively significant portions of the Works in the Infringing Video. Def. Opp. at page 14. Further, Defendants have no justification for their use, as they "did not edit the song's lyrics, vocals, or instrumentals at all, and the song is immediately recognizable when it begins playing around the fifteen second mark of the video." *Grant*, 563 F. Supp. 3d. at 285; *Henley*, 733 F. Supp. 2d at 1162–63. The Infringing Video is not a fair use.

## II. DEFENDANTS' CHALLENGE TO PLAINTIFFS' REGISTRATION OF THE SOUND RECORDING SHOULD BE REJECTED

Plaintiffs' satisfied their initial burden of proof by demonstrating the absence of a genuine issue of material fact as to Defendants' liability for copyright infringement. *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 421 (S.D.N.Y. 1990). In fact, Defendants concede unauthorized copying and Plaintiffs' ownership in the Composition copyright. Defendants' only argument is with respect to the Sound Recording copyright, which is repeated from Defendants' motion for summary judgment.

As stated in Plaintiffs' opposition (ECF Doc. No. 118), which is incorporated by reference herein, the Sound Recording is registered as part of a collection on a greatest-hits album (the "Album"). Declaration of Edmond Grant dated September 15, 2023, ECF Doc. No. 107 ("Grant Decl.") Exhibit 3. The Second Circuit in *Morris* holds that where a claimant registers multiple constituent works as part of a collection, and "all rights [in the constituent work] have been transferred to the claimant, then the constituent work is included in the registration of the collective work." 283 F.3d at 505. This is the law even where the certificate relates to pre-existing works. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) ("plaintiff need not produce a separate registration relating to the pre-existing work").

Plaintiffs have demonstrated unrebutted evidence of ownership in the copyright to the Sound Recording.[2] In 2001, Plaintiff Greenheart UK licensed the copyright to the Sound Recording in the Warner Music Agreement. Grant Decl. Exhibit 4. In 2002, London Records, an affiliate of the licensee under the Warner Music Agreement, registered the Sound Recording by registering the Album containing the Sound Recording as a compilation. *Id.* Exhibit 3. The Sound Recording is contained on the Album, although Defendants do not challenge the inclusion of "Electric Avenue" on the Album or the subject SR copyright registration. Declaration of Jason Kasner dated September 15, 2023, ECF Doc. No. 100-1 ("Kasner Decl.") Exhibit D at Interrogatory 16. The Warner Music Agreement expired by its terms no later than September 20, 2006, and ownership of the copyright in the Sound Recording reverted back to Plaintiffs. Grant Decl. at ¶7 and Exhibit 4 at ¶1(b).

Defendants raise additional arguments in their summary judgment motion related to the Sound Recording. Those arguments are not advanced in Defendants' opposition but will be addressed briefly herein and should be rejected.

Defendants argue that the Album is an unprotectable compilation. However, Defendants rely on case law that distinguishes compilations containing otherwise unprotectable facts because

---

[2] In their summary judgment motion, Defendants argue that copies of the registration information displayed on the Copyright Office website are insufficient to demonstrate ownership. The Second Circuit has rejected this argument; a court is permitted to take judicial notice of federal copyright registrations. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *Schwartzwald v. Zealot Networks, Inc.*, 2020 WL 8187749, at *2 (E.D.N.Y. Dec. 27, 2020), report and recommendation adopted, 2021 WL 173996 (E.D.N.Y. Jan. 19, 2021).

one of the core tenants of copyright law is that facts themselves are not copyrightable. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("[t]o qualify for copyright protection, a work must be original to the author"); *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*, 44 F.3d 61, 65-66 (2d Cir. 1994) ("collecting information does not justify conferring copyright protection on a compilation of facts."). Defendants do not argue that the Sound Recording itself is not copyrightable and thus the Second Circuit's holding in *Morris* – that a constituent work is included in the registration of the collective work – controls.

Defendants also argue that registration of a compilation or collective work does not extend to previously published constituent works owned by the copyright owner of the collective work. The Second Circuit has rejected this argument. *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 67–68 (2d Cir. 2001), *as clarified on denial of reh'g*, 283 F.3d 502 (2d Cir. 2002), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ("Condé Nast received Certificates of Registration from the Register of Copyrights for each issue of Allure in which Morris's articles were published."); *Streetwise Maps*, 159 F.3d at 746 (certificate of registration protecting pre-existing published map); *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 64 (S.D.N.Y. 1996) ("submissions show that [plaintiff] owns the copyright in the earlier published [illustration]"). Defendants cite out of circuit case law and various administrative policies of the Copyright Office in their motion for summary judgment for this argument. The case law is distinguishable and not binding or persuasive where the Second Circuit has affirmed that the Copyright Office does not give opinions or define legal terms. *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 946–47 (2d Cir. 1975).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be granted.

Dated: October 19, 2023

Respectfully submitted,

By: *s/ Brett Van Benthysen*
    Brian D. Caplan
    Robert W. Clarida
    Brett Van Benthysen
    Reitler Kailas & Rosenblatt LLP
    885 Third Avenue, 20th Floor
    New York, New York 10022
    bcaplan@reitlerlaw.com
    rclarida@reitlerlaw.com
    bvanbenthysen@reitlerlaw.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

   I, BRETT VAN BENTHYSEN, an attorney admitted to practice in the Southern District of New York and a member of Reitler Kailas & Rosenblatt LLP, counsel for Plaintiffs herein, hereby certify that the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY, exclusive of the cover page, table of contents, table of authorities, and this certificate of compliance, is 2797 words and complies with the formatting rules contained in Section II.D. of the Individual Practices of Judge John G. Koeltl.

Dated: October 19, 2023              *s/ Brett Van Benthysen*
                                Brett Van Benthysen