**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EDMOND GRANT P/K/A "EDDY GRANT",
GREENHEART MUSIC LIMITED, a United
Kingdom Limited Company, and
GREENHEART MUSIC LIMITED, an
Antigua and Barbuda Limited Company,

                            Plaintiffs,

      -against-

DONALD J. TRUMP and DONALD J.
TRUMP FOR PRESIDENT, INC.,

                         Defendants.

Civil Action No. 1:20-cv-07103-JGK

---

**DEFENDANTS DONALD J. TRUMP AND DONALD J. TRUMP**
**FOR PRESIDENT, INC'S REPLY MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Mark I. Peroff
mark.peroff@peroffsaunders.com
Jason H. Kasner
jkasner@peroffsaunders.com
PEROFF SAUNDERS P.C.
745 5th Avenue | Suite 500
New York, NY 10151
Tel: 646.898.2030

*Attorneys for Defendants*
*Donald J. Trump and Donald J. Trump for*
*President, Inc*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT …………………………………………………………………1

ARGUMENT……………………………………………………………………………………2

      THE SOUND RECORDING REGISTRATION DOES
      NOT COVER ELECTRIC AVENUE…………………………………………………2

CONCLUSION…………………………………………………………………………………..8

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*AT&T Corp. v. Syniverse Techs., Inc.,*
 No. 12 Civ. 1812, 2014 WL 4412392, (S.D.N.Y. Sept. 8, 2014)...........................2

*Computer Assoc. Int'l v. Altai, Inc.,*
 775 F. Supp. 544 (E.D.N.Y. 1991)..........................................................................3

*Greenwich Film Prods., S.A. v. DRG Records Inc.*
 833 F. Supp. 248 (S.D.N.Y. 1993)........................................................................3,5

*McLaren v. Chico's FAS, Inc.,*
 No. 10 Civ. 2481 (S.D.N.Y. Nov. 9, 2010)..............................................................6

*Morris v. Business Concepts, Inc.,*
 259 F.3d 65 (2d Cir. 2001).......................................................................................5

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.,*
 712 F. Supp. 2d 84 (S.D.N.Y. 2010).......................................................................5

*Olander Enters., Inc. v. Spencer Gifts, LLC,*
 812 F. Supp. 2d 1070 (C.D. Cal. 2011)...................................................................7

*Streetwise Maps, Inc. v. VanDam, Inc.,*
 159 F.3d 739 (2d Cir. 1998)....................................................................................3

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.,*
 959 F.3d 1194 (9th Cir. 2020).................................................................................6

*Woods v. Universal City Studios, Inc.,*
 920 F. Supp. 62 (S.D.N.Y. 1996).........................................................................4,5

## Statutes and Rules

37 C.F.R. 202.3.............................................................................................................6

37 C.F.R. 202.3(b)(3)(i)(A)............................................................................................6

37 C.F.R. § 202.3(b)(4)..................................................................................................6

Defendants Donald J. Trump ("Trump") and Donald J. Trump For President, Inc. (collectively, "Defendants") respectfully submit this reply memorandum of law to further support of their motion for partial summary judgment.[1]

## PRELIMINARY STATEMENT

Defendants' Memorandum of Law in Support of their Motion for Partial Summary Judgment argued that because SR Registration (No. SR000344006) for the sound recording of the album "Eddy Grant: the greatest hits" was described as a "compilation" that disclaimed "preexisting" recordings, that registration did not cover Electric Avenue because it was a "preexisting" recording which had been previously published nearly two decades earlier. Incredibly, Plaintiffs completely ignore the fact that their own registration clearly states that the copyright claim only covers: "New Matter: compilation of recordings, remixed sounds & photography." Similarly, under the field "Authorship on Application," the SR Registration lists "compilation of recordings, artwork: Greenheart Must, Ltd., employer for hire." Instead, Plaintiffs incorrectly argue that because the compilation includes the previously published song, "Electric Avenue," and that they are the authors of both works, the SR Registration affords copyright protection for "Electric Avenue." Second Circuit case law, however, does not endorse this approach, but rather leaves unaltered the straightforward rule of the Copyright Office that a

---

[1] Unless otherwise noted, capitalized terms used herein have the same meaning as set forth in Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("Opening Memorandum" or "Open.") (Dkt. 100). Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. 118) is referred to herein as the "Opposition" or "Opp."

registration of a compilation or collective work only covers constituent parts by the same author to the extent the constituent parts were previously unpublished.

## ARGUMENT

## THE SOUND RECORDING REGISTRATION
## DOES NOT COVER ELECTRIC AVENUE

Plaintiffs do not dispute (or even address) the axiomatic principle that the scope of the registration determines whether the registration covers an allegedly infringed work.  (Open. 7).  Indeed, Plaintiffs do not even mention the specific claims under the SR Registration.  Thus, they should be deemed to have conceded that the SR Registration purports to be a "compilation" as stated in the "authorship" field, and that it disclaimed any "preexisting" recordings from the registration.  (Open. 7-9).  *AT&T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812, 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) ("recognizing the futility of contesting this issue, [plaintiff] did not even discuss it in its opposition brief.  [Plaintiff's] silence concedes the point.") (citations omitted); *In re UBS AG Secs. Litig.*, No. 07 Civ. 112255, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (party "concedes through its silence" argument by its opponent that it fails to address) (citations omitted).  Plaintiffs similarly concede that the Copyright Office's "administrative policies," as set forth in the *Compendium* and Circulars, hold that a registration of a collective work only covers its copyrightable constituent parts to the extent that the constituent parts were previously unpublished.  (Opp. 9, 11).

Plaintiffs nevertheless assert that the actual contents of the SR Registration and the unambiguous position of the Copyright Office are of no moment because "Second Circuit caselaw . . . considers previously published constituent works as part of a collection so long as the claimant owns the rights in the constituent work."  (Opp. 8-9).  That is, as Plaintiffs would have it, since they hold the copyright in Electric Avenue, and the registered "greatest hits" album contains

2

Electric Avenue, the registration of the "greatest hits" album covers Electric Avenue, regardless of what registration actually says, and irrespective of the fact that Electric Avenue was published almost two decades previously.  Plaintiffs are simply wrong on the law.

Specifically, three of the cases Plaintiffs rely on held that the registration of a *derivative* work covered its previously published constituent parts so long as registrant holds the copyright in the constituent parts.  *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) ("because [the plaintiff] is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work"); *Greenwich Film Prods., S.A. v. DRG Records Inc.* 833 F. Supp. 248, 250-52 (S.D.N.Y. 1993) (holding that pre-existing musical compositions contained in derivative motion picture were covered by registration of the motion picture); *Computer Assoc. Int'l v. Altai, Inc.*, 775 F. Supp. 544, 556 (E.D.N.Y. 1991) (registration of derivative computer program covered pre-existing component parts), *aff'd in part, vacated in part*, 982 F.2d 693 (2d Cir. 1992).  This more permissive framework makes sense in the context of "derivative works" given that requiring each component part of a derivative work, such as a computer program, to be separately registered "would require dozens if not hundreds of registrations."  *Altai, Inc.*, 775 F. Supp. at 556; *see also Streetwise Maps, Inc.*, 159 F.3d at 47 (not requiring copyright holder to register every prior iteration of New York City street map).  Indeed, the treatise section that Plaintiffs cite, makes clear that the registration of a collective work operates differently:

> An even more straightforward application of the same principle emerges to the extent that the facts are altered further, such that a registration for a collective work consisting of multiple components *deals not with pre-existing components, but with wholly original material.*  This situation could emerge, for example, by virtue of producing a record album that collects not old songs, but instead, *entirely original compositions.*   In that

> circumstance, plaintiff's registration for the entire album suffices to protect each of plaintiff's songs included therein, notwithstanding that not every song title may be listed in the registration certificate.

2 Nimmer on Copyright § 7.16 [B][2] (1997) (emphasis added).

*Woods v. Universal City Studios, Inc.*, 920 F. Supp. 62 (S.D.N.Y. 1996) likewise does not alter the position of the Copyright Office that the registration of a compilation covers only previously unpublished component parts. There, the plaintiff's black and white drawing entitled "Neomechanical Tower (Upper) Chamber" was published in a catalog in Germany entitled "Lebbeus Woods/Centricity." *Id.* at 63. Later, in 1991, the plaintiff created a colored drawing of "(Upper) Chamber" in a different collection entitled "Lebbeus Woods/The New City," which was published in the United States and registered with the Copyright Office in 1992. *Id.* The artist later brought suit arising out of the use of his work in the film *12 Monkeys*. *Id.* at 63-64. In a relatively perfunctory discussion of the issue, the court rejected the defendant's argument that the color version of the drawing was not covered by the registration of the New City collection. *Id.* at 64. While the court based its ruling on the fact that the artist's "submissions show that he owns the copyright in the earlier published '(Upper) Chamber,'" it is not clear whether the "earlier published" version to which the court referred was the original black and white drawing (originally published in Germany) or the color version which was registered in the same year as publication in the United States. *Id.* Either way, the court did not address, and the parties do not appear to have raised, the issue of publication. *See id.* In any event, the court noted that the issue would eventually be moot given that the plaintiff had applied to register both the color and black and

white versions of "(Upper) Chamber" and expected a certificate of registration from the copyright office within the next few days." *Id.*[2]

Attempting misdirection, Plaintiffs claim that the Court can look past what the SR Registration actually says because "'minor mistakes in a registration statement, made in good faith and unaccompanied by deceptive intent, will not serve to invalidate the registration.'" (Opp. 6 n.2) (quoting *Greenwich Film Prods.*, 833 F. Supp.at 252 (alterations omitted)).  Defendants do not claim that the registration is invalid and have never argued that "the registration information displayed on the Copyright Office website is insufficient to demonstrate ownership[.]" (Opp. 6-7 n.3).  To the contrary, Defendants' position is that the SR Registration covered exactly what it purported to register ("compilation of recordings, remixed sounds, & photography") and disclaimed exactly what it purported to disclaim ("preexisting" recordings).  (Kasner Decl. ¶ 3, Ex. B).  Even if this were a "mistake," (for which Plaintiffs, tellingly, provide no proof), such a mistake, as a matter of logic, cannot *enlarge* the scope of the registration.  *See Morris v. Business Concepts, Inc.*, 259 F.3d 65, 72 (2d Cir. 2001) (rejecting claim that "technical misdescriptions" in registration of compilation could enlarge scope of registration to cover individual works contained therein even assuming registration was intended to cover individual works); *see also Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010)

---

[2] *Morris v. Business Concepts, Inc.*, 283 F.3d 502 (2d Cir. 2002) likewise did not address previously published component parts of a compilation or collective works, and ultimately reaffirmed its prior ruling that a magazine registration of the collective work did not cover the component article at issue.  Indeed, the Second Circuit in *Morris* relied on the Circulars, *id.* at 505, which Plaintiffs here argue the Court should disregard.

("because the registration is valid as to the compilation, [plaintiff's] argument that the 'innocent error rule' should apply to save the registration as to the individual photograph is also rejected'").

Plaintiffs also assert that the current and previous iterations of 37 C.F.R. 202.3 "permit registration for multiple *published* works on a single application."  (Opp. 8-9) (emphasis in original).  The actual language of that regulation, which Plaintiffs conspicuously omit, reveals the opposite to be the case.  Specifically, in the 2002 iteration of that regulation, which was effective at the time of the registration of the Sound Recording,[3] 37 C.F.R. 202.3(b)(3)(i)(A) provided that to "be considered a single work" and "[i]n the case of published works . . . [a]ll copyrightable elements that are otherwise recognizable as self-contained works, *that are included in a single unit of publication*, and in which the copyright claimant is the same[.]"  (Emphasis added) (annexed hereto as Exhibit A).   This regulation promulgated the requirement for a "'single work' registration," whereby a registrant can pay a single filing fee for the registration of self-contained works within "a single unit of publication."  *McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481, at *1 (S.D.N.Y. Nov. 9, 2010).[4]   As Judge Rakoff explained, "[t]he most natural reading of the regulation's requirement that the copyrightable works form a 'single unit of publication' is that the works must be first published together to qualify as such," rejecting a construction (urged by Plaintiffs here) that would "permit a separately published work to subsequently become part of a

---

[3] Courts look to the Copyright Office's regulations in place at the time of registration in assessing its scope and effective.  *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1198 n.1 (9th Cir. 2020), *rev'd on other grounds*, 142 S. Ct. 941 (2022).

[4] The current iteration of the regulation refers to the registration of "one work," but otherwise does not substantively differ from previous iterations.  37 C.F.R. § 202.3(b)(4).

'single unit of publication' together with other elements, thus allowing the applicant to pay only a single registration fee." *Id.* at *3. Thus, Judge Rakoff agreed with the Copyright Office's construction "that the regulation provides that only individual works *first published together in a single work* can qualify for 'single work' registration." *Id.* (emphasis in original).

As another court would later explain, and presciently describe what Plaintiffs are attempting to do here, "[r]estricting the 'single work' registration to groups of works that are published together for the first time as a single unit of publication . . . discourages copyright holders from sitting on their rights by preventing a copyright holder from selling an individual work for months or years without registering it, and then registering it as a part of a collection in order to avoid any consequences from the failure to register the work such as the unavailability of statutory damages and attorneys' fees." *Olander Enters., Inc. v. Spencer Gifts, LLC*, 812 F. Supp. 2d 1070, 1077 (C.D. Cal. 2011). Indeed, the regulation Plaintiffs cite to attempt to justify their position, "illustrates the practical importance of an administrative rule that prevents copyright holders from surreptitiously including previously published works as a part of a 'single work' registration, when they should in fact be excluded." *Id.*

In sum, the registration of a "greatest hits" album that purported to afford protection to the selection of songs, artwork and remixed sounds contained therein, is not vehicle to register an individual work that had been available to the public for nearly twenty years. Indeed, courts (including those in the Second Circuit) and the Copyright Office explicitly reject Plaintiffs' suggested *post hoc* approach to registration. This straightforward framework requires dismissal of Count II of Plaintiffs' Complaint.

**CONCLUSION**

For all of the foregoing reasons, and for the reasons set forth in the Opening Memorandum,

Defendants Donald J. Trump and Donald J. Trump For President, Inc. respectfully request that the

Court grant their motion for partial summary judgment.


Respectfully submitted,

Dated: New York, New York
      October 20, 2023

*/s/ Jason H. Kasner*
Jason H. Kasner
jkasner@peroffsaunders.com
Mark I. Peroff
mark.peroff@peroffsaunders.com
PEROFF SAUNDERS P.C.
745 5th Avenue | Suite 500
New York, NY 10151
Tel: 646.898.2030

*Attorneys for Defendants*
*Donald J. Trump and Donald J. Trump for*
*President, Inc.*

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing memoranda contains 2,183 words and complies with Rule II(D) of Judge John G. Koeltl's Individual Practices.

_/s/ Jason H. Kasner_____
Jason H. Kasner

# EXHIBIT A

Code of Federal Regulations
  Title 37. Patents, Trademarks, and Copyrights
    Chapter II. Copyright Office, Library of Congress
      Subchapter A. Copyright Office and Procedures (Refs & Annos)
        Part 202. --Registration of Claims to Copyright (Refs & Annos)

This section has been updated. Click here for the updated version.

37 C.F.R. § 202.3

§ 202.3 Registration of copyright.

Effective: [See Text Amendments] to March 27, 2005

(a) General.

(1) This section prescribes conditions for the registration of copyright, and the application to be made for registration under sections 408 and 409 of Title 17 of the United States Code, as amended by Pub.L. 94–553.

(2) For the purposes of this section, the terms audiovisual work, compilation, copy, derivative work, device, fixation, literary work, motion picture, phonorecord, pictorial, graphic and sculptural works, process, sound recording, and their variant forms, have the meanings set forth in section 101 of Title 17. The term author includes an employer or other person for whom a work is "made for hire" under section 101 of Title 17.

(3) For the purposes of this section, a copyright claimant is either:

(i) The author of a work;

(ii) A person or organization that has obtained ownership of all rights under the copyright initially belonging to the author.[1]

(b) Administrative Classification and Application Forms--

(1) Classes of Works. For the purpose of registration, the Register of Copyrights has prescribed the classes of works in which copyright may be claimed. These classes, and examples of works which they include, are as follows:

(i) Class TX: Nondramatic Literary Works. This class includes all published and unpublished nondramatic literary works. Examples: Fiction; nonfiction; poetry; textbooks; reference works; directories; catalogs; advertising copy; and compilations of information.

(ii) Class PA: Works of the Performing Arts. This class includes all published and unpublished works prepared for the purpose of being performed directly before an audience or indirectly by means of a device or process. Examples:

Musical works, including any accompanying words; dramatic works, including any accompanying music; pantomimes and choreographic works; and motion pictures and other audiovisual works.

(iii) Class VA: Works of the Visual Arts. This class includes all published and unpublished pictorial, graphic, and sculptural works. Examples: Two dimensional and three dimensional works of the fine, graphic, and applied arts; photographs; prints and art reproductions; maps, globes, and charts; technical drawings, diagrams, and models; and pictorial or graphic labels and advertisements.

(iv) Class SR: Sound Recordings. This class includes all published and unpublished sound recordings fixed on and after February 15, 1972. Claims to copyright in literary, dramatic, and musical works embodied in phonorecords may also be registered in this class under paragraph (b)(3) of this section if: (A) Registration is sought on the same application for both a recorded literary, dramatic, or musical work and a sound recording; (B) the recorded literary, dramatic, or musical work and the sound recording are embodied in the same phonorecord; and (C) the same claimant is seeking registration of both the recorded literary, dramatic, or musical work and the sound recording.

(v) Class SE: Serials. A serial is a work issued or intended to be issued in successive parts bearing numerical or chronological designations and intended to be continued indefinitely. This class includes periodicals; newspapers; annuals; and the journals, proceedings, transactions, etc. of societies.

(2) Application Forms. For the purpose of registration, The Register of Copyrights has prescribed the basic forms to be used for all applications submitted on and after January 1, 1978. Each form corresponds to a class set forth in paragraph (b)(1) of this section and is so designated ("Form TX"; "Form PA"; "Form VA"; "Form SR"; "Form SE"; and "Form SE/Group"). Copies of the forms are available free upon request to the Public Information Office, Library of Congress, Copyright Office, 101 Independence Avenue, S.E., Washington, DC 20559–6000. Applications should be submitted in the class most appropriate to the nature of the authorship in which copyright is claimed. In the case of contributions to collective works, applications should be submitted in the class representing the copyrightable authorship in the contribution. In the case of derivative works, applications should be submitted in the class most appropriately representing the copyrightable authorship involved in recasting, transforming, adapting, or otherwise modifying the preexisting work. In cases where a work contains elements of authorship in which copyright is claimed which fall into two or more classes, the application should be submitted in the class most appropriate to the type of authorship that predominates in the work as a whole. However, in any case where registration is sought for a work consisting of or including a sound recording in which copyright is claimed [2] the application shall be submitted on Form SR.

(3) Registration as a Single Work.

(i) For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:

(A) In the case of published works: all copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same; and

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

(B) In the case of unpublished works: all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished "collection." For these purposes, a combination of such elements shall be considered a "collection" if:

(1) The elements are assembled in an orderly form;

(2) the combined elements bear a single title identifying the collection as a whole;

(3) the copyright claimant in all of the elements, and in the collection as a whole, is the same; and

(4) all of the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element.

Registration of an unpublished "collection" extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection.

(ii) In the case of applications for registration made under paragraphs (b)(3) through (b)(8) of this section, the "year in which creation of this work was completed", as called for by the application, means the latest year in which the creation of any copyrightable element was completed.

(4) Group registration of related works: Automated databases.

(i) Pursuant to the authority granted by section 408(c)(1) of Title 17 of the United States Code, the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for automated databases and their updates or other derivative versions that are original works of authorship, if, where a database (or updates or other revisions thereof), if unpublished, is (or are) fixed, or if published is (or are) published only in the form of machine-readable copies, all of the following conditions are met:

(A) All of the updates or other revisions are owned by the same copyright claimant;

(B) All of the updates or other revisions have the same general title;

(C) All of the updates or other revisions are similar in their general content, including their subject;

(D) All of the updates or other revisions are similar in their organization;

(E) Each of the updates or other revisions as a whole, if published before March 1, 1989, bears a statutory copyright notice as first published and the name of the owner of copyright in each work (or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner) was the same in each notice;

(F) Each of the updates or other revisions if published was first published, or if unpublished was first created, within a three-month period in a single calendar year; and

(G) The deposit accompanying the application complies with § 202.20(c)(2)(vii)(D).

(ii) A single registration may be made on one application for both a database published on a single date, or if unpublished, created on a single date, and also for its copyrightable revisions, including updates covering a three-month period in a single calendar year. An application for group registration of automated databases under section 408(c)(1) of Title 17 and this subsection shall consist of:

(A) A Form TX, completed in accordance with the basic instructions on the form and the Special Instructions for Group Registration of an Automated Database and its Updates or Revisions;

(B) The appropriate filing fee, as required in § 201.3(c); and

(C) The deposit required by 202.20(c)(2)(vii)(D).

(5) Group registration of related serials.

(i) Pursuant to the authority granted by section 408(c)(1) of title 17 of the United States Code, the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for a group of serials published at intervals of a week or longer if all the following conditions are met:

(A) The Library of Congress receives two complimentary copies promptly after publication of each issue of the serial.

(B) The single application covers no more than the issues published in a given three month period.

(C) The claim to copyright for which registration is sought is in the collective work.

(D) The collective work authorship is essentially new material that is being published for the first time.

(E) The collective work is a work made for hire.

(F) The author(s) and claimant(s) of the collective work is the same person(s) or organization(s).

(G) Each issue must have been created no more than one year prior to publication and all issues included in the group registration must have been published in the same calendar year.

(ii) To be eligible for group registration of serials, publishers must submit a letter affirming that two complimentary subscriptions to the particular serial have been entered for the Library of Congress. The letter should be sent to Library of Congress, Group Periodicals Registration, Washington, D.C. 20540–4161.

(iii) The complimentary subscription copies must be addressed to: Group Periodicals Registration, Library of Congress, Washington, DC 20540–4161.

(iv) The Register of Copyrights may revoke the privilege of group registration of serials for any publisher who fails to submit the required complimentary subscription copies promptly after publication of each issue. Notice of revocation of the group registration of serials privilege shall be given in writing and shall be sent to the individual person or organization applying for group registration of serials, at the last address shown in the records of the Copyright Office. A notice of revocation may be given at any time if the requirements of the regulation are not satisfied, but it shall state a specific date of revocation that is at least 30 days later than the date the notice is mailed.

(v) To apply for group registration of serials under section 408(c)(1) of title 17 and this subsection, the following items must be sent together in the same package:

(A) A completed Form SE/Group, giving the requested information.

(B) The appropriate filing fee, as required in § 201.3(c), for each issue covered by the group registration.

(C) A deposit consisting of one complete copy of the best edition of each issue included in the group registration.

(6) Group registration of daily newspapers.

(i) Pursuant to the authority granted by 17 U.S.C. 408(c)(1), the Register of Copyrights has determined that, on the basis of a single application, microfilm deposit, and filing fee, a single registration may be made for a group of daily newspapers published in a microfilm format if the following conditions are met:

(A) Registration covers a full month of issues of the same newspaper title published with issue dates in one calendar month.

(B) A completed GDN application form is submitted.

(C) A publication date is specified designating the first and last day that issues in the group were published.

(D) A deposit is made of positive, 35mm silver halide microfilm meeting the Library's best edition criteria that includes all issues published as final editions in the designated calendar month. In addition to the final edition of the daily newspaper, the claim to copyright and the deposit may also include earlier editions published the same day in a given metropolitan area served by the newspaper, but may not include national or regional editions distributed beyond a given metropolitan area.

(E) The appropriate filing fee, as required in § 201.3(c), is included with the submission or charged to an active deposit account.

(F) Registration is sought within three months after the publication date of the last issue included in the group.

(ii) As used in this regulation, newspapers means serials which are classified as newspapers under the policy document "Newspapers Received Currently in the Library of Congress," which is administered by the Newspaper Section of the Serials & Government Publications Division of the Library of Congress. In general, serials classified as newspapers are serials mainly designed to be a primary source of written information on current events, either local, national, or international in scope. A newspaper contains a broad range of news on all subjects and activities and is not limited to any specific subject matter. Newspapers are intended either for the general public or for a particular ethnic, cultural, or national group.

(7) Group Registration of Contributions to Periodicals.

(i) As provided by section 408(c)(2) of Title 17 of the United States Code, as amended by Pub.L. 94–553, a single registration, on the basis of a single application, deposit, and registration fee, may be made for a group of works if all of the following conditions are met:

(A) All of the works are by the same author;

(B) The author of each work is an individual, and not an employer or other person for whom the work was made for hire;

(C) Each of the works was first published as a contribution to a periodical (including newspapers) within a twelve-month period; [3]

(D) Each of the works, if first published before March 1, 1989, bore a separate copyright notice, and the name of the owner of copyright in each work (or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner) was the same in each notice; and

(E) The deposit accompanying the application must consist of one of the following: one copy of the entire issue of the periodical, or, in the case of a newspaper, the entire section containing the contribution; tear sheets or proof copies of the contribution; a photocopy of the contribution itself, or a photocopy of the entire page containing the contribution; the entire page containing the contribution cut or torn from the collective work; the contribution cut or torn from the collective work; or photographs or photographic slides of the contribution or entire page containing the contribution as long as all contents of the contribution to be registered are clear and legible.

(ii) An application for group registration under section 408(c)(2) of Title 17 and paragraph (b)(7) of this section shall consist of:

(A) A basic application for registration on Form TX, Form PA, or Form VA,[4] which shall contain the information required by the form and its accompanying instructions;

(B) An adjunct form prescribed by the Copyright Office and designated "Adjunct Application for Copyright Registration for a Group of Contributions to Periodicals (Form GR/CP)", which shall contain the information required by the form and its accompanying instructions; and

(C) The appropriate filing fee, as required in § 201.3(c), and the deposit required by paragraph (b)(7)(i)(E) of this section.

(8) Group registration of daily newsletters. Pursuant to the authority granted by 17 U.S.C. 408(c)(1), the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for a group of two or more issues of a daily newsletter if the following conditions are met:

(i) As used in this regulation, daily newsletter means a serial published and distributed by mail or electronic media (online or telefacsimile), or in any medium including but not limited to, paper, cassette tape, diskette or CD–ROM. Publication must occur on at least two days each week and the newsletter must contain news or information of interest chiefly to a special group (for example, trade and professional associations, corporate in-house groups, schools, colleges, or churches).

(ii) The works must be essentially all new collective works or all new issues that have not been published before.

(iii) Each issue must be a work made for hire.

(iv) The author(s) and claimant(s) must be the same person(s) or organization(s) for all of the issues.

(v) All the items in the group must bear issue dates within a single calendar month under the same continuing title.

(vi) Deposit.

(A) The deposit for newsletters registered under this section is one complete copy of each issue included in the group.

(B) In addition, if requested in writing by the Copyright Acquisitions Division before an application for registration is submitted, the claimant must give the Library of Congress whichever of the following the Library prefers: either as many as two complimentary subscriptions of the newsletter in the edition most suitable to the Library's needs, or a single positive, 35 mm silver halide microfilm meeting the Library's best edition criteria that includes all issues published as final editions in the designated calendar month. Subscription copies must be delivered to the separate address specified by the Copyright Acquisitions Division in its request. Subscription copies or a microfilm are not required unless expressly requested by the Copyright Acquisitions Division.

(C) The copyright owner of any newsletter that cannot meet the criteria set out in this section may continue to register on Form SE or Short Form SE.

(vii) Registration is sought within three months after the publication date of the last issue included in the group.

(viii) A Form G/DN shall be submitted for daily newsletters bearing issue dates within a single month, together with one copy of each issue, and a filing fee. The application shall designate the first and last day that issues in the group were published.

(9) Group registration of published photographs. Pursuant to the authority granted by 17 U.S.C. 408(c)(1), the Register of Copyrights will accept a single application (on Form VA), deposit and filing fee for registration of a group of photographs if the following conditions are met:

(i) The copyright claimant in all of the photographs must be the same.

(ii) The photographer who photographed each of the photographs submitted for registration as part of the group must be the same person.

(iii) The photographs in the group must have been published within the same calendar year.

(iv) If the photographs in a group were all published on the same date, the date of publication must be identified in space 3b of the application. If the photographs in a group were not all published on the same date, the range of dates of publication (e.g., January 1–December 31, 2001) must be provided in space 3b of the application, and the date of publication of each photograph within the group must be identified either on the deposited image or on a continuation sheet, in such a manner that for each photograph in the group, the date of publication can be identified. A special continuation sheet for registration of a group of photographs shall be made available by the Copyright Office.

(v) If each photograph within the group was first published within three months before the date on which an acceptable application, an acceptable deposit, and the applicable fee are received in the Copyright Office, the applicant may, in lieu of the procedure set forth in paragraph (b)(9)(iv) of this section, simply state the range of dates of publication (e.g., February 15–May 15, 2001) in space 3b of the application, without specifically identifying the date of publication of each photograph in the group either on the deposited image or on a continuation sheet.

(vi) The deposit(s) and application must be accompanied by the fee set forth in § 201.3(c) of this chapter for a basic registration.

(vii) The applicant must state "Group Registration/Photos" and state the approximate number of photographs included in the group in space 1 of the application Form VA under the heading "Previous or Alternative Titles" (e.g., "Group Registration/Photos; app. 450 photographs").

(viii) If the photographs in the group are works made for hire, the applicant must note, as part of the applicant's entry in space 2 of the application Form VA for "Name of Author," both the name of the employer for hire and the name of the photographer who photographed the works in the group (e.g., "XYZ Corporation, employer for hire of John Doe").

(ix) As an alternative to the best edition of the work, one copy of each photograph shall be submitted in one of the formats set forth in § 202.20(c)(2)(xx).

(10) One registration per work. As a general rule only one copyright registration can be made for the same version of a particular work. However:

(i) Where a work has been registered as unpublished, another registration may be made for the first published edition of the work, even if it does not represent a new version;

(ii) Where someone other than the author is identified as copyright claimant in a registration, another registration for the same version may be made by the author in his or her own name as copyright claimant; [5]

(iii) Where an applicant for registration alleges that an earlier registration for the same version is unauthorized and legally invalid, a registration may be made by that applicant; and

(iv) Supplementary registrations may be made, under the conditions of § 201.5 of these regulations, to correct or amplify the information in a registration made under this section.

(c) Application for Registration.

(1) An application for copyright registration may be submitted by any author or other copyright claimant of a work, or the owner of any exclusive right in a work, or the duly authorized agent of any such author, other claimant, or owner.

(2) An application for copyright registration shall be submitted on the appropriate form prescribed by the Register of Copyrights under paragraph (b) of this section, and shall be accompanied by the appropriate filing fee, as required in § 201.3(c), and the deposit required under 17 U.S.C. 408 and § 202.20 of these regulations. [6] The application shall contain the information required by the form and its accompanying instructions, and shall include a certification. The certification shall consist of:

(i) A designation of whether the applicant is the author of, or other copyright claimant or owner of exclusive rights in, the work, or the duly authorized agent of such author, other claimant, or owner (whose identity shall also be given);

(ii) the handwritten signature of such author, other claimant, owner, or agent, accompanied by the typed or printed name of that person;

(iii) a declaration that the statements made in the application are correct to the best of that person's knowledge; and

(iv) the date of certification.

An application for registration of a published work will not be accepted if the date of certification is earlier than the date of publication given in the application.

(Authority: Pub.L. 94–553; secs. 408, 409, 410, 702)

**Credits**

[43 FR 966, Jan. 5, 1978; 54 FR 13181, March 31, 1989; 54 FR 21059, May 16, 1989; 55 FR 50557, Dec. 7, 1990; 56 FR 7813, 7815, Feb. 26, 1991; 56 FR 27197, June 13, 1991; 56 FR 59885, Nov. 26, 1991; 56 FR 65190, 65191, Dec. 16, 1991; 57 FR 39616, Sept. 1, 1992; 58 FR 17778, April 6, 1993; 60 FR 15875, March 28, 1995; 60 FR 34168, June 30, 1995; 62 FR 35421, July 1, 1997; 62 FR 63657, Dec. 2, 1997; 62 FR 66822, Dec. 22, 1997; 64 FR 29522, 29523, June 1, 1999; 64 FR 36575, July 7, 1999; 65 FR 39819, June 28, 2000; 66 FR 34373, June 28, 2001; 66 FR 37149, July 17, 2001; 67 FR 10329, March 7, 2002]

SOURCE: 24 FR 4956, June 18, 1959; 50 FR 30172, July 24, 1985; 51 FR 6403, Feb. 24, 1986; 56 FR 7813, 7815, Feb. 26, 1991; 59 FR 23981, May 9, 1994; 60 FR 34168, June 30, 1995; 60 FR 50422, Sept. 29, 1995; 66 FR 37149, July 17, 2001, unless otherwise noted.

AUTHORITY: 17 U.S.C. 408, 702.

## Footnotes

1   This category includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration.

2   A sound recording does not include the sounds accompanying a motion picture or other audiovisual work (17 U.S.C. 101). For this purpose, "accompanying" does not require physical integration in the same copy. Accordingly, registration may be made for a motion picture or audiovisual kit in Class PA and that registration will cover the sounds embodied in the "sound track" of the motion picture or on disks, tapes, or the like included in the kit. Separate application in Class SR is not appropriate for these elements.

3   This does not require that each of the works must have been first published during the same calendar year; it does require that, to be grouped in a single application, the earliest and latest contributions must not have been first published more than twelve months apart.

4   The basic application should be filed in the class appropriate to the nature of authorship in the majority of the contributions. However, if any of the contributions consists preponderantly of nondramatic literary material that is in the English language, the basic application for the entire group should be submitted on Form TX.

5   An author includes an employer or other person for whom a work is "made for hire" under 17 U.S.C. 101. This paragraph does not permit an employee or other person working "for hire" under that section to make a later registration in his or her own name. In the case of authors of a joint work, this paragraph does permit a later registration by one author in his or her own name as copyright claimant, where an earlier registration identifies only another author as claimant.

6    In the case of applications for group registration of newspapers, contributions to periodicals, and newsletters, under paragraphs (b)(6), (b)(7), and (b)(8) of this section, the deposits shall comply with the deposits specified in the respective paragraphs, and the fees with those specified in § 201.3.

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.