UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDMOND GRANT P/K/A "EDDY GRANT", GREENHEART MUSIC LIMITED, a United Kingdom Limited Company, and GREENHEART MUSIC LIMITED, an Antigua and Barbuda Limited Company, | Civil Action No. 1:20-cv-07103-JGK |

                          Plaintiffs,

      – against –

DONALD J. TRUMP and DONALD J. TRUMP FOR PRESIDENT, INC.,

                        Defendants.

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

   I.   LONDON RECORDS PROPERLY REGISTERED THE COPYRIGHT FOR THE SOUND RECORDING ....................................................................................................... 2

  II.  REGISTRATION OF THE ALBUM INCLUDED REGISTRATION OF THE SOUND RECORDING AS A CONSTITUENT WORK ................................................................... 4

CONCLUSION ...................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

***Cases***

*Bartok v. Boosey & Hawkes, Inc.,*
 523 F.2d 941 (2d Cir. 1975)............................................................................... 9

*McLaren v. Chico's FAS, Inc.,*
 2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010) ...................................................... 6

*Morris v. Business Concepts, Inc.,*
 283 F.3d 502 (2d Cir. 2002)..................................................................... *passim*

*National Broadcasting Co. v. Copyright Royalty Tribunal,*
 848 F.2d 1289 (D.C.Cir.1988) ........................................................................... 3

*Olander Enterprises, Inc. v. Spencer Gifts, LLC*,
 812 F.Supp.2d 1070 (C.D.Ca 2011) ................................................................... 6

*Peter Pan Fabrics Inc. v. Lida Fabrics Inc.*,
 1992 WL 131609 (S.D.N.Y. June 4, 1992)......................................................... 3

*Streetwise Maps, Inc. v. VanDam, Inc.*,
 159 F.3d 739 (2d Cir. 1998)...................................................................... 4, 6, 7

*Woods v. Universal City Studios, Inc.*,
 920 F.Supp. 62 (S.D.N.Y. 1996)............................................................. *passim*

***Rules***

17 U.S.C.A. § 101 ........................................................................................... 4, 6

17 U.S.C.A. § 201 ............................................................................................... 3

17 U.S.C.A. § 408............................................................................................ 2, 3

37 C.F.R § 202.3 ................................................................................................. 5

***Other Authorities***

2 Nimmer of Copyright § 7.16[B][5][c]
 (Matthew Bender Rev. Ed. 2021)....................................................................... 8

Plaintiffs Edmond Grant ("Grant"), Greenheart Music Limited, a United Kingdom Limited Company ("Greenheart UK") and Greenheart Music Limited, an Antigua and Barbuda Limited Company ("Greenheart Antigua," and together with Greenheart UK and Grant, "Plaintiffs"), by their attorneys Reitler Kailas & Rosenblatt LLP, respectfully submit this Supplemental Memorandum of Law in response to the Court's Order dated August 9, 2024 (the "Order").

## PRELIMINARY STATEMENT

This copyright infringement action relates to Defendants' Donald J. Trump ("Trump") and Donald J. Trump for President, Inc. (the "Campaign," and together with Trump, "Defendants") willful and unauthorized taking of the musical composition (the "Composition") and sound recording (the "Sound Recording") of Plaintiffs' works entitled "Electric Avenue."  The Court's Order requested that Plaintiffs advise the Court as to "(a) whether, by the terms of the May 3, 2001 Agreement (the "Agreement")  or otherwise, London Records owned all of the rights in the sound recording of "Electric Avenue" such that London Records could have registered the copyright for the sound recording "Electric Avenue," and (b) whether the subsequent copyright registration of the collective work also included the copyright registration for the sound recording of "Electric Avenue."

Plaintiff answers both questions in the affirmative.  As discussed herein, the Agreement granted London Records the exclusive license to "exploit" Electric Avenue in the World (excluding only the United Kingdom and Ireland, Africa and the Caribbean) and thus register the Sound Recording in the United States.  Furthermore, based on well settled Second Circuit precedent, the SR Registration dated March 22, 2002, of the album "Eddy Grant: the greatest hits" (the "Album"), as a collective work, included the registration for the Sound Recording as a

constituent part of the Album because London Records had the exclusive rights to all constituent parts of the Album. *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002).

## ARGUMENT

### I.    LONDON RECORDS PROPERLY REGISTERED THE COPYRIGHT FOR THE SOUND RECORDING

The Copyright Act states that "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim." 17 U.S.C.A. § 408.

Grant wrote, recorded, and produced the song "Electric Avenue" in or about 1982 and first released Electric Avenue in 1983. Declaration of Edmond Grant dated September 15, 2023, ECF Doc. No. 107 ("Grant Decl."), at ¶2. In or about 1983 Grant assigned all of his rights and interests in Electric Avenue to Greenheart Antigua. *Id.* at ¶4. Greenheart UK was formed in 1997 to act as the licensing arm of Greenheart Antigua. *Id.* Grant is the sole owner of both Greenheart UK and Greenheart Antigua. *Id.* at ¶¶1-2.

On May 3, 2001, Greenheart UK entered into the Agreement with Warner Music UK Limited ("Warner Music"). *Id.* Exhibit 4. The Agreement concerned the delivery by Plaintiffs to Warner Music of 16 recordings (the "Recordings"), including the Sound Recording, that were to be released on the Album, which was a compilation album. *Id.* Exhibit 4 at page 1 and Schedule B (track listing 15). The Agreement provided Warner Music a license for a territory including the United States for a period of five (5) years (the "Rights Period"). *Id.* Exhibit 4 at ¶1(b) and Schedule A (definition of "Territory").

With respect to specific rights in the Recordings, including the Sound Recording, the Agreement stated that "[Greenheart UK] agree that [Warner Music] shall be exclusively entitled to exploit and publicly perform the Recordings in the form of the Compilation and the Singles only (subject to the terms hereof) for the Rights Period throughout the Territory subject to the consents

2

and approvals required pursuant to the terms hereof to you  in consideration of the advance and royalties payable hereunder." *Id.* Exhibit 4 at ¶1(f).  In 2001, during the term of the Agreement, London Records, Warner Music's affiliate, released the Recordings on the Album.  *Id*. Exhibit 3.

By the terms of the Agreement and in accordance with Section 408 of the Copyright Act, Warner Music owned exclusive rights in the Sound Recording such that it could have  registered (and was authorized to do so) the copyright for the Sound Recording.  Section 408(a) provides that "the owner of copyright *or of any exclusive right in the work* may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. Such registration is not a condition of copyright protection." (emphasis added).

While the Order asks Plaintiffs whether "London Records owned <u>all</u> of the rights in the [S]ound [R]ecording" (emphasis in Order), the Copyright Act for purposes of registration focuses on *any* right in a recording, so long as that right is *exclusive*, which it was in this case as Warner Music, and its subsidiary London Records, had the exclusive right under the Agreement to exploit the Sound Recording.  The Agreement is in line with objective of the Copyright Act, which "provides for the divisibility of copyright rights and allows for the alienation of specific strands within the bundle of copyright rights." *Peter Pan Fabrics Inc. v. Lida Fabrics Inc.*, 1992 WL 131609, at *2 (S.D.N.Y. June 4, 1992) (citing 3 Nimmer on Copyright § 10.02[A]).  Indeed, Section 201 states that ownership of a copyright "may be transferred in whole *or in part* by any means of conveyance or by operation of law" and that "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title."  17 U.S.C.A. § 201 (emphasis added); *see also National Broadcasting Co. v. Copyright Royalty Tribunal,* 848 F.2d 1289, 1293 (D.C.Cir.1988) ("The

Copyright Act aids commercial exploitation of copyrights by allowing the sale of particular rights . . . or of the entire bundle.").

Therefore, London Records owned exclusive rights such that it could properly register the copyright for the sound recording Electric Avenue.

## II.     REGISTRATION OF THE ALBUM INCLUDED REGISTRATION OF THE SOUND RECORDING AS A CONSTITUENT WORK

Plaintiffs own a valid copyright registration in the Sound Recording because the Sound Recording is included in the registration of a collective work, the Album, and Plaintiffs are owners of both the Album and the Sound Recording.  On March 22, 2002, London Records registered the Album containing the Sound Recording in the Copyright Office under registration number SR0000344006.  Grant Decl. Exhibit 3 and Exhibit 4 at Schedule B, track listing 15.  The Agreement expired by its terms no later than September 20, 2006, at which point the exclusive rights in the Album, including the Sound Recording, and ownership of the SR copyright registration, reverted to Greenheart UK.  *Id.* at Exhibit 4 and ¶7.

The Album is a compilation, a collective work,[1] and the Sound Recording is a constituent part of the collection.  As Plaintiffs' motion for summary judgment describes in detail, when a claimant seeks to register multiple constituent works as part of a collection, the Second Circuit has held that where "all rights [in the constituent work] have been transferred to the claimant, then the constituent work is included in the registration of the collective work."  *Morris*, 283 F.3d at 505. This is the law even where the registration relates to pre-existing works.  *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) ("That plaintiff need not produce a separate

---

[1] A collective work is a compilation, by statutory definition. 17 U.S.C. § 101, definition of "compilation" ("The term 'compilation' includes collective works").

registration relating to the pre-existing work is a proposition which finds support in other courts and in the writings of scholarly commentators."); *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 64 (S.D.N.Y. 1996) ("where the owner of the copyright for a collective work also owns the copyrights for its constituent parts, ***registration of the collective work satisfies the requirements of Section 411(a) for purposes of bringing an action for infringement of any of the constituent parts***")(emphasis added).

Further, Plaintiffs' SR Registration complies with the codification of the federal government's rules and regulations concerning the Copyright Office and its procedures, namely the "conditions for the registration of copyright." 37 C.F.R. § 202.3(a)(1).[2] Under this regulation, a single work registration of a collective work is appropriate "[i]n the case of published works," for "all copyright elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same." 37 C.F.R § 202.3(B)(3)(i)(A). There is no dispute that the works comprising the Album were published works, and as described in Section I herein, the "elements," *i.e.*, the songs comprising the Album, were self-contained works, the Album was a single unit of publication, and Warner Music was the owner of both the Sound Recording and the Album when the registration was made. The plain

---

[2] For avoidance of doubt, Plaintiffs refer to the code of federal regulations in effect at the time of the SR Registration and attached as Exhibit A to Defendants' reply memorandum in support of summary judgment (ECF Doc. No. 124). Plaintiffs agree that the current iteration of the regulation, 37 C.F.R. § 202.3(b)(4), now refers to "one work" as opposed to "single work," but does not change the substance of the regulation for the purposes of Plaintiffs' argument.

language of the regulation refers to a "single unit of publication," not a "single unit of *initial* publication."[3]

Defendants' reply in support of their motion for summary judgment attempts to distinguish *Morris*, *Streetwise*, and *Woods* by drawing an artificial distinction between a collective work and a derivative work.[4]  However, the court in *Morris* made no such distinction; the court simply held that "unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part."  283 F.3d at 506.  However, Plaintiffs have demonstrated unequivocally that they are the copyright owner of the Album, a

---

[3] The holding in *McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *1 (S.D.N.Y. Nov. 9, 2010), on which Defendants rely, contradicts the plain language of the code and the Copyright Act, neither of which require previously published works to have been "first published together" to qualify for a single work registration.  The clause "first published together" does not appear in the Copyright Act, and thus the decision in *McLaren*, which contradicts the Second Circuit's holdings in *Morris* and *Streetwise*, should be disregarded.  *Olander Enterprises, Inc. v. Spencer Gifts, LLC*, 812 F.Supp.2d 1070 (C.D.Ca 2011), suffers from the same fatal flaw as *McLaren*, and is out of circuit. Neither case can control over existing Second Circuit authority.

[4] A "derivative work" is defined in the Copyright Act as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship . . . ."  17 U.S.C.A. § 101.

collective work, and the Sound Recording, a constituent part of the Album. Based on the plain language in *Morris*, the registration of the Album included the Sound Recording.

Moreover, *Woods* completely defeats Defendants' argument because the court in *Woods* dealt specifically with a collective work. 920 F. Supp. at 64 ("the color version of "(Upper) Chamber" appeared in The New City, a **collection of illustrations** by Woods."). Defendants also misstate that the court in *Woods* did not address the issue of publication, which is belied by the very same language in the opinion that Defendants quote: "Wood's submissions show that he owns the copyright in the earlier ***published*** '(Upper) Chamber.'" *Id.* (emphasis added).[5]

Defendants' further reliance on an example outlined in *Nimmer* contradicts their argument. The passage Defendants quote addresses a "more straightforward application of the same principle," but fails to identify the principle itself. *Nimmer* clearly articulates that principle, which is that when "the copyright owner of the derivative ***or collective work*** is not merely a licensee of the pre-existing work, but is itself also the copyright owner thereof, . . . the registration solely of the derivative ***or collective work*** [i]s sufficient to permit maintenance of an infringement action. . . ." 2 Nimmer of Copyright § 7.16[B][5][c] (Matthew Bender Rev. Ed. 2021) (emphasis added). This principle is followed in both *Morris* and *Streetwise*, and is supported by the facts

---

[5] Defendants' desperate attempt to distinguish *Woods* is further undermined by their assertion (ECF 124 at 4) that it is "not clear" whether the court's reference to the "earlier published" version of the plaintiff's work means the original black and white drawing or the later color version. Respectfully, there are two versions of the work at issue in *Woods*, published at different times. The court's reference to the "earlier published" version can only be read as referring to the one that was published earlier.

here because, as discussed in Section I, Warner Music owned exclusive rights in the Sound Recording such that it could have registered the copyright for the Sound Recording along with the Album, and Warner Music's rights reverted to Plaintiffs upon the expiration of the Agreement.[6]

Further, Defendants' argument that the SR Registration disclaims "preexisting" recordings from the registration is demonstrably false. Nowhere on the face of the registration are "preexisting" recordings disclaimed; the word "disclaimed" does not even appear on the SR Registration. Grant Decl. Exhibit 3. The registration plainly states that the authorship on the applications is based on a "compilation of recordings" and "artwork" from the Album and that Greenheart Music. Ltd. was the "employer for hire." The registration provides notice of "Recordings preexisting" and sets forth the basis of the "New Matter: compilation of recordings, remixed sounds, & photography." *Id.*

Finally, Defendants ignore Plaintiffs' arguments with respect to the administrative policies of the Copyright Office, including the *Compendium*, which plainly acknowledges that "[t]he policies and practices set forth in the Compendium do not in themselves have the force and effect

---

[6] On the other hand, the example quoted by Defendants deals with an entirely different scenario where the "registration for a collective work consisting of multiple components deals not with the pre-existing components, but with wholly original material." 2 Nimmer of Copyright § 7.16[B][5][c] (Matthew Bender Rev. Ed. 2021). The SR Registration makes clear that the registration at issue here concerns preexisting recordings, not all new original material. But in any event, *Nimmer* makes clear that both fact patterns are governed by the same "principle," *i.e.* that a single registration protects both a collective work and its component parts where the same party owns exclusive rights in both, as the Second Circuit held in *Morris*.

of law and are not binding upon the Register of Copyrights or Copyright Office staff." Moreover, the Second Circuit has held, "the Copyright Office has no authority to give opinions or define legal terms," *Bartok v. Boosey & Hawkes, Inc.,* 523 F.2d 941, 946–47 (2d Cir. 1975) .

However, even if the Sound Recording is not a constituent work or not covered by the registration of the Album, Plaintiffs have applied for a separate registration for Electric Avenue, which the court in *Woods* recognized can moot any potential issue with respect to registration in an infringement action. 920 F. Supp. at 64. Plaintiffs have opened Case Number 1-14154331891, for a sound recording registration of "Electric Avenue," and as of the filing date of this memorandum, received confirmation from the Copyright Office that Plaintiffs' "Claim submission [is] completed; no further action required." Declaration of Brett Van Benthysen dated August 16, 2024 at ¶2. Plaintiffs have requested expedited handling of the application and expect to have the registration number available for the Court before the scheduled oral argument.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs Motion for Summary Judgment should be granted and Defendants' Motion for Summary Judgment should be denied.

Dated: August 16, 2024

Respectfully submitted,

By: *s/ Brett Van Benthysen*
    Brian D. Caplan
    Robert W. Clarida
    Brett Van Benthysen
    Reitler Kailas & Rosenblatt LLP
    885 Third Avenue, 20th Floor
    New York, New York 10022
    bcaplan@reitlerlaw.com
    rclarida@reitlerlaw.com
    bvanbenthysen@reitlerlaw.com
    *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, BRETT VAN BENTHYSEN, an attorney admitted to practice in the Southern District of New York and a member of Reitler Kailas & Rosenblatt LLP, counsel for Plaintiffs herein, hereby certify that the foregoing SUPPLEMENTAL MEMORANDUM OF LAW, exclusive of the cover page, table of contents, table of authorities, and this certificate of compliance, is 2660 words and complies with the formatting rules contained in Section II.D. of the Individual Practices of Judge John G. Koeltl.

Dated: August 16, 2024

                                    *s/ Brett Van Benthysen*
                                    Brett Van Benthysen