UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

EDMOND GRANT, ET AL.,

                    Plaintiffs,          20-cv-7103 (JGK)

       - against -           OPINION AND ORDER

DONALD J. TRUMP, ET AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

The plaintiffs, Eddy Grant ("Grant"); Greenheart Music Limited, a United Kingdom Company ("Greenheart UK"); and Greenheart Music Limited, an Antigua and Barbuda Limited Company ("Greenheart Antigua") brought this copyright infringement action against former President Donald J. Trump and Donald J. Trump For President, Inc. ("the Campaign") (collectively, "the defendants") for the unauthorized use of Grant's music in an animated video created by a third party during the 2020 presidential election campaign and posted by former President Trump on his personal Twitter account ("the Video"). See ECF No. 1.

The plaintiffs assert claims for copyright infringement of the musical composition of "Electric Avenue" (Count I) and copyright infringement of the sound recording of "Electric Avenue" (Count II). See id.

In an Opinion and Order dated September 28, 2021, this Court denied the defendants' motion to dismiss. See Grant v. Trump, 563 F. Supp. 3d 278 (S.D.N.Y. 2021).

The parties have now filed cross-motions for partial summary judgment. The defendants move for summary judgment dismissing Count II of the complaint on the grounds that the plaintiffs lack a valid copyright registration for the sound recording of "Electric Avenue." See Defs.' Mot., ECF No. 100. The plaintiffs move for summary judgment on the issue of liability. See Pls.' Mot., ECF No. 105. The Court heard oral argument on the motion on September 6, 2024.

For the reasons explained below, the defendants' motion for partial summary judgment is **denied**, and the plaintiffs' motion for partial summary judgment is **granted**.

**I.**

The following facts are based on the parties' Rule 56.1 statements, counterstatements, and supporting papers, and are undisputed unless otherwise noted. The Court also assumes familiarity with the Court's prior decision denying the defendants' motion to dismiss, including the extensive description of the facts of this case. See Grant, 563 F. Supp. 3d at 282-83.

**A.**

Plaintiff Grant is the sole owner of Greenheart Antigua and Greenheart UK, the licensing arm of Greenheart Antigua. <u>See</u> Defs.' Resp. to Pls.' Rule 56.1 Statement, ¶¶ 6-8 ("Defs.' Resp."), ECF No. 115. Plaintiff Grant wrote, recorded, and produced the 3-minute-48-second song entitled "Electric Avenue." <u>See</u> Pls.' Resp. to Defs.' Rule 56.1 Statement ¶ 1, ECF No. 119 ("Pls.' Resp.").

In or about 1983, Grant assigned all of his rights and interests in the musical composition (the "Composition") and sound recording (the "Recording") of "Electric Avenue" to Greenheart Antigua. Defs.' Resp. ¶ 8. In February 1983, the Composition was registered in the United States Copyright Office under Registration Number PA0000164029. <u>Id.</u> ¶ 5. The song was also released to the public in the United States in or about 1983. Pls.' Resp. ¶ 4.

Pursuant to an agreement dated May 3, 2001, Greenheart UK licensed the copyright in the Recording, among other works, to Warner Music UK Limited ("Warner Music") for a territory including the United States for a period of five years from the date of the first release of the Recording in the United Kingdom. Defs.' Resp. ¶ 11; <u>see also</u> Van Benthysen Decl., Ex. 4,

ECF No. 103-3 ("Agreement"). The sound recording of Electric
Avenue was among the Recordings included in a compilation
entitled "Eddy Grant: The Greatest Hits" that was covered by the
Agreement. Agreement at 1, 12. The Agreement provided, among
other things, that Warner Music was "exclusively entitled to
exploit and publicly perform the Recordings in the form of the
Compilation . . . for the Rights Period throughout the
Territory." Agreement at § 1(f). During the term of the
Agreement, on March 22, 2002, London Records, an affiliate of
Warner Music, registered the album "Eddy Grant: The Greatest
Hits" containing the Recording in the Copyright Office under
registration number SR0000344006. Defs.' Resp. ¶ 12; Pls.' Resp.
¶ 6; see also Kasner Decl., Ex. C, ECF No. 101-3
("Registration").

By September 20, 2006, the Agreement expired. Pls.' Resp. ¶
13. At that point, the copyright registration reverted back to
the plaintiffs. See id. The plaintiffs allege that Greenheart
Antigua has received considerable sums of money licensing
"Electric Avenue." Defs.' Resp. ¶¶ 13-14, 17.

**B.**

On August 12, 2020, Daniel Scavino, Director of Social
Media and Deputy Chief of Staff for Communications of the
Executive Office of the President, published a tweet to former

President Trump's Twitter account containing a 55-second video
in which the Recording, embodying the Composition, can be heard
starting at the 15-second mark and continuing for the duration
of the video. Id. ¶ 19. Scavino testified that he saw the Video
on a Trump supporter's social media page either on the same day
or the day before he posted the Tweet. Id. ¶ 20. Scavino also
testified that he spoke with former President Trump before
posting the Tweet and that former President Trump "let [him] go
with [his] instinct on it and post it." Id. Former President
Trump testified that the Video was taken from the internet and
posted on Twitter. Id. ¶ 21.

The plaintiffs allege that the Video was a campaign video
attempting to denigrate the Democratic Party's 2020 nominee,
Current President Joseph Biden. Id. ¶ 22. The Video contains an
animation of a high-speed red train bearing the words "Trump
Pence [Keep America Great] 2020," in stark contrast to a slow-
moving handcar bearing the words "Biden President: Your Hair
Smells Terrific." Id. The handcar is powered by an animated
likeness of President Biden, and excerpts of President Biden's
speeches and interviews are played over the Recording. Id.

At the time, Trump's Twitter account had nearly 100 million
followers. Id. ¶ 35. According to Twitter, the Video has been
viewed more than 13.7 million times, and the Tweet containing

5

the Video has been "liked" more than 350,000 times and re-
tweeted more than 139,000 times, and has received close to
50,000 comments. Id. ¶ 36.

### C.

By letter dated August 13, 2020, the plaintiffs, through
their counsel, demanded that the defendants cease and desist
from any further allegedly infringing conduct. Id. ¶ 37.

As of September 1, 2020, neither the Video nor the Tweet
containing the Video had been removed from Twitter. Id. ¶ 38. On
September 1, 2020, the plaintiffs filed this action. ECF No. 1.

### II.

The standard for granting summary judgment is well
established. "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."[1]
Fed. R. Civ. P. 56(a). The moving party bears the initial burden
of "informing the district court of the basis for its motion"
and identifying the materials in the record that "it believes
demonstrate the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At the
summary judgment stage, the court must resolve all ambiguities

---

[1] Unless otherwise noted, this Opinion and Order omits all alterations,
omissions, emphasis, quotation marks, and citations in quoted text.

and draw all reasonable inferences against the moving party. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The substantive law governing the case will identify those facts that are material and, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When, as in this case, both parties seek summary judgment, "the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." <u>Ramos v. N.Y.C. Dep't of Educ.</u>, 447 F. Supp. 3d 153, 155 (S.D.N.Y. 2020).

### III.

The defendants move for partial summary judgment dismissing Count II, arguing that the plaintiffs never registered the sound recording of "Electric Avenue." <u>See</u> Defs.' Mot. at 1, ECF No. 100. The plaintiffs respond that the Recording was registered when London Records registered the sound recording of the compilation entitled "Eddy Grant: The Greatest Hits" in 2002. <u>See</u> Pls.' Opp'n at 1, ECF No. 118.

In order to establish a claim of copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright

7

and (2) unauthorized copying of the copyrighted work. See Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003). In this case, there is no dispute that the defendants used "Electric Avenue" without authorization, although the defendants rely on the defense of "fair use." That defense is discussed below in connection with the plaintiffs' motion for summary judgment on liability.

However, the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with [the Copyright Act]." 17 U.S.C. § 411(a). Therefore, "without a valid copyright registration, a plaintiff cannot bring a viable copyright infringement action." Sohm v. Scholastic Inc., 959 F.3d 39, 53 (2d Cir. 2020), abrogated on other grounds, Warner Chappell Music, Inc. v. Nealy, 601 U.S. 366 (2024).

The question in this case is whether the registration of the album "Eddy Grant: The Greatest Hits" in 2002 also effected the registration of the sound recording of "Electric Avenue" that was contained in that album.

**A.**

Courts in this Circuit have held that the registration of a "collective" or "derivative" work[2] covers registration of the constituent parts if the registrant has copyright ownership of the constituent parts.[3]

For example, the Court of Appeals for the Second Circuit found in Morris v. Bus. Concepts, Inc. that a publisher that filed collective works copyright registrations for issues of its magazine would have thereby obtained copyright registration for a journalist's articles contained in the issues if the publisher owned the copyright for those articles. See 259 F.3d 65, 69-72 (2d Cir. 2001), as clarified on denial of reh'g, 283 F.3d 502 (2d Cir. 2002), abrogated on other grounds, Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

---

[2] "A derivative work is a work based upon one or more preexisting works, . . . in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. "A collective work is a work . . . in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." Id. "A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term compilation includes collective works." Id. The plaintiffs argue that "Eddy Grant: The Greatest Hits" is a derivative and collective work, as well as a compilation. See Pls.' Opp'n at 5-6, ECF No. 118. The defendants attempt to argue that "Eddy Grant: The Greatest Hits" is not a derivative work, but fail to provide any reasoning for this argument. See Defs.' Reply at 3-4, ECF No. 124.

[3] This principle is distinguishable from cases where the copyright owner of the collective or derivative work does not have copyright ownership over the constituent parts because the constituent parts are not copyrightable. See, e.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc., 499 U.S. 340, 363 (1991) (holding "that the names, towns, and telephone numbers copied . . . were not original to [the public utility] and therefore were not protected by the copyright in [the utility's] combined white and yellow pages directory").

And in Streetwise Maps, Inc. v. VanDam, Inc., the Court of Appeals held that a registration certificate for a derivative Streetwise Manhattan map permitted the copyright owner to maintain an action for infringement of an earlier Streetwise Manhattan map that was included in the derivative maps. 159 F.3d 739, 746-47 (2d Cir. 1998).

The Court of Appeals explained:

> because Streetwise is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work. That plaintiff need not produce a separate registration relating to the pre-existing work is a proposition which finds support in other courts and in the writings of scholarly commentators. See, e.g., Greenwich Film Prods., S.A. v. DRG Records, Inc., 833 F. Supp. 248, 251-52 (S.D.N.Y. 1993) (copyright registration of derivative work sufficient for copyright infringement action based on pre-existing work where plaintiff owned the copyrights for both the derivative and pre-existing work); 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][2] (1997) (copyright owners of derivative work that own pre-existing work should be able to pursue copyright infringement action against individuals infringing the pre-existing work, even when only derivative work [is] registered); see also Woods v. Universal City Studios, Inc., 920 F. Supp. 62, 64 (S.D.N.Y. 1996) (registration of copyright for collective work satisfies requirements of 17 U.S.C. § 411(a) to bring copyright infringement action based on constituent parts where owner of copyright for collective work also owns constituent parts).

Streetwise Maps, 159 F.3d at 747; see also Sylvestre v. Oswald, No. 91 CIV 5060, 1993 WL 179101, at *2 (S.D.N.Y. May 18, 1993)

10

(finding that the registration of a fifteen-song cassette tape established a valid registration for a song contained in the cassette).

Nimmer on Copyright, an authoritative treatise on copyrights, also supports the conclusion that a valid registration for a collection is a sufficient registration for a constituent part so long as the copyright holder for the collection also holds the copyright for the constituent part at issue:

> [If] the copyright owner of the derivative or collective work . . . is itself also the copyright owner [of the pre-existing work,] . . . validating the registration solely of the derivative or collective work [would seem] sufficient to permit maintenance of an infringement action [for the pre-existing work] . . . . At least one court reached that result based on the language of the 1909 Act. [See Rexnord, Inc. v. Mod. Handling Sys., Inc., 379 F. Supp. 1190 (D. Del. 1974).] Although there is no comparable language in the current Act, the same rule should be followed. As the Fourth Circuit puts it, when the same party owns the derivative or collective work plus the underlying elements incorporated therein, its registration of the former is sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting. [See Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 284 (4th Cir. 2003), abrogated on other grounds, Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010), although Nimmer notes an inconsistent footnote.] That rule is consistent moreover with the current provision [17 U.S.C. § 504(c)(1)] that, for the purpose of computing statutory damages, all the parts of a compilation or derivative work constitute one work.

2 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 7.16[B][5][c] (Matthew Bender, Rev. Ed. 2024).

In this case, London Records registered "Eddy Grant: The Greatest Hits" in 2002. See Defs.' Resp. ¶ 12; Pls.' Resp. ¶ 6; see also Registration at 1. "Eddy Grant: The Greatest Hits" undisputedly contains the sound recording of "Electric Avenue." See Agreement at 12. At the time of the registration on March 22, 2002, London Records, as an affiliate of Warner Music, was a licensee with all rights in the sound recording of "Electric Avenue." See id. at 1 ("[Greenheart UK] hereby grant[s] to [Warner Music] the license of the full copyright in the Recordings for the period of five (5) years from the date of the first release of the Single "Electric Avenue" in the UK . . . ."). The Agreement also provided that Warner Music was "exclusively entitled to exploit and publicly perform the Recordings [including Electric Avenue] in the form of the Compilation . . . for the Rights Period throughout the territory." Agreement § 1(f). Accordingly, the 2002 registration of "Eddy Grant: The Greatest Hits" also registered the sound recording of "Electric Avenue." When the Agreement expired by its terms no later than September 20, 2006, see Defs.' Resp. ¶

12

13, the copyright ownership of the Recording reverted back to the plaintiffs.

**B.**

In their papers, the defendants argued that the Registration itself did not cover "Electric Avenue."

"[I]n general, the nature of authorship defines the scope of the registration . . . ." Ward v. Barnes & Noble, Inc., 93 F. Supp. 3d 193, 204 (S.D.N.Y. 2015). "Minor mistakes in a registration statement, made in good faith and unaccompanied by deceptive intent, will not serve to invalidate registration." Greenwich Film Prods., 833 F. Supp. at 252 (citing Gund, Inc. v. Swank, Inc., 673 F.Supp. 1233, 1273 (S.D.N.Y. 1987)).

The defendants argue that the Registration does not cover the sound recording of "Electric Avenue" because the plaintiffs conceded in the "authorship" field that the Registration is for a "compilation." See Defs.' Reply at 2. However, as explained above, registration of a compilation may nevertheless be sufficient to register a constituent work.

The defendants also argue that the Registration explicitly "disclaimed" registration of certain "preexisting" recordings. See id. However, the Registration does not "disclaim" any registration. Rather, as plaintiffs' counsel explained, the Registration did not seek to register a copyright for any work

13

that was previously copyrighted and the sound recording of
Electric Avenue was not previously registered. Given the lenient
nature of the registration requirement, see Sylvestre, 1993 WL
179101, at *2, the registration should not be construed to
exclude previously published but unregistered works.

Accordingly, the registration of "Eddy Grant: The Greatest
Hits" in 2002 effected the registration of the sound recording
of "Electric Avenue" that was contained in that compilation.

### c.

The defendants argue that the registration for a collective
work does not include the registration for any previously
published part but have failed to point to any case that
supports that proposition.

The defendants cite to the Compendium and other Copyright
Office documents to argue that, for the registration of a
collective or derivative work to cover the constituent parts,
the constituent parts must have previously been unpublished at
the time of registration. See Defs.' Mot. at 9-10.

As an initial matter, Copyright Office documents are not
binding on courts but are owed deference to the extent they are
persuasive. See, e.g., EMI Christian Music Grp., Inc. v.
MP3tunes, LLC, 844 F.3d 79, 97 (2d Cir. 2016).

Courts in the Second Circuit have not interpreted copyright laws to require that constituent parts must have been unpublished at the time of the registration of the collective or derivative work. In Streetwise Maps, the constituent work—the Streetwise Manhattan map from 1984 or 1985—was clearly published before the registration of the derivative work in 1989. See 159 F.3d at 747-78. The fact that the constituent work had been published previously was irrelevant. Furthermore, in Woods, the court found that the registration of a collection was sufficient registration for a drawing that had been published previously. See 920 F. Supp. at 64.

While the Compendium does provide that "[a]n applicant may register a collective work together with the separate and independent works contained therein . . . if the component works have not been previously published," Compendium § 509.1 (regarding collective works), this provision appears to reflect only the Copyright Office's policy-based preference for separate registrations where possible. The Compendium also provides that "[i]f a collective work contains an appreciable amount of [previously published material], the applicant generally should limit the claim to the new material that the author contributed to the work and the [previously published] material should be excluded from the claim." Id. § 509.2 (emphasis added).

15

The defendants quote the Compendium to say that "a registration for a compilation does not cover any previously published material . . . ." Compendium § 508.2. However, that quote appears between citations to Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991), and the Compendium's warning that "[t]he data, facts, or other uncopyrightable material that appears in a compilation is not protected by the copyright in that work" and "that the copyright in a factual compilation is thin." Compendium § 508.2. Therefore, the reference to "previously published material" in section 508.2 of the Compendium likely refers to data or facts published in a compilation like a phonebook, where the previously published material is factual material that is not able to be copyrighted. That type of material is distinguishable from the prior recording in this case.

Accordingly, the defendants' argument that "Electric Avenue" must have been unpublished at the time of the registration of "Eddy Grant: The Greatest Hits" is not persuasive.

In short, the Agreement gave London Records the right to register the copyright on the Compilation that included the sound recording of Electric Avenue. London Records filed that registration and there is nothing in the registration or the law

16

that precluded the application of that registration to the sound recording of Electric Avenue. Therefore, the defendants' motion for summary judgment dismissing the claim for copyright infringement of the recording of Electric Avenue (Count II) is **denied.**

<strong>IV.</strong>

The plaintiffs move for partial summary judgment, finding the defendants liable for copyright infringement. They argue that the only defense to liability is fair use, and that there are no issues of material fact and that the fair use defense does not apply in this case. See Pls.' Mot. at 13-14. There is no dispute that the composition and the sound recording of the musical performance for "Electric Avenue" were used without permission and that the Composition was copyrighted. See Defs.' Opp'n at 3, 6, ECF No. 114. As discussed above, the plaintiffs also hold a valid copyright registration covering the sound recording of "Electric Avenue." The only defense that the defendants raise is that the Video's use of "Electric Avenue" was a fair use. See id. at 6. Therefore, the only bar to a finding of liability by the defendants for copyright

infringement as alleged in Counts I and II of the Complaint is the defense of fair use.

Pursuant to the Copyright Act of 1976, fair use is a complete defense to a claim of copyright infringement. See 17 U.S.C. § 107. "The fair-use doctrine seeks to strike a balance between an artist's intellectual property rights to the fruits of her own creative labor, including the right to license and develop (or refrain from licensing or developing) derivative works based on that creative labor, and the ability of other authors, artists, and the rest of us to express them—or ourselves by reference to the works of others." Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 36 (2d Cir. 2021) (quoting Blanch v. Koons, 467 F.3d 244, 250 (2d Cir. 2006)), aff'd 598 U.S. 508 (2023).

The Copyright Act provides a non-exhaustive list of four factors that courts are to consider in making a fair use determination:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "The Act's fair use provision . . . sets forth general principles, the application of which requires judicial

balancing, depending upon relevant circumstances." Andy Warhol Found., 598 U.S. at 527 (quoting Google LLC v. Oracle Am., Inc., 593 U.S. 1, 19 (2021)). "[I]n applying the fair use provision, copyright's protection may be stronger where the copyrighted material serves an artistic rather than a utilitarian function." Id.

"[F]air use is an affirmative defense, and [the defendants] bear[] the burden to justify its taking of [the plaintiff's] work . . . ." Id. at 547 n.21.

## A.

The first fair use factor concerns "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes[.]" 17 U.S.C. § 107(1).

"The central question [the first factor] asks is whether the new work merely supersedes the objects of the original creation (supplanting the original), or instead adds something new, with a further purpose or different character." Andy Warhol Found., 598 U.S. at 528 (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994)).

The "purposes" listed in the preamble paragraph of § 107— such as criticism, comment, news reporting, teaching, scholarship, or research—reflect the sorts of copying that

courts most commonly have found to be fair uses and so may guide the first fair use factor inquiry. See id. (quoting 17 U.S.C. § 107; Campbell, 510 U.S. at 577-78). These purposes ordinarily do not supersede the objects of, or supplant, the work; rather, they use the work to serve a distinct end. See id. In other words, "a use may be justified because copying is reasonably necessary to achieve the user's new purpose." Id. at 532.

The question is one of "to what extent" because many secondary works add something new. See id. at 528-29. "The larger the difference, the more likely the first factor weighs in favor of fair use." Id. at 529. "A use that has a further purpose or different character is said to be transformative[,] [and] transformativeness is a matter of degree." Id. (citing Campbell, 510 U.S. at 579).

In this case, the Video has a very low degree of "transformativeness," if any at all. As this Court found in denying the defendants' motion to dismiss, the Video "is best described as a wholesale copying of music to accompany a political campaign ad." Grant, 563 F. Supp. 3d at 285. "[T]he video's creator did not edit the song's lyrics, vocals, or instrumentals at all, and the song is immediately recognizable when it begins playing around the fifteen-second mark of the video, notwithstanding that audio of President Biden's speech

can be heard simultaneously." Id. "Moreover, the animation does not use Electric Avenue as a vehicle to deliver its satirical message, and it makes no effort to poke fun at the song or Grant." Id. "[T]he song—which plays for over two-thirds of the duration of the video—is a major component of the impression created by the animation, even though it appears that the video's creator could have chosen nearly any other music to serve the same entertaining purpose." Id. at 286. "[A]nd the defendants have offered no justification for their extensive borrowing." Id. at 285.

The defendants once again rely on Brown v. Netflix, Inc., 462 F. Supp. 3d 453 (S.D.N.Y. 2020), aff'd, 855 F. App'x 61 (2d Cir. 2021), to argue that an unaltered secondary use may nevertheless be transformative. See Defs.' Opp'n at 10. However, as this Court has already held, the use in this case "is different in magnitude and kind [from that in Brown]: the song plays for more than two-thirds of the animation and plays no discernible role in communicating the video's overarching political commentary." Grant, 563 F. Supp. 3d at 286. In Brown, "the excerpt of the song was situated within a performance about which the documentary was commenting, . . . the song could be heard only briefly and in passing[,] . . . [and] the content of

21

the song substantively contributed to the burlesque act." Id.
(citing 462 F. Supp. 3d at 458).

The defendants also argue that the Video "transformed
Grant's original conception of Electric Avenue as a protest
against social conditions into a colorful attack on the
character and personality traits of a rival political figure."
See Defs.' Opp'n at 11. Again, "the defendants' argument
misapprehends the focus of the transformative use inquiry."
Grant, 563 F. Supp. 3d at 284. "While it is true that the
animation is partisan political commentary and the song
apparently is not, the inquiry does not focus exclusively on the
character of the animation; rather, it focuses on the character
of the animation's use of Grant's song." Id. "[T]he video's
overarching political purpose does not automatically render its
use of any non-political work transformative." Id. at 285
(citing Henley v. DeVore, 733 F. Supp. 2d 1144, 1164 (C.D. Cal.
2010); Browne v. McCain, 612 F. Supp. 2d 1125, 1129-31 (C.D.
Cal. 2009)). In Andy Warhol Foundation, the Supreme Court
"rejected the idea that any secondary work that adds a new
aesthetic or new expression to its source material is
necessarily transformative." 598 U.S. at 543. To so hold "would
swallow the copyright owner's exclusive right to prepare
derivative works." Id. at 541.

22

In assessing the first fair use factor, the Court must also consider whether the allegedly infringing use is of a commercial nature. See id. at 531. Commercialism too, is not dispositive; "[t]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use[.]" Id. (quoting Campbell, 510 U.S. at 579).

The question of whether the work is commercial "is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 562 (1985); see also Andy Warhol Found., 598 U.S. at 537 (quoting Harper). "Monetary gain is not the sole criterion," especially in settings where "profit is ill-measured in dollars." Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989). In this case, the defendants benefited commercially from using Electric Avenue without paying a licensing fee.

As this Court found in deciding the motion to dismiss, "there is a well-established market for music licensing, [and] the defendants sought to gain an advantage by using Grant's popular song without paying Grant the customary licensing fee." Grant, 563 F. Supp. 3d at 287. Therefore, "the possibility of

commercial advantage [could not] be excluded at th[at] point[.]"
Id. Since then, the defendants have not presented any evidence
to suggest that the Video's use was not commercial in nature.
Rather, the defendants argue that the use of the song "did not
give the Defendants any commercial advantage" because the Video
was created by an unaffiliated third-party, and the plaintiffs
have pointed to no evidence that the Trump campaign received any
donations as a result of the Tweet containing the Video. Defs.'
Opp'n at 10-11 (distinguishing Henley). However, monetary gain,
such as campaign contributions, is not required to show that the
use was commercial. See, e.g., Weissmann, 868 F.2d at 1324
("[W]hat is valuable is recognition because it so often
influences professional advancement and academic tenure.").

The defendants also argue that the plaintiffs "have never
licensed the Song for political use, and have strongly indicated
that they have no interest of doing so in the future[.]" Defs.'
Opp'n at 11. But as the Court previously held, "[i]t is plain
that widespread, uncompensated use of Grant's music in
promotional videos—political or otherwise—would . . . undermine
Grant's ability to obtain compensation in exchange for licensing
his music." Grant, 563 F. Supp. 3d at 289.

It is surely true that the use of the copyrighted material
has fewer aspects of a "commercial nature" because it is not

used for profit, but the lack of a profit motive is insufficient
to overcome the lack of a "transformative use" for purposes of
the first fair use factor. See Hachette Book Grp., Inc. v.
Internet Archive, No. 23-1260, 2024 WL 4031751, at *12 (2d Cir.
Sept. 4, 2024) (transformativeness remains the 'central' focus
of the first factor").

Accordingly, the first fair use factor favors the
plaintiffs.

**B.**

The second fair use factor "directs courts to consider the
nature of the copyrighted work, including (1) whether it is
expressive or creative or more factual, with a greater leeway
being allowed to a claim of fair use where the work is factual
or informational, and (2) whether the work is published or
unpublished, with the scope of fair use involving unpublished
works being considerably narrower." Andy Warhol Found., 11 F.4th
at 45 (quoting Blanch, 467 F.3d at 256).

As the Court previously found, "[a]s to the first
consideration, it is clear that Electric Avenue is a creative
work and therefore is closer to the core of intended copyright
protection." Grant, 563 F. Supp. 3d at 287-88 (citing Campbell,
510 U.S. at 586; Henley, 733 F. Supp. 2d at 1160). The
defendants "concede that [Electric Avenue] is a creative and

published work, and therefore the second fair use factor favors Plaintiffs." Defs.' Opp'n at 14.

Accordingly, the second factor, although "assigned limited weight in the overall fair use determination[,]" Grant, 563 F. Supp. 3d at 288 (citing Authors Guild v. Google, Inc., 804 F.3d 202, 220 (2d Cir. 2015)), favors the plaintiffs.

## C.

The third fair use factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). "In assessing this factor, [the court] consider[s] not only the quantity of the materials used but also their quality and importance in relation to the original work." Andy Warhol Found., 11 F.4th at 45–46 (quoting Campbell, 510 U.S. at 587).

As this Court found in its decision denying the defendants' motion to dismiss, "[t]he song plays for the majority of the animation; the excerpt is of central importance to the original work; and the defendants have not articulated any purpose for the copying." Grant, 563 F. Supp. 3d at 288. The defendants "likewise concede that because the length of the excerpted portion of [Electric Avenue] and the percentage of time that it takes up in the Video are undisputed, there is no issue of

material fact as to [the third fair use factor]." Defs.' Opp'n
at 14.

Accordingly, this factor also favors the plaintiffs.

**D.**

The fourth and final fair use factor asks "whether, if the
challenged use becomes widespread, it will adversely affect the
potential market for the copyrighted work. Analysis of this
factor requires [the court] to balance the benefit the public
will derive if the use is permitted and the personal gain the
copyright owner will receive if the use is denied." Andy Warhol
Found., 11 F.4th at 48 (quoting Bill Graham Archives v. Dorling
Kindersley Ltd., 448 F.3d 605, 613 (2d Cir. 2006); Wright v.
Warner Books, Inc., 953 F.2d 731, 739 (2d Cir. 1991)). "This
analysis embraces both the primary market for the work and any
derivative markets that exist or that its author might
reasonably license others to develop, regardless of whether the
particular author claiming infringement has elected to develop
such markets." Id. (citing Salinger v. Colting, 607 F.3d 68, 74,
83 (2d Cir. 2010)). In other words, the issue "is not solely
whether the secondary work harms an existing market for the
specific work alleged to have been infringed. Rather, [the
court] must also consider whether unrestricted and widespread
conduct of the sort engaged in by [the defendants] would result

in a substantially adverse impact on the potential market[.]"
Id. at 49 (citing Campbell, 510 U.S. at 590).

In this case, there is no public benefit as a result of the
defendants' use of "Electric Avenue." As the plaintiffs
correctly argue, the defendants "could have used any song,
created a new song, or used no song at all, to convey the same
political message in the Infringing Video." Pls.' Reply at 5,
ECF No. 121. And as the Court previously found, while "political
speech . . . is a rich part of our First Amendment tradition[,]
. . . denying the defendants' fair use defense in this case . .
. will not chill legitimate political satire." Grant, 563 F.
Supp. 3d at 289. Even after discovery in this case, the
defendants provide no evidence of public benefit. See Defs.'
Opp'n at 11-14.

There is, however, evidence that if the challenged use
becomes widespread, it will adversely affect the potential
market for "Electric Avenue." As this Court held, "[i]t is plain
that widespread, uncompensated use of Grant's music in
promotional videos—political or otherwise—would embolden would-
be infringers and undermine Grant's ability to obtain
compensation in exchange for licensing his music." Grant, 563 F.
Supp. 3d at 289.

The defendants claim that the plaintiffs "have [since] admitted that the Video has not impaired their ability to exploit the markets to which they have traditionally licensed the Song." Defs.' Opp'n at 14. To the contrary, the plaintiffs have submitted evidence, <u>see</u> Grant Decl., Exs. 8-10, ECF No. 107-8—107-10, "that widespread, uncompensated use of Grant's music in promotional videos—political or otherwise—would embolden would-be infringers and undermine Grant's ability to obtain compensation in exchange for licensing his music." <u>Grant</u>, 563 F. Supp. 3d at 289. Moreover, it is the defendants' burden to show that there is no genuine issue of material fact that the plaintiffs were not harmed, <u>see id.</u> at 284, and the defendants have made no such showing.

The defendants also argue that the plaintiffs "have previously shown no interest in licensing the Song for political use, and have strongly indicated that they have no interest in doing so in the future[.]" <u>Defs.' Opp'n at 14.</u> However, the definition of "potential markets" is not so narrow; it includes any markets that "creators of original works would in general develop or license others to develop." <u>Campbell</u>, 510 U.S. at 592. The plaintiffs' ability to license "Electric Avenue" in the market for licensed music for videos—political or otherwise— would be affected by widespread, uncompensated use.

29

Accordingly, the last fair use factor favors the plaintiffs.

In summary, the Court has applied the fair use factors and finds that each factor favors the plaintiffs. Therefore, the plaintiffs' motion for partial summary judgment dismissing the defendants' defense of fair use is **granted**. Because the defendants have asserted no further defense, the plaintiffs are entitled to summary judgment on liability for copyright infringement against the defendants.

### CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the reasons explained above, the defendants' motion for partial summary judgment dismissing Count II is **denied**. The plaintiffs' motion for summary judgment dismissing the defendants' "fair use" defense is **granted**, and the plaintiffs are entitled to judgment on liability. The Clerk is directed to close ECF Nos. 99, 104, and 134 in this case.

**SO ORDERED.**

Dated:     New York, New York
          September 13, 2024

                                      **John G. Koeltl**
                        **United States District Judge**